

ORIGINAL

③⓪
4-11-02
sc

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHAN HUE : CIVIL ACTION

   V. : NO.: 1:01-CV-1064

JAMES UPDIKE, P.A., JOSEPH :
MATALONI, EDWARD O'BRIAN
and DALE HAZLAK : (Judge Kane)
                       Magistrate Judge Smyser)

### EXHIBITS OF JAMES UPDYKE, P.A. IN SUPPORT OF HIS REPLY BRIEF
### IN SUPPORT MOTION TO DISMISS THE COMPLAINT OF PLAINTIFF

FILED
HARRISBURG, PA

APR 1 0 2002

MARY E. D'ANDREA, CLERK
Per _____
               Deputy Clerk

UNREPORTED/NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 99-1971

———————

LARRY GEISLER,
Appellant

v.

STANLEY HOFFMAN, DR.;
DONALD T. VAUGHN

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 99-CV-3764
District Judge:  The Honorable John R. Padova

———————

Argued:  September 12, 2000

———————

Before: NYGAARD, ROTH, and BARRY, Circuit Judges

(Opinion Filed:  September 29, 2000 )

———————

MEMORANDUM OPINION OF THE COURT

———————

BARRY, <u>Circuit Judge</u>

　　Appellant Larry Geisler, a former prisoner at SCI-Graterford, appeals separate orders

of the District Court which granted motions to dismiss his civil rights action against appellees



EXHIBIT "A"

Dr. Stanley Hoffman and Superintendent Donald T. Vaughn.  The District Court dismissed

Geisler's action against Dr. Hoffman for failure to exhaust administrative remedies and

dismissed the action against Superintendent Vaughn on the merits.[1]  In this appeal, Geisler

seeks reversal of the orders of dismissal and adds a constitutional challenge to 42 U.S.C. §

1997e(a), a challenge he did not raise before the District Court.[2]  For the reasons set forth

below, we will affirm.

The facts underlying this case, as sympathetic as they are to Geisler, are well-known

to the parties involved and will not be repeated here.  Despite that sympathetic story,

however, we must follow the mandate of Congress in 42 U.S.C. § 1997e(a), as interpreted

---

[1] Superintendent Vaughn argues that because Geisler's brief on appeal fails to address
the merits of his claim against him, much less tell this Court why, in his opinion, the
District Court erred in dismissing the action as to him, that order of dismissal is not
properly before us for review.  We agree.  "An issue is waived unless a party raises it in
its opening brief, and for those purposes 'a passing reference to an issue . . . will not
suffice to bring that issue before t[he] court."  Laborers' Int'l Union of No. Am. v. Foster
Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (quoting Simmons v. City of
Philadelphia, 947 F.2d 1042, 1066 (3d Cir. 1991), cert. denied, 503 U.S. 985 (1992)); see
also Penn. Dept. of Public Welfare v. U.S. Dept. of Health and Human Services, 101 F.3d
939, 944 (3d Cir. 1996).  The remainder of this opinion will, therefore, address only
Geisler's appeal from the dismissal of Dr. Hoffman and we will affirm as to
Superintendent Vaughn without further discussion.

[2] We have consistently refused to consider issues that are raised for the first time on appeal.
See Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994); Richerson v. Jones, 572 F.2d
89, 97 (3d Cir. 1978) (noting that "refusing to consider on appeal an issue or argument not raised
below normally promotes the finality of judgments and conserves judicial resources").  While
there is a "manifest injustice" exception to this Court's rule against consideration of new legal
issues on appeal, this rarely-applied exception is not triggered here.  We, therefore, will not
consider Geisler's challenge to § 1997e(a).

by this Court, and affirm the dismissal as to Dr. Hoffman because Geisler simply did not
exhaust his administrative remedies as to the monetary relief he now seeks.

The plain language of 42 U.S.C. § 1997e(a), as amended by the Prison Litigation
Reform Act ("PLRA"), makes clear that: "No action shall be brought with respect to prison
conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or
other correctional facility *until such administrative remedies as are available are exhausted*."
42 U.S.C. § 1997(e)(a) (emphasis added).  As we determined in Nyhuis v. Reno, 204 F.3d
65, 67 (3d Cir. 2000), Congress intended for the PLRA to amend "§ 1997e(a) in such a way
as to make exhaustion of all administrative remedies mandatory–*whether or not they provide
the inmate-plaintiff with the relief he says he desires in his federal action*."  The decision in
Nyhuis – a Bivens action – to reject a "futility" exception to § 1997e(a) and to regard the
exhaustion requirement as unqualified has been extended to § 1983 claims.  See Booth v.
Churner, 206 F.3d 289, 300 (3d Cir. 2000) ("[T]he rule we announced in Nyhuis has equal
force in the § 1983 context . . . for § 1997e(a) treats Bivens actions and § 1983 actions as
functional equivalents."), petition for cert. filed, 68 U.S.L.W. 3774 (U.S. June 05, 2000) (No.
99-1964).

