

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHAN HUE                        :   No. 1:CV-01-1064
      Plaintiff           :
                                :
VS.                             :   (Judge Kane)
                                :
J. UPDIKE, P.A., J. MATALONI    :   (MAGISTRATE JUDGE SMYSER)
E. O'BRIEN, D. HAZLAK           :
      Defendants          :

FILED
SCRANTON
APR 3 0 2002
PER [signature]

DISCOVERY AND INSPECTION
TITLE 28 U.S.C. RULE 26(a)(1)(B)
L.R. 26.2

1.) The Plaintiff has initiated his civil action back on June 15, 2001. This is a §1983 of Civil matters.

2.) Issues pretaining to deliberate indifference and Eighth Amendment violations. The Plaintiff was denied Medical Treatment of his right shoulder, rotator cuff and he also broke o couple of his bottom teeth.

3.) Plaintiff fell in the kitchen area of this institution. At the time he was employed there by inmate employment. This fall took place on February 28, 2000.

4.) At that time Plaintiff was sent to an outside hospital in this area to be checked upon. A bone specialist at this hospital stated, "you need to get proper surgery on your shoulder". An operation was promised to Plaintiff, but it never took place. Medication was prescribed by this doctor and a short time later the medication was stopped by the Medical Department here. The

1.

Plaintiff received a misconduct for not working and this was while he was in a sling. Plaintiff was forced to work on the block and at the kitchen also.

5.) It is very necessary for all of the Defendant's to answer this consolidated discovery inspection.

6.) Marsh Davis has requested interrogatories of Plaintiff, "Phan Hue". Mr. Hue is without the proper materials to satisfy all the defendant's needs and Allan Gold has not yet started their interrogatories.

7.) The stated information below is very crucial to this trial, to prepare, and conduct a respectful, and fair trial of all parties involved.

### INFORMATION FROM JAMES UPDIKE, P.A.

1.) Plaintiff is requesting material pertaining to James Updik's medical background, names of Collages, degrees, and courses that he majored in. If he has any Pharmaceutical education any orthopedic experience, and any education from any collages.

2.) Past institutions that he has worked for, either state of federal prisons.

3.) Whether he has worked in any state hospitals, private hospitals or any nursing homes where he has practiced on individuals at. Also the names, addresses and reasons for leaving the said places of employment.

4.) Have any complaints (grievances or civil suits) ever been filed against you. Names of the individuals in the said complaints and what the complaints were for.

5.) The names of the Correction Officers that transported Plaintiff to the outside hospital.

6.) Any statements, records, or written notes by Mr. Updike, as to his diagnoses of Plaintiff'sshoulder.

7.)  Any reports by the doctors, nurses, or any other individual who may have looked at Plaintiff's shoulder. Any and all medical terms used on diagnoses of Plaintiff's shoulder and whether Plaintiff was in any pain.

8.)  A copy of the report of why Plaintiff's sling and medication was taken away.

9.)  All reports on what type of medication, dosage, and daily use, that was prescribed by the outside doctor.

10.) How many times Plaintiff had signed up for sick call about shoulder pain.

11.) What type of authority and experience does Mr. Updike have to prescribe medications such as barbiturates.

12.) Does Mr. Updike have his own private practice.

13.) What type of insurance coverage does Mr. Updike have and what is its liability plan, if any.

14.) What kind of surgical capabilities does SCI-Retreat have and what kind of surgery is SCI-Retreat allowed to perform.

15.) What type of financial budget or insurance coverage does each inmate have for medical and prescription needs.

16.) What is the financial budget that the Prison can spend on each inmate.

17.) What corporations, hospitals, pharmacies, and ect. does SCI-Retreat deal with in their medical department needs.

18.) What is the basic standard practices for individuals who have a serious medical need.

19.) What was your title and responsibilities to the Medical Department here at SCI-Retreat.

20.) Copies of all Plaintiff's ex-rays and M.R.I's in the institution and from the outside hospital.

21.) Doctor's shopping for cheap medical assistance to perform the operation.

22.) Maintenance plan under prisoner's health care service, bilateral Contract entered into between prison and health care service.