As the record reveals and Geisler's counsel concedes, Geisler failed to utilize all three
of the tiers of the administrative appeals process provided for by the Pennsylvania
Department of Corrections via the Consolidated Inmate Grievance Review Procedure ("DC-
ADM 804").  While Geisler claims to have filed a grievance to have his J tube reimplanted

3

and arranged to have an inmate file a second grievance on his behalf, he admittedly never went beyond that initial step within the formal appeals process outlined in DC-ADM 804. Moreover, the failure of the prison officials to formally respond in writing to these grievances did not, contrary to Geisler's argument, relieve him of the obligation of exhausting the requisite administrative remedies. DC-ADM 804 does not prohibit prisoners from appealing the failure of prison officials to act on initial grievances and, therefore, Geisler was statutorily constrained to bring his grievances to the next level within the prison grievance scheme before pursuing relief in the judicial forum. And, we note, Geisler's grievances sought relief wholly different from the monetary remedy that he subsequently sought from the District Court. To this end, even if Geisler had brought his grievances before the two appellate tiers provided for by DC-ADM 804, exhaustion in that setting clearly would not have exhausted his current claim for monetary relief, a claim which he never even began to pursue administratively.

In this connection, Geisler cannot be heard to argue that seeking monetary damages in the administrative setting would have been "futile." First of all, DC-ADM 804 made awards of monetary relief available to inmates as of May 1, 1998 – well before Geisler filed his federal complaint in July 26, 1999; if the very relief Geisler sought in the judicial forum was first available to him in the administrative forum, a grievance in that forum could not have been "futile." Second, even if administrative remedies had not been available to Geisler via DC-ADM 804, any attempt to invoke a "futility" exception would be denied in light of

4

Nyhuis and Booth. See Nyhuis, 204 F.3d at 70-77 (explaining that Congress, via the PLRA, intended for exhaustion to be an unqualified requirement in prisoner civil rights litigation in an attempt to conserve judicial resources and to give deference to and promote the efficacy of administrative processes); Booth 206 F.3d at 300 (same).

In sum, Geisler's complaint fits squarely within the dictates of § 1997e(a), as interpreted by this court in Nyhuis and Booth, that a prisoner exhaust the administrative remedies available to him or her prior to initiating suit in federal court. Because Geisler failed to exhaust the three-tiered administrative appeals process with respect to both (1) his request to have his J tube reimplanted and (2) his current request for monetary damages attributable to the time he was deprived of the J tube, the District Court properly granted Dr. Hoffman's motion to dismiss.

We make, however, one observation. While Nyhuis and Booth compel us to uphold the dismissal of Geisler's complaint for failure to exhaust, we note that exhaustion is a two-way street with obligations on the part of prison officials as well as on the part of the prisoner. In Nyhuis, this Court stated that "applying § 1997e(a) without exception promotes the efficacy of the administrative process itself . . ." Nyhuis, 204 F.3d at 76. We anticipated that under a strict exhaustion requirement "prison grievance procedures will receive enhanced attention and improved administration." Id. While the state's failure to formally respond to Geisler's grievances – and on a motion to dismiss both the filing of the grievances and the failure to respond must be accepted as true – does not constitute a ground for

5

excusing Geisler from exhausting the administrative appeals process, such failure is wholly inconsistent with the "cooperative ethos . . . between inmate and jailer" which this Court envisioned a strict exhaustion requirement would promote. Id. at 77. In response to the inattention in this case, we issue a simple yet stern reminder: federal courts and prisoners alike depend upon prison officials to take seriously their roles within the relevant administrative grievance scheme. Only prompt attention and formal, guided response to timely prisoner grievances will facilitate the overarching policies of the PLRA.

TO THE CLERK OF THE COURT:

    Kindly file the foregoing Memorandum Opinion.

<div align="right">

/s/ Maryanne Trump Barry
Circuit Judge

</div>

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

No. 99-1971

---

LARRY GEISLER,

Appellant

v.

STANLEY HOFFMAN, DR.;
DONALD T. VAUGHN

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 99-CV-3764
District Judge: The Honorable John R. Padova

---

Argued: September 12, 2000

---

Before: NYGAARD, ROTH, and BARRY, Circuit Judges

(Opinion Filed: September 29, 2000 )

---

## JUDGMENT

---

This cause came to be heard on the record from the United States District Court for

the Eastern District of Pennsylvania and was argued on September 12, 2000.