23.) Why did you resign, quit, or leave your position at SCI-Retreat.

3.

INFORMATION FROM DEFENDANT J. MATALONI
DISCOVERY INSPECTION

1.) Are you a Medical Doctor ? What Medical School did you attend ? What type of medical background do you have ? What medical field do you specialize in, psychology, pharmaceutical, surgical, or other ? What courses did you major in and what degrees did you receive in collage.

2.) What is the title you hold at SCI-Retreat, and what are your responsibilities and duties to the medical department at Retreat.

3.) What type of insurance policies does the prison have in case the make a medical mistake or error.

4.) Has there ever been any complaints, grievances, or Civil law suits filed against you, any other member of the medical staff, or the medical department.

5.) What types of surgical duties does the medical department cover and what is their maximum potential when it comes to doing surgery.

6.) Did you or the medical department receive any bids to cover this surgery by local doctors or hospitals.

7.) Are you personally illegible or able to prescribe medication to inmates or any one else.

8.) How many nurses do you employ on each shift and do you personally maintain these personal.

9.) A list of all employees that are working in the medical department, a list of each ones background in medical field, the names of the collages that they attended and their all around education. Screening to see if all employees are professionally qualified.

10.) Any written statements or records by you or any other staff pertaining to the Plaintiff.

11.) Who will be testifying on defendants behalf, including expert witness as well. What are the names and addresses of the above

4.

witness.

12.) A full description from the dentist to which teeth were damaged. The dentist name and address.

13.) Why the plaintiff was not laid in by the institution's medical staff. All reports and diagnoses by the medical personal in charge.

14.) What is your certification in the medical field and how are you described as a doctor. A copy of your credentials and certification in the medical field.

15.) Who was the outside contractor of SCI-Retreats medical department. What branch, hospital, health care. The x-rays and M.R.I.'s done on the shoulder.

16.) What is the evaluation of professional staff's duties when someone is critically hurt. What is there routine and how do they handle that kind of situation.

17.) What are the medical fiances for each year and who provides these funds. Budget reports.

18.) The name of the bone doctor who looked at the Plaintiff on February 28, 2000. The bone doctors opinions, full evaluation of his diagnoses and the prescription, its dosage and usage on Plaintiff.

19.) Do you have any education in psychology and do you have any certification in this field.

20.) Name of nurse that looked at the plaintiff on the day he fell. What was that persons medical background, a certification report, and why was this person suitable for that professional position.

21.) Who is the supplier of the prescription medications for this institution and the budget allotted for each inmate.

22.) Where there any finalizes to send the plaintiff out for his surgery. Did you shop around for bids.

23.) How long was the prescription for medication to run before removing plaintiff from the said medication. Why was the said medication stopped and who gave the order to stop the medication. How long would an average inmate be allowed to possess a sling,

crutch, braces, or wraps for joints before they are to return the said items. Is there any special rules to disallow the possession of these particular items. Why was the sling removed from the plaintiff.

24.) How many times did the plaintiff sign up for sick call because of the injury to his shoulder.

25.) How many grievances have been filed on you personally, have you ever been sued in a civil procedure and if you have why.

26.) How many medical supplies are on hand, at the staff's disposal for the use on inmates.

27.) How many people have fell in the kitchen area within the past ten (10) years, this includes staff, officers, and inmates. What kind of medical needs were provided to them.

28.) Are the correctional officer and staff members that fell in the kitchen area treated any differently than inmates that fall.

29.) Where are the reports on why the plaintiff was or was not laid in from work due to his injury, in the kitchen.

## DISCOVERY INSPECTION OF D. HAZLAK

1.) What type of an education do you have. Do you have any education in the medical field. Do you possess any certificates or licenses in the medical field.

2.) A request to view any and all educational diplomas, degrees, certificates, and licenses, pertaining to psychology or the medical field. Including collage majors, and training in case worker or counselor.

3.) Copy of the misconduct that Mr. Hue received and the final resolution of the said misconduct.

4.) Any personal reports written or transcribed.

5.) All of your insurance coverage.