After consideration of all contentions raised by the appellant, it is

(52)
3/15/02
TS

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
SCRANTON

MAR 15 2002

PER
DEPUTY CLERK

| | | |
|---|---|---|
| **SALVATORE CHIMENTI,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL NO. 3:CV-01-0273** |
| | : | |
| **ROGER KIMBER, ET AL.,** | : | **(Chief Judge Vanaskie)** |
| | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

<u>**BACKGROUND**</u>

This <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983 was initiated by Salvatore

Chimenti, an inmate presently incarcerated at the State Correctional Institution, Huntingdon,

Pennsylvania (SCI-Huntingdon).   Plaintiff's <u>in forma pauperis</u> application was previously

construed as a motion to proceed without full prepayment of fees and costs, and granted.

Named as Defendants are Secretary Martin Horn and Chief Hearing Examiner Robert

Bitner of the Pennsylvania Department of Corrections (DOC) and the following SCI-Huntingdon

officials:  Superintendent Frederick Frank and Nurses Patricia Yarger and Patricia Everhart.

Also named are five employees of Wexford Health Sources, Inc., a health care service which

provides medical treatment to SCI-Huntingdon inmates on a contractual basis:  Peter Baddick

M.D., David Rowe, D.O., Gerald Kaufer, M.D., Site Coordinator Carol Pollock L.P.N., and

*EXHIBIT "B"*

Farrohk Mohadjerin, M.D.  The Plaintiff is also proceeding against Roger Kimber, M.D., who is

identified as being a former SCI-Huntingdon Medical Director.

Chimenti states that he has been confined at SCI-Huntingdon since 1991.  Blood tests

conducted during 1991 revealed that Plaintiff had elevated liver enzymes.  As a result, a non-

defendant, Doctor Reiners, ordered a liver biopsy.  The biopsy tested positive for Hepatitis C.

Between 1991 and 1996, Chimenti was treated by various physicians who are not named as

defendants in this action.  During 1996, Plaintiff's Hepatitis-related symptoms "became more

severe and pronounced."  (Dkt. Entry # 1, ¶10.)  As a result, blood testing was performed in

December, 1996.

The then newly-appointed SCI-Huntingdon Medical Director, Defendant Doctor

Mohadjerin, reviewed the results of the blood test with Chimenti on or about January 15, 1997.

The test revealed that Chimenti had elevated liver enzyme levels.

In April of 1997, Chimenti filed Grievance No. 0057-97, complaining of the alleged lack

of medical care provided by Dr. Mohadjarin and the Wexford Health Group.  (See Ex. "B" to

Plaintiff's Complaint.)  As relief, Chimenti asked that Dr. Mohadjarin "recuse himself from

treating me . . . and to also recuse himself from making any medical decisions regarding any

types of tests, x-rays, operations, doctor consultations, or any other medical decisions

pertaining to my health."  Chimenti also requested that "Dr. Rieners or Dr. Aranenda attend to

me in the future."  (Id., p. 6.)  Chimenti unsuccessfully pursued this grievance through the final

2

review stage, with DOC Commissioner Horn sustaining the denial of the grievance in a letter

dated June 27, 1997.  (Ex. "E" to the Complaint.)  Chimenti did not pursue a civil action with

respect to this matter.

     During the summer of 1997, Chimenti was referred to Dr. Gaugler, who ordered a liver

biopsy and testing to determine the condition of the Hepatitis-C.  In October of 1997, when

testing had not been undertaken, Chimenti complained in writing to Defendant Dr. Kaufer.  (Se

Exs. "F" and "G" to the Complaint.)  By letter dated November 12, 1997, Defendant Pollock

responded to Chimenti's letters to Dr. Kaufer.  (Ex. "H" to the Complaint.)  Chimenti did not

pursue an administrative grievance with respect to the matters covered in his letter to Dr.

Kaufer.

     In the interim, on November 5, 1997, a liver biopsy was performed and Dr. Gaugler

recommended Interferon therapy.  Chimenti received Interferon therapy for about 3 ½ months

beginning in December of 1997.  (Complaint, ¶¶ 40-41.)  Dr. Mohadjarin discontinued the

Interferon therapy in March of 1998 because the Hepatitis C was "'not fully responding to

treatment.'" (Id., ¶ 41.)  Chimenti alleges that Dr. Gaugler recommended that the Interferon

treatment be intensified, but Dr. Mohadjarin refused.  (Id, ¶ 46-47.)  Thereafter, Chimenti aske

that Dr. Mohadjarin approve "Rebetron Therapy," but he again declined to order the treatment

(Id., ¶ 49-52.)