6.) Certification of your status here at SCI-Retreat.

7.) Do you have any authority to give a professional diagnoses, rebut one given by a doctor, or to prescribe any medications.

8.) Have you ever had a complaint raised against you, been removed from another institution or this institution for any reason, or have you ever been sued. If you have had a complaint raised against you, been removed from an institution or have been sued in a civil matter give names, addresses, and reason for the above.

9.) A report of your criminal background or any investigations pending now or in the past.

10.) Have you ever had any grievances filed against you, where, why, how many, and the nature of each one.

11.) Any statements on why plaintiff was never let go from employment, given compensation and forced to work with his injury.

12.) What is your professional title at SCI-Retreat and the nature of your duties.

13.) The names and addresses of the persons that will testify in your behalf and any expert witness that you are planing to have testify on your behalf.

14.) What kind of protection insurance do you own in this matter.

        Liability insurance number and provider.

15.) Any written reports of this incident prepared by yourself or any other staff member on Mr. Hue's condition.

16.) What is your yearly salary for your employment at SCI-Retreat.

## DISCOVERY AND INSPECTION SOUGHT FROM
## EDWARD O'BRIAN

1.) How many individuals have fallen and hurt themselves in the kitchen, including Corrections officers, Staff members, and inmates. The nature of the injuries and any medical treatment given.

2.) Any reports on how long they were off from work duties or laid in from work duties, includes Corrections officers, staff members, and inmates, due to the seriousness of their injuries.

3.) What is your education. Do you have any collage diplomas, or certificates. What was your major in collage. Do you have any education in the medical field or psychology field.

4.) Are you any kind of orthopedic or bone specialists.

5.) How many different state prisons have you worked at. Why were you removed from them and how long did you work at them.

6.) What type of coverage do you have in your insurance policies. Liabilities.

7.) What is your title at SCI-Retreat.

8.) What kind of tiles are on the floor in the kitchen, are they very slippery when wet.

9.) What kind of report was made by you or any of the other stewards on duty in the kitchen on the day of the plaintiffs fall, February 28, 2000.

10.) Reports on why Mr. Hue was or was not laid in from work by your department. Including your involvement with or about the lay in.

11.) What is your position at your employment, who are you there. Your full authority in your department.

12.) Are you licensed to issue any medications or to diagnose medical treatment.

13.) Do you have any certification in psychology.

14.) How does your authority work around staff and other inmates.

15.) How many grievances have been filed while you have been employed

at SCI-Retreat and what was the final resolutions of the said grievances. Included are grievances about kitchen area, staff member's abuse, food qualities, work place conditions and work place safety.

16.) Have you ever had a civil law suite against you or your department at SCI-Retreat or any other institution.

17.) How many employees do you have working in your department. Give each employees full name and address.

18.) Who will be giving testimony at trial for you. Names and addresses of all witnesses. Names and addresses of any expert witnesses and of any eye witnesses in support of your claims.

I, Anthoney Rish, who has made this discovery. I was stuck at SCI-Retreat for a couple of extra days. I am being released on April 17, 2002. An error on a bail issue, unconditional. Judge Toole was my judge, Luzerne County Courthouse. See my affidavit for appointment of counsel.

These are all of the proper requirements needed to prepare for this civil trial. They are in possession of the defendant's and their attorneys. They are part of the institution records and they have control over them. Mr. Hue is just a resident of this fine institution and not a controller. This information will generate a more accurate interrogatory in which has been requested by Marsha Davis, "Attorney for the Defendant's in the above caption, who are being sued. Mr. Hue is very handicapped without this kind of information and to set up proper pre-trial motions. This is by Rules of Court Pa.M.D.L.R. 33.2

Plaintiff wishes to reserve his right to amend by defect or error of law. He wishes not to waive his rights to submit a proper discovery.

Also see Memorandum of law, brief Attached.