     On February 10, 1999, Chimenti initiated another administrative proceeding concerning

his medical care. This grievance, assigned No. 0037-99, was "lodged against SCI-[Huntington]

Medical Dept., Dr. Mohadjarin, Wexford Health Sources, Inc., and the D.O.C." (Complaint, Ex.

"I," p. 1.) Chimenti sought to compel implementation of the Rebetron therapy. By letter dated

May 10, 1999, the denial of Chimenti's grievance was sustained on final review. (Complaint,

Ex. "O".) No additional administrative grievances were pursued by Chimenti.

     Chimenti did not bring this lawsuit until February 13, 2001. Chimenti alleges that he did

not receive any treatment for hepatitis from March of 1998 until June 26, 2000. (Complaint, ¶

65.) He further alleges that, as a result, his condition deteriorated substantially. (Id., ¶ 66.)

     He acknowledges, however, that on June 26, 2000, he started receiving Rebetron

therapy. (Id., ¶ 68.) On December 13, 2000, Defendant Dr. Kimber ordered that this treatment

be discontinued because Chimenti's condition continued to deteriorate. (Id., ¶ 72.) Chimenti

alleges that Defendants Drs. Kimber and Baddick then refused to provide him any additional

treatment. His complaint contends that he has been diagnosed with cirrhosis of the liver. He

further avers that he "now languishes in a prison cell, suffering from an extremely advanced life-

threatening illness...." (Complaint, ¶ 79.) As relief for the alleged deliberate indifference of the

Defendants, Chimenti requests compensatory and punitive damages plus an injunctive decree

directing his transfer to the State Correctional Institution at Pittsburgh, Pennsylvania (SCI-

Pittsburgh) for the purpose of being evaluated as a liver transplant candidate.

     On May 29, 2001, the Wexford employees who have been sued in this case,

<div align="center">4</div>

Defendants Baddick, Rowe, Kaufer, Pollock, and Mohadjerin (hereinafter the Wexford

Defendants) submitted a motion to dismiss. <u>See</u> Dkt. Entry # 29. Shortly thereafter, Dr.

Kimber filed a motion to dismiss the complaint for failure to state a claim upon which relief may

be granted. (<u>See</u> Dkt. Entry # 30.)  The remaining Defendants, Horn, Bitner, Frank, Yarger,

and Everhart (hereinafter the Commonwealth Defendants) also filed a motion to dismiss. (<u>Se</u>

Dkt. Entry # 32.) Briefing has been completed on the respective motions, and they are ripe fo

consideration.

## DISCUSSION

"The test in reviewing a motion to dismiss for failure to state a claim is whether, under

any reasonable reading of the pleadings, plaintiff may be entitled to relief." <u>Holder v. City of</u>

<u>Allentown</u>, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must

"accept as true the factual allegations in the complaint and all reasonable inferences that can

be drawn from them." <u>Markowitz v. Northeast Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990);

<u>Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth.</u>, 103 F.3d 1165, 1168 (3d Cir.

1997). In <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third

Circuit added that when considering a motion to dismiss based on a failure to state a claim

argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whethe

they are entitled to offer evidence to support their claims."  Finally, it is additionally well-settle

that <u>pro se</u> complaints should be liberally construed. <u>Haines v. Kerner</u>, 404 U.S. 519, 520

5

(1972).

The separate motions to dismiss raise some common grounds.  Specifically, Dr. Kimbe

and the Wexford Defendants assert that dismissal is appropriate on the ground that Chimenti

did not adequately exhaust administrative remedies.  Both the Wexford and Commonwealth

Defendants argue that the complaint fails to set forth a valid claim of deliberate indifference.

## A. Failure to Exhaust Administrative Remedies

Dr. Kimber maintains that the claim asserted against him was not included in Chimenti

administrative grievances.[1]  The Wexford Defendants' argument that Chimenti failed to exhaus

his administrative remedies is twofold.  First, they point out that the two administrative

complaints that Chimenti pursued did not name nor seek relief on account of actions or inactio

of Baddick, Rowe, Kaufer and Pollock.  And second, the Wexford Defendants contend that

Chimenti is not entitled to pursue his claims in this Court because the relief requested --

monetary damages and a transfer to SCI-Pittsburgh for evaluation for a liver transplant -- was

not sought in the administrative complaint process.