_____          Dated: 4-25-02
Phan Hue    DY-0577
660 State Route 11
Hunlock Creek, PA    18621

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHAN HUE | : | No. 1:CV-01-1064 |
| Plaintiff | : | |
| | : | |
| VS. | : | (Judge Kane) |
| | : | |
| J. UPDIKE, P.A., J. MATALONI | : | (MAGISTRATE JUDGE SMYSER) |
| E. O'BRIEN, D. HAZLAK | : | |
| Defendants | : | |

MEMORANDUM OF LAW
BRIEF

_____    Dated: 4-25-02
Phan Hue    DY-0577
660 State Route 11
Hunlock Creek, PA   18621

1.

The Plaintiff is seeking a number of secured documents held by the institution SCI-Retreat in which he believes that he has a clear legal right to them, by a number of case citations and laws governed by this countries constitution. Certain standards have been created by our congress in which gives an opportunity of an individual protection from the due process violations of law. That the fact of discovery will help to establish clear view to support ones claims. As to Freedom of Information Act part of the First Amendment.

It would be futile to proceed at trial without the necessary component to develop a clear story to the juries verdict. Which is fragile at most. Conduct of the materials and how they are brought before the courts. Will give insight, and prevent mess ups. To stop an ability to perform adequately to trial. There is an Eighth Amendment violation here, medical, deliberate indifference. Plaintiff is seeking monetary damages, an operation on his shoulder, and the hopes of punitive damages by the juries verdict.

See **Benavides Vs. Bureau of Prisons, 995 F.2d 269**. Both appellants asked the district court to order the bureau to produce their records, with out further ado. Although we hold that the bureau's regulation is ultra vire, and therefore appellant's are entitled to the records it does not follow that the appropriated remedy is to direct the bureau to turn them over to appellant's immediately. See **Title 5U.S.C. §§552 a (d)**.

Even at most, court records are part of the societies inspection. When ever they please to read court transcripts. Courts shall be open to the public, and a good example towards release of information in certain cases. Even civil. **U.S. Antar, 38 F.3d 1348**, the supreme court in **Nixon Vs. Warner Communication**, recognized a historically based, common right to inspect and copy judicial records and documents **98 S.Ct. 1312**. In fact, this long-established common law right has played a crucial role in the development of First Amendment jurisprudence.

**U.S. Vs. Upton, 856 F.Supp. 727**, upon request of the defendant the government shall permit defendant to inspect and copy or photograph, books, papers, documents, photographs--- or copies or portions thereof

which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial.

Here we have a civil action where some one was denied proper medical treatment in which is available to the population. Cruel and unusual punishment. **Pacitti Vs. Macy, 193 F.3d 766**, parties may obtain discovery regarding any matters, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any party.

The plaintiff is requesting copies of the defendants insurance policies. And inquiring about the type of security by the department of correction. The type of health plan coverage also. He has a clear right to the documents as to impeachment and to review as protect on his monetary claims against all of the defendant's. $10,000.00 each and who will provide said operation and medication while he recovers.

Subdivision (b)(2)-Insurance policies. Both the case and commentators are sharply in conflict on the question whether defendant's liability insurance coverage is subjected to discovery in the usual situation when the insurance coverage is not itself admissible and does not bear on another issue in the case. Example of federal cases require disclosure and supporting comments. **Cook Vs. Nelty, 253 F.Supp. 825**(cases cited) **Johanek Vs. Aberle, 27 F.R.D. 272 D. Mont.** (1961) **Williams, Discovery of Dollar Limits in liability policies in automobile tort cases. 10 Ala. L. Rev. 353** (1958).

Discovery of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case. So that settlement and litigation strategy are based on knowledge not speculation.

The plaintiff is trying to reduce the confusion which may occur. Every element of work product helps to satisfy the due process requirements. And it lends a hand to even the trial courts findings and the jury. What is intended by plaintiff is a safe fair trial. Positive proof and negligence by the defendant's and the violation of their

3.

professional duties to treat a human being as a person and not like an animal. The saving of human abilities in our sacred land, under on god. The glory of stars and stripes.