---

[1]      The Complaint alleges that Dr. Kimber became the prison's Medical Director duri
"October/November 2000." (Dkt Entry # 1, ¶ 69.)  On December 13, 2000, Kimber allegedly
discontinued Chimenti's Rebetron therapy because his illness "failed to respond to said
treatment." (Id. at ¶ 72.)  Thereafter, on January 16, 2001, Kimber informed the Plaintiff that a
second referral made by Doctor Reiners for Chimenti to be examined by a gastroenterologist
had been rejected by Doctor Baddick, Wexford's Regional Director.  The complaint concludes
that Kimber refused to provide Plaintiff with needed treatment.

6

Section 1997e(a) of Title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under
> section 1979 of the   Revised Statutes of the United States (42
> U.S.C. 1983), or any other Federal law, by a prisoner confined in
> any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

The Supreme Court has made clear that prisoners must exhaust administrative

remedies as to any claim that arises in the prison setting, regardless of any limitations on the

kind of relief that may be gained through a grievance process. See Porter v. Nussle, 122 S.Ct.

983, 992 (2002)("we hold that the PLRA's exhaustion requirement applies to all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong"); Booth v. Churner, 121 S.Ct. 1819,

1825 n.6 (2001)("we hold . . . that Congress has provided in § 1997e(a) that an inmate must

exhaust [administrative remedies] irrespective of the forms of relief sought and offered through

administrative avenues"). Thus, prisoners are required to exhaust available administrative

remedies prior to seeking relief pursuant to  § 1983 or any other federal law.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance

Review System.  DC-ADM 804 (effective January 1, 2001).  With certain exceptions not

applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal

resolution of the problem, a written grievance may be submitted to the Grievance Coordinator;

an appeal from the Coordinator's decision may be made in writing to the Facility Manager or

7

Community Corrections Regional Director; and a final written appeal may be presented to the

Secretary's Office of Inmate Grievances and Appeals.  A prisoner, in seeking review through

the grievance system, may include requests for "compensation or other legal relief normally

available from a court."  (DC-ADM 804-4, issued April 29, 1998.)  Furthermore, although

"[g]rievances must be submitted for initial review to the Facility/Regional grievance Coordinator

within fifteen (15) days after the events upon which the claims are based," allowances of

extensions of time for good cause "will normally be granted if the events complained of would

state a claim of a violation of a federal right." ( Id.)

 With respect to Dr. Kimber's failure to exhaust argument, Plaintiff contends the he was

subjected to a continuous denial of medical treatment and all available administrative remedies

were exhausted as evidenced by Exhibits "L" and "O" to the original complaint. ( See Dkt. Entry

# 37, ¶ 8.)  The two exhibits cited by Chimenti relate to Grievance 0037-99, which was filed and

ruled upon long before Dr. Kimber assumed his duties as Medical Director at SCI-Huntingdon.

Specifically, as established by Exhibit "O", final administrative review of said grievance

concluded on May 10, 1999, over a year before Medical Director Kimber began his tenure.

Plaintiff's earlier grievance, No. 0057-97 was likewise initiated and reached final disposition

long before Dr. Kimber's involvement.

 Moreover, Plaintiff's attempt to avoid compliance with the exhaustion requirement on the

basis that he was subjected to a continuing pattern of deliberate indifference is not compelling.

Clearly, Dr. Kimber cannot be held accountable for the actions of his predecessors. The filing

of an administrative grievance regarding prior actions allegedly taken by other correctional

officials simply does not permit this Court to entertain unexhausted claims against Kimber. To

do so would undermine the purpose of § 1997e(a).[2]  Consequently, since Plaintiff did not

initially seek administrative relief through the DOC grievance procedure prior to asserting

claims against Dr. Kimber in federal court, his claims against him are unexhausted and must b

dismissed, without prejudice, pursuant to § 1997e(a).[3]

     An identical conclusion is compelled with respect to Doctors Baddick, Rowe and Kaufer

as well as Nurse Pollock.  Plaintiff's initial grievance, # 0057-97, was filed against "Dr.

Mohadjerin and the Wexford Health Group." (Complaint, Ex. "B", p. 1.) As previously noted,

Plaintiff requested that Dr. Mohadjerin be removed as his treating physician and be replaced b

Doctor Reiners or Aranenda.  The Complaint did not mention any of the remaining Wexford

Defendants by name, and did not seek any other relief.

---

[2] It is additionally noted that in May, 2001, Plaintiff, by his own admission, initiated a
grievance against Kimber regarding the rejection of his request to be transferred to the
University of Pittsburgh in order to be evaluated by a liver specialist.  (See Dkt. Entry # 45,
Exhibit "C".) Chimenti's action undermines his apparent argument that he felt that it was
unnecessary to seek administrative relief against Kimber.