Discrepancy between his testimony and earlier statements may result from lapse of memory ordinary in accuracy, a written statement product for the first time at trial may give such discrepancy a prominence in which they do not deserve. In appropriated cases the court may order a party to be disposed before his statement is produced. E.g. <u>Smith Vs. Central Line Service Co., 39 F.R.D. 15, McCoy Vs. General Motors Corp., 33 F.R.D. 354</u> (W.D. Pa. 1963). Commentators strongly support the viewing that a party be able to secure his statement without a showing.

In some instances, the opinions are explicit in relating expanded discovery to improve Cross-examination and rebuttal at trial. <u>Frank's Vs. National Dairy Products Corp., 41 F.R.D. 234, U.S. 23.76, Acres 32 F.R.D. 593</u>. Scope of discovery under these rules was to be liberally constructed so as to provide both parties with information essential to proper litigation on all facts. <u>Mallinckrod & Chemical Works Vs. Goldman, Sacks & Co. S.D. NY 1973, 58 F.R.D. 384</u>.

The satisfactory would pay off to every one and there has been initiations of interrogatories by Attorney Marsha Davis. The Allen Gold Attorneys have not yet requested such information, in which the plaintiff does not have. All of the medical records have to be part of discovery for plaintiff's possession, when the Department of Corrections turns them over. Also a motion for summery judgement might be more exclusive to resolve these matters.

<u>Hickman Vs. Taylor, 67 S.Ct. 385</u>, denial of production of this nature does not mean that any materials, non-privileged facts can be hidden from the petitioner in this case. He may not be unduly hindered in the preparation of his case, in the discovery of fact or in his anticipation of his opponent's position.

Equity rule 58, relating to discovery, interrogatories, inspection of documents has been abrogated by the adoption of rule 26-37 of the rules. <u>Nichols Vs. Sanborn Co., D.C. Mass. 1938, 24 F.Supp. 988</u>.

Thus, Subdivision (b)(4)(a) draws no line between complex and simple cases, or between cases with many experts and those with but one. It establish by rule Substantially the procedure adopted by decision of the court. **<u>Knight Vs. Villian & Fussio, 39 F.R.D. 11.</u>**

The complete nature and impact of the sophistication as to whether this case be complexed enough would have to be based on the number of witnesses and how many experts testify and what they testify to. There is a number of Doctor's here. Bone specialist, arguments on medication, does, quantities, and the sling. The plaintiff has but a 3.6 grade average in reading and writing. He is going to attend Mrs. Grauls Class, its like a head start class for the slow learning. I had to do this for Phan Hue and I put an affidavit with the motion for appointment of counsel. I was kept here for a few extra days on a mis up on a bail piece. My name is Anthony Rish. My release date now is April 17, 2002, Judge Toole was my Judge out of Luzerne County Court of Common Pleas.

Wherefore the plaintiff requests that proper compliance by the defendant's attorneys turn over the said materials. These are very vital to generate clear view of the case to this trial. It would help to build facts for the jury and the court. Plus they are needed to meet the requirements of the interrogatories. To be accurate with information.

Respectfully Submitted,

_____                Dated: 4-25-02
Phan Hue    DY-0577
660 State Route 11
Hunlock Creek, PA   18621

5.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHAN HUE | : | No. 1:CV-01-1064 |
|     Plaintiff | : | |
| | : | |
| VS. | : | (Judge Kane) |
| | : | |
| J. UPDIKE, P.A., J. MATALONI | : | (MAGISTRATE JUDGE SMYSER) |
| E. O'BRIEN, D. HAZLAK | : | |
|     Defendants | : | |

### Certification

The plaintiff is now serving the defendant's copies of the **MOTION FOR ENLARGEMENT OF TIME TO FILE INTERROGATORIES.** And Copies of **DISCOVERY INSPECTION** as followed, persons listed below by placing same in the United States mail, first class, postage prepaid, at Hunlock Creek, Pennsylvania addressed to the following.

Middle District Court  
Clerk of Courts  
235 N. Washington Ave., P.O. Box 1148  
Scranton, PA   18501-1148

Marsha Davis  
55 Utly Drive  
Camphill, PA.   17011

                Allen Gold

_____       Dated:  4-25-02
Phan Hue    DY-0577
660 State Route 11
Hunlock Creek, PA   18621