[3] A discussion regarding Kimber's alternative argument that Chimenti failed to allege any
facts which could support a deliberate indifference claim is thus unnecessary.

Plaintiff's second grievance, No. 0037-99, filed February 10, 1999, was "lodged against

SCI-H, Medical Dept., Dr. Mohadjerin, Wexford Health Sources, Inc. and the DOC."(Complaint,

Ex. "I", p. 1.)  Chimenti asserted that he had not been provided with Rebetron therapy in a

timely fashion and requested that he be provided with said treatment.  Once again, with the

exception of Dr. Mohadjerin, the grievance did not mention any of the remaining Wexford

Defendants by name, nor were there any discernible claims asserted against those individuals.

Since Baddick, Rowe, Kaufer, and Pollock were not named or mentioned in either of the

administrative grievances initiated by Chimenti, the instant claims asserted against them have

not been exhausted.  The mere inclusion of the Wexford Group in both grievances is not

enough to show that Chimenti was complaining of discrete instances of medical treatment

relative to any of these defendants.  Moreover, his complaint shows that none of these

defendants had more than a passing or tangential connection with Chimenti's medical care.

For example, Nurse Pollock's connection to Chimenti appears to have been restricted to

answering letters he wrote to Dr. Kaufer in the Fall of 1997.[4]  Under these circumstances,

dismissal of Chimenti's claims against these defendants for failure to exhaust administrative

---

[4] A review of the complaint reveals that Plaintiff states that he sent Dr. Kaufer two letters
during October, 1997.  (See id. at ¶ 32-3), and Exhibits "F"& "G.")  His complaint  maintains
that Pollock denied him treatment in a November 1997 response to the aforementioned
October letters.  (See id. at ¶ 35, and Exhibit "H.")  Finally, Plaintiff claims that Kaufer and Rowe
acted improperly in responding to two referrals made by Doctor Mohadjerin in June or July of
1997.  (See id. at ¶ 28.)

remedies is warranted.

The fact that Chimenti pursued two separate grievances against Dr. Mohadjerin does

not necessarily satisfy the exhaustion requirement.  The Third Circuit, in an unreported

decision, has suggested that an inmate may not pursue a claim for monetary relief when such a

claim was not pursued administratively.  See Geisler v. Hoffman, Civil No. 99-1971, slip op. at

(3d Cir. Sept. 12, 2000).  A learned member of this Court, relying upon Geisler, has held that a

inmate plaintiff's failure to seek monetary damages in prison grievance proceedings precluded

the inmate from seeking such relief in a civil rights action.  See Laird v. Pennsylvania

Department of Corrections, Civil No. 3:CV-00-1039, slip op. at 3 (M.D. Pa. Sept. 26, 2001

(Nealon, J.).)

Chimenti did not include a request for monetary damages in his administrative

complaints.  Moreover, he did not seek a transfer to another institution in those complaints.

Thus, Chimenti's claims against Dr. Mohadjerin for monetary and equitable relief would appea

to be foreclosed as a consequence of his failure to seek such relief through the DOC grievanc

process.[5]  Even if the exhaustion requirement had been satisfied as to Dr. Mohadjerin, howeve

Chimenti has not presented a viable claim against him.

_____

[5]It appears that Dr. Mohadjerin is no longer employed as the Medical Director for SCI-
Huntington by the Wexford Group.  Under these circumstances, the equitable relief sought by
Chimenti in this case could not be awarded, at least insofar as Dr. Mohadjerin is concerned.

11

### B. The Claims Against Dr. Mohadjerin

Dr. Mohadjerin asserts that since Plaintiff acknowledges that he was provided with extensive treatment, his complaint "merely establishes a disagreement between an inmate and medical professionals with respect to the appropriate course of treatment," (Dkt. Entry # 34, page 14.) The remaining Wexford Defendant concludes that such disagreement does not rise to the level of a viable Eighth Amendment claim.

As recognized in Estelle v. Gamble, 429 U.S. 97 (1976), the government has an "obligation to provide medical care for those whom it is punishing by incarceration." Id. at 103. A constitutional violation, however, does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain." Id. at 104 (citation omitted). The proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Where a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate

12

treatment results simply from an error in medical judgment, there is no constitutional violation.
See id.

       After being diagnosed with Hepatitis C in 1991, numerous physicians, including specialists, provided Chimenti with varied treatment.  Shortly after assuming his duties at SCI-Huntingdon, Doctor Mohadjerin met with Chimenti in January, 1997 and thereafter became involved in his treatment.  In May, 1998, Doctors Gaugler (a non-defendant Gastroenterologist) and Mohadjerin disagreed as to whether Plaintiff should both remain on, and be provided with increased Interferon therapy. (See Dkt. Entry # 1, ¶ 46.)  During that same month, Plaintiff alleges that Doctor Mohadjerin told him that a new treatment, Rebetron therapy,[6] was not yet available because it was awaiting approval by the Food and Drug Administration (FDA).  Moreover, said approval was required before "the plaintiff would be treated in any fashion."( Id at ¶ 49.)  The following month the FDA issued its approval. (See id. ) That same month, Medical Director Mohadjerin allegedly told Chimenti that before "plaintiff could receive the new therapy" a protocol for treatment between Wexford and the DOC had to be established.  (Id. at ¶ 52.)  Plaintiff notes  that a protocol for Rebetron therapy was established by the Center for Disease Control in October, 1998.  (See id. at ¶ 64.)  In addition, Mohadjerin referred Chimenti to Dr. Gaugler in November of 1998.  An agreement regarding the Rebetron protocol was

---

   [6] Plaintiff describes Rebetron therapy as being a combination of Interferon and Ribavirin. (See Dkt. Entry # 1, ¶ 49.)

allegedly reached by January 1, **1999**.

However, in February, 1999, Plaintiff claims that Dr. Mohadjerin informed him that he still could not receive Rebetron therapy because the "DOC had backed out of protocol negotiations with Wexford." (Dkt. Entry #1, ¶ 55.) Finally, some twenty-seven (27) months after the FDA issued its approval, Plaintiff began his Rebetron therapy on June 26, 2000. This therapy continued until Dr. Kimber replaced Mohadjerin as the prison's Medical Director. (Id. at ¶ 69-70.)

There are no allegations that the remaining Wexford Defendant, Dr. Mohadjerin, had personal involvement in any delays during the FDA's approval process or the protocol negotiations between the DOC and Wexford.   All of the Plaintiff's other allegations concerning Mohadjerin are based on decisions made by that Defendant with respect to the course of Chimenti's treatment.  At best, those claims represent disagreement between Plaintiff and Dr. Mohadjerin with respect to Chimenti's treatment.  Since the record demonstrates that Chimenti has been  provided with ongoing treatment during his confinement at SCI-Huntingdon, under the standards announced in Estelle and Farmer, the allegations asserted against Mohadjerin are insufficient for purposes of setting forth a viable claim of deliberate indifference.[7]

---

[7]Dr. Mohadjerin also asserts that the claims raised against him are limited by the applicable statute of limitations to those matters that occurred within two (2) years of the filing of the complaint in February of 2001. Plaintiff counters that the alleged deliberate indifference by

(continued

## C. **The Claims Against the Commonwealth Defendants**

The Commonwealth Defendants consist of three non-medical officials: Secretary Horn, Chief Hearing Examiner Bitner and Superintendent Frank, and two members of the SCI-Huntingdon medical staff, Nurses Yarger and Everhart. Collectively, they seek dismissal on the basis that there are no allegations that they were personally involved in any constitutional misconduct and Plaintiff's disagreements over the treatment he received are not actionable under § 1983.

Each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.

---

[7](...continued)
Mohadjerin was part of a continuing pattern of constitutional misconduct enabling him to recover for matters that occurred more than 2 years before this action was brought. In addition, included in Plaintiff's second grievance, No. 0037-99, are allegations which pre-date February 1, 1999. It is unclear whether the limitations period as to such matters should be tolled while administrative processes are being pursued. Dr. Mohadjerin's counsel has not addressed either the continuing wrong theory or the tolling question. Consequently, a proper determination as to the merits of his statute of limitations argument cannot be made at this time.

15

Rode, 845 F.2d at 1207.

On April 27, 1997, Nurse Everhart responded to a letter sent by the Plaintiff to Dr. Mohadjerin. (Complaint, Ex. "A".)  In her response, Everhart noted that there was no cure for hepatitis and that Dr. Mohadjerin had concluded that "the side effects of providing interferon outweigh the treatment itself." ( Id. ) During that same month, Chimenti filed his initial inmate grievance.  The grievance, which requested that either Doctor Rieners or Dr. Aranenda replace Dr. Mohadjerin, was initially denied by Nurse Yarger on May 1, 1997.  Subsequent unsuccessful appeals to Superintendent Frank and Commissioner Horn followed.  (See Complaint Exs. "D" and "E".)

As a result of the alleged breakdown in protocol negotiations between Wexford and the DOC,  Plaintiff initiating a second grievance, No. 0037-99, asserting that he was being treated unjustly because inmates at other correctional facilities were being provided with Rebetron treatment. See id. at Exhibit I. Nurse Yarger provided an initial response to the grievance on February 6, 1999, informing Chimenti that there was no DOC policy instructing DOC medical vendors not to provide treatment for hepatis disorders and that the vendors had been directed to provide appropriate and adequate care when necessary. (See id. at Exhibit "J".)  Plaintiff unsuccessfully appealed Nurse Yarger's decision to both Superintendent Frank and Chief Hearing Examiner Bitner.  Plaintiff's complaint concludes that the Commonwealth Defendants

16

by failing to act on his internal complaints and administrative grievances, were directly involved

in actions which purportedly allowed his hepatitis to go untreated for a period of twenty-seven

(27) months beginning in June, 2000.

The Court of Appeals for the Third Circuit in <u>Durmer</u> established that a non-physician

defendant cannot be considered deliberately indifferent for failing to respond to an inmate's

medical complaints when he is already receiving treatment by the prison's medical staff. None

of the remaining Commonwealth Defendants is a physician. Furthermore, the record of this

action clearly demonstrates that during all relevant periods Plaintiff was under the care of a

physician. In February 1999, Doctor Mohadjerin told Chimenti that the protocol negotiations

between the DOC and Wexford had broken down. There are no allegations which could

support an inference that any of the remaining Commonwealth Defendants were involved in

those protocol negotiations regarding the Rebetron therapy or that they deliberately delayed t

implementation of the Rebetron treatment for non-medical reasons. The mere fact that the

Commonwealth Defendants responded to Chimenti's grievances does not support an inferen

that they were deliberately indifferent to his medical needs. They were entitled to rely upon th

advice of the health care professionals. There is no allegation that any of the Commonwealth

Defendants improperly interfered with the health care professionals or adversely influenced t

care and treatment Chimenti received. Consequently, under the standards announced in

<u>Durmer,</u> there is no basis for an Eighth Amendment claim against any of the Commonwealth


Defendants. [8]

**CONCLUSION**

    Since Chimenti failed to pursue an administrative grievance against Drs. Kimber,

Kaufer, Baddick and Rowe, as well as Nurse Pollock, the claims against those Defendants

must be dismissed without prejudice pursuant to § 1997e(a).   Plaintiff's claims against Dr.

Mohadjerin and the Commonwealth Defendants fail to assert a viable claim of deliberate

indifference.  An appropriate Order will follow.

                             *Thomas I. Vanaskie*

                             Thomas I. Vanaskie, Chief Judge
                             Middle District of Pennsylvania

DATED: MARCH 15, 2002

---

  [8] Moreover, there is no constitutional right to a grievance procedure.  See <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>,  443 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) do not suggest that the [grievance] procedures are constitutionally mandated.").  Accordingly, the extent Plaintiff contends that the Commonwealth Defendants violated his constitutional rights by not taking corrective action on his medical complaints, said allegations fail to state a claim upon which relief may be granted.  See <u>Johnson v. Harding</u>, Civil No. 3:CV-99-977, slip op. at p. 8 (Feb. 29, 2000)(Vanaskie, C.J.).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SALVATORE CHIMENTI,                         :
                                            :
        Plaintiff,                          :
                                            :
        v.                                  :   CIVIL NO. 3:CV-01-0273
                                            :
ROGER KIMBER, ET AL.,                       :   (Chief Judge Vanaskie)
                                            :
        Defendants.                         :

FILED
SCRANTON

MAR 1 5 2002

PER_____
DEPUTY CLERK

### O R D E R

NOW, THIS 15th DAY OF MARCH, 2002, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Wexford Defendants' motion to dismiss (Dkt. Entry # 29) is **GRANTED.** The claims against Baddick, Rowe, Kaufer and Pollock are dismissed without prejudice for failure to exhaust administrative remedies. The claim asserted against Dr. Mohadjerin is dismissed for failure to state a claim upon which relief may be granted.

2. Defendant Roger Kimber M.D.'s motion to dismiss (Dkt Entry # 30) is **GRANTED.** The claims against Kimber are dismissed without prejudice for failure to exhaust administrative remedies

3. The Commonwealth Defendants' motion to dismiss (Dkt. Entry # 32) is **GRANTED.** The claims against the Commonwealth Defendants are dismissed for failure to state a claim upon which relief may be granted.

4.    The Clerk of Court is directed to **CLOSE** the case.


_Thomas I. Vanaskie_
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania


O:\PRO_SE\VAN_WIE\OPINIONS\CHIMENTI,MTDS1

2