ORIGINAL

FILED
HARRISBURG, PA

JUN 0 6 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHAN HUE,                          :
                                   :
    Plaintiff,              :        Civil No. 01-CV-1064
                                   :
v.                                 :        (Judge Kane)
                                   :
JAMES UPDIKE, et al.,              :        (Magistrate Judge Smyser)
                                   :
    Defendants.             :


## BRIEF OF CORRECTIONS DEFENDANTS IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT


## PROCEDURAL HISTORY


Hue initiated his action with the filing of a Complaint and an Application for

*in forma pauperis* status on June 15, 2001.  The Corrections Defendants filed a

Motion to Dismiss the Complaint on February 8, 2002.  That Motion to Dismiss

was denied by the Court on May 10, 2002. The Court issued a scheduling Order on

March 6, 2002 indicating discovery is to be completed by August 5, 2002.  On

May 15, 2002, Corrections Defendants filed their answer to Plaintiff's complaint with affirmative defenses. (DOC. No. 36) On May 17, 2002, Magistrate Judge Smyser ordered the conditional appointment of counsel for Plaintiff, denied Plaintiff's examination by a bone specialist and also granted Plaintiff an enlargement of time in which to file answers to Defendants' interrogatories (DOC. No. 39).  On May 24, 2002, Defendant Updike filed his answer and affirmative defenses (DOC. No. 40).  The last day to file discovery motions is July 1, 2002.[1]

Corrections Defendants served interrogatories and request for production of documents on the Plaintiff on April 1, 2002.  The Plaintiff failed to timely respond to Defendants Discovery requests, instead Hue filed extensive interrogatories on the Corrections Defendants, and other defendants, by filing them with the court on April 30, 2002.   Simultaneously, Corrections Defendants filed a motion for enlargement, first request, on May 30, 2002 with this motion for summary judgment (DOC. No.  ). That enlargement sought delay in responding to Plaintiff's Discovery motions until ten (10) days after an order is entered on this Motion for Summary Judgment.

---

[1] See Case Management Order filed March 6, 2002, Doc.#20.

## C.    Statement of the Alleged Facts

Hue's complaint generally alleges claims of deliberate indifference to his

medical needs.[2]

## STATEMENT OF MATERIAL FACTS

Local Rule ("L.R.") 56.1 Statement of Material Facts ("SOF") has been

appended to the moving Defendants' Summary Judgment Motion as Exhibit "A."

Pursuant to L.R. 5.1(f), the exhibits have been bound separately.  Reference to a

SOF herein is an implicit reference to the corresponding number of Exhibit "A."


## QUESTION PRESENTED

**SHOULD SUMMARY JUDGMENT BE ENTERED AGAINST THE
PLAINTIFF PURSUANT TO 42 U.S.C § 1997e(a) BECAUSE HUE,
WHO CLAIMS DENIAL OF FEDERAL RIGHTS THAT AROSE
WHILE HE WAS A CONFINED STATE PRISONER, DID NOT
EXHAUST HIS AVAILABLE ADMINISTRATIVE GRIEVANCE
REMEDIES UNDER THE STATE'S GRIEVANCE PROCEDURES
BEFORE SEEKING JUDICIAL RELIEF?**

**Suggested Answer:  Yes.**

---

[2] See Complaint, p. 2-2B, Doc. 1.

## SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56(c) provides, in pertinent part that summary judgment "shall be rendered forthwith if the . . . [case records] show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Supreme Court's summary judgment trilogy, *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), and *Matsushita Elec. Induct. Co. v. Zenith Radio Co.,* 475 U.S. 524 (1986), set forth the controlling standard for summary judgment motions.

## ARGUMENT

**SUMMARY JUDGMENT SHOULD BE ENTERED AGAINST THE PLAINTIFF PURSUANT TO 42 U.S.C § 1997e(a) BECAUSE HUE, WHO CLAIMS DENIAL OF FEDERAL RIGHTS THAT AROSE WHILE HE WAS A CONFINED STATE PRISONER, DID NOT EXHAUST HIS AVAILABLE ADMINISTRATIVE GRIEVANCE REMEDIES UNDER THE STATE'S GRIEVANCE PROCEDURES BEFORE SEEKING JUDICIAL RELIEF.**

Two recent developments must first be mentioned. On February 26, 2002, the Supreme Court announced it decision in *Porter v. Nussle,* 534 U.S., 122 S.Ct. 983, 992 (2002), which has made clear that prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through a grievance process. Further, although "[o]nce within the discretion of the district court, exhaustion in cases covered by §1997e(a) is now mandatory . . . **[a]ll 'available' remedies must**

4

now be exhausted; . . . [e]ven when a prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit . . . [and] is now required for all 'actions(s) . . . brought with respect to prison conditions . . . .'" *Porter,* 122 S.Ct. at 984. Additionally, "[i]t seems unlikely that Congress, when it included . . . a firm exhaustion requirement, meant to leave the need to exhaust to the pleader's option." *Id.,* 122 S.Ct. at 985 (emphasis added).

Secondly, on April 3, 2002, the Third Circuit decided *Ray v. Kurts*, No. 99-3446 (3d Cir. April 3, 2002). Exhibit "E." There, a panel of the court concluded that generally failure to exhaust under the PLRA is an affirmative defense that defendants must prove rather than a pleading requirement that must be satisfied by the inmate.[3] While not conceding the correctness of the panel's decision in light of *Porter*, but assuming for the sake of argument that *Ray* was correctly decided, these moving Defendants raised the Plaintiff's failure to fully exhaust his administrative remedies as their 21st Corrections Defendants' Answer. (Doc. No. 36); SOF 21.

---

[3] This Court's Order entered April 9, 2002 (Doc. No. 65), cited *Ray* as "direct[ing] that the defendant must raise any claim with respect to the plaintiff's failure to exhaust administrative remedies as an affirmative defense." If the *Ray* panel decision withstands the test of time, this case will serve as an illustration of the extensive burden placed on the state actors to prove that this action should never have been "brought," as being barred under a statute designed to reduce the litigation related expenses and other burdens on state actors and the court arising from litigation generated by confined inmates.

Summary judgment must be entered in favor of the moving Defendants for Hue's failure to exhaust his available administrative remedies before he filed suit because: 1.) no grievance he ever filed was taken to Final Review, the third and final step of the Department's Inmate Grievance System, and therefore he did not exhaust; 2.) although he filed Grievance RET 0112 on April 12, 2000, requesting medication and another Grievance RET 0185 on June 23, 2000, requesting an appointment with the dentist for his dentures, he did not "appeal" their rejections to the Facility Manager (Step 2) in order to proceed to Final Review, the third step; 3.) monetary or other relief normally available from a court is "available" under the Department's grievance system but Hue never requested it in either Grievance. (See SOF 19)

**1.    No Hue grievance was ever taken to Final Review.**

This action was commenced on June 15, 2001. (Doc. No. 1). Both well before and ever since this event, the Department of Corrections ("Department") has utilized the three-step grievance procedure. SOF 5. From January 1, 2001, through the date of Reisinger Declaration (Exhibit "D"), state prisoner Hue has never appealed any grievance he filed to Final Review, and therefore, for any grievance that Hue claims has relevancy to the claims he asserted in his court filing(s), Hue has never completed the third and final step of the available

administrative remedies outlined in the Department's policy, DC-ADM 804. SOF 7.

In *Booth v. Churner,* 532 U.S. 731, 121 S. Ct. 1819 (2001), the inmate filed an administrative grievance with the Department charging some of the acts he later alleged in his action, but he did not go beyond the first step, and never sought intermediate (Step 2) or final administrative review (Step 3) after the prison authority denied relief at Step 1. Booth's failure to avail himself of the later stages of the Department's administrative process before filing his federal lawsuit led to dismissal at the trial level, and affirmance thereafter by the Third Circuit and the Supreme Court. *Id.* Booth sought to evade the "exhaustion" requirement by claiming that the grievance procedure could not provide him with the purely monetary relief requested in his federal action. His position was rejected by the Supreme Court which found that Congress "mandated exhaustion . . . regardless of the relief offered through administrative procedures." *Id.* 121 S. Ct. at XXX.

**2.    No Step 2 "appeal" was taken on Grievance 0185.**

Hue did file a grievance dated June 8, 2000 on June 14, 2000, which was assigned number 0185. SOF 8. In his initial grievance filing, Hue related that he had made several attempts to get his upper and lower dentures to no avail. He wanted an appointment with the dentist to get his dentures. SOF 12; Semanski Exhibit "C."

Grievance Coordinator J. Mataloni at Step 1 rejected the grievance as Hue had failed to show for several appointments with the dentist. However, he did set up another appointment for Hue with the dentist for June 23, 2000 and told Hue to start keeping his scheduled appointments. SOF 13.

Grievance 0185 was neither resubmitted nor was its rejection appealed to Step 2. SOF 14. As the Third Circuit noted, where the plaintiff initiated the grievance procedure without completing, *Booth*, 206 F.3d 289, 293 n. 3 "[t]he time has long passed" for plaintiff to rectify this defect. So it is true with Hue, his "time has long passed." See Reisinger Declaration ¶ 7.

### 3.    No Step 2 "appeal" was taken of Grievance 0112

Grievance No. 0112 is dated April 12, 2000 and was responded to on April 14, 2000. In this grievance, Hue alleges the medical staff was not allowing him to see a bone specialist and was denying him his arm restraint and medication. He just wanted pain medication until they do something. SOF 8 & 9 (Semanski Declaration ¶4). Hue was told by J. Lengyel that he should sign up for sick call if he needs pain medicine and that J. Mataloni, HCA, can not prescribe medication.

Grievance 01-12 was neither resubmitted nor was its rejections appealed to Step 2. Again, the time is long passed for Plaintiff to rectify this defect. (See Reiseinger Declaration ¶7)

### 4.    No monetary relief was requested, although available.[4]

Absent from either Grievance 0112 or 0185, is any mention by Hue that he was being forced to work inspite of any injury or that he was unable to work. (SOF 15). Lacking in both grievances is any specific complaint against Joseph Mataloni, Dale Hazlak or Edward O'Brien personally or by reference to their position at SCI-Retreat. SOF 17. Clearly, neither 0112 nor 0185 state that Hue is suffering physical or psychological pain/duress. (DOC. No. 1, p.3; SOF 17). In addition to these deficiencies, conspicuously absent from Grievances 0112 & 0185, is any demand for monetary relief (compensatory and punitive), which is "available" under 804. Hue could have requested "compensation or legal relief normally available from a court." He did not.    SOF 18.

In his court filings Hue claimed monetary damages for alleged civil rights violations for prison conditions that he asserted arose during his confinement as a state prisoner at SCI-Retreat. SOF 3.

The Department's grievance process, not unlike other administrative matters, proceeds first with the complainant specifically stating claims and

---

[4] Hue's monetary claims are subject to dismissal pursuant to the statute for that relief is foreclosed as a consequence of his failure to exhaust. *Booth,* 206 F. 3d at 293 n.3 ("both parties agree that the time has long past for Booth to pursue his normal administrative remedies; therefore, he cannot cure the defect in his complaint . . . .").

specifying what he or she wants in the form of relief to resolve the matter. DC-ADM 804 (VI)(A)(1)(d) "Exhibit "B." It proceeds forward from there.

While inmates may not know in all instances the precise legal term for what they want, they do know what it is that they believe will resolve their specific problem. The simplest form of relief known to man and universally understood to be a request for compensation for a "wrong" is, and has always been, money. It is neither complex nor highly technical. Whether one embosses that term by using "compensation" is not outcome determinative as even the term compensation is universally understood and recognized to be a request for monetary relief. I want money, or compensation, or reimbursement, is just not difficult to state, understand or interpret. In his court filings Hue specifically requested a certain sum from each defendant, as well as, monetary compensation commensurate with the physical and psychological pain /duress suffered to date. SOF 3.

Yet, Hue never once asked for, demanded, or requested money in his grievances. Hue never availed himself of this "available" administrative remedy (SOF 7), although monetary relief for a "violation of a federal right" is precisely the relief he sought in his civil action filing. SOF 3. There is no reason to believe, or evidence to suggest, that availing oneself of the administrative process is at the inmate's option. In fact, in light of the Supreme Court's holdings, resort by the inmate to the process is not only mandatory; it is no longer subject to the discretion

of the District Court. *Porter*, 122 S.Ct. at 985. If one cannot opt out of the scheme because the grievance process is thought not to provide the relief requested, *Booth, Porter*, certainly Hue cannot opt out where, as here, the administrative process provides the very monetary relief to which he claims entitlement in his federal civil action.

In an unreported decision, the Third Circuit has also suggested that an inmate will not be allowed to pursue a claim for monetary relief when such a claim in not pursued administratively. *See Geisler v. Hoffman*, Civil No. 99-1971, Slip Op. at 4 (3d Cir. Sept. 12, 2000); Exhibit "F." As the Third Circuit observed: "(t)o this end, even if *Geisler* had brought his grievance before the two appellate tiers provided for by DC-ADM 804, exhaustion in that setting clearly would not have exhausted his current claim for monetary relief, a claim which he never began to pursue administratively." *Id.*, Slip Op. at 4. Here, as there, Hue never began to pursue a monetary claim administratively at any time.    Although *Geisler* is not precedential because it is not published, it is submitted that in light of the Third Circuit's strict exhaustion requirements in *Booth*, the Court of Appeals will, particularly in light of the United States Supreme Court rulings in *Booth* and *Porter*, affirmed that persuasive reasoning of *Geisler* and hold that exhaustion requires that all inmates to seek all available relief under the Department's grievance system.

11

In fact, three members of this Court relying upon *Geisler* have held that an inmate-plaintiff's failure to seek monetary damages in prison grievance proceedings precluded the inmate from seeking such relief in a civil rights action. *See Laird v. Pennsylvania Department of Corrections,* Civil No. 3:CV-00-1039 (M.D. Pa. Sept. 26, 2001)(Nealon, J.).)(Exhibit "G"); *Chimenti v. Kimber,* Civil No. 3:CV-01-0273 (M.D. March 15, 2002)(Vanaski, CJ.).)(Exhibit "H"); *Thomas v. Meyers,* Civil No. 3:CV-00-1887 (M.D. Pa. March 25, 2002)(Caputo, J.).)(Exhibit "I"). *But see Knight v. Horn,* Civil No. 3: CV-00-1717 (M.D. Pa. December 27, 2001)(Munley, J.).) (Exhibit "J").

In *Laird,* the inmate asserted he was received no response to his grievance and filed no appeal on it or the lack of response to it. Judge Nealon alternatively held that the inmate failed to exhaust his monetary claim because even had he complied with the grievance process, inmate Laird, like the inmate in *Geisler* and inmate Hue in this case, did not seek monetary damages administratively and that relief would be foreclosed as untimely. In *Chimenti,* one claim was dismissed as unexhausted where the inmate did not seek administrative relief initially through the grievance procedure before asserting claims in Federal Court. In another grievance, the inmate did not mention several of the remaining Defendants by name and did not seek any other relief except to remove one doctor. Even with

12

regard to the specifically mentioned doctor, the inmate included no request for monetary relief in his administrative complaints.

In *Thomas*, the inmate did not seek any relief, including monetary relief. The court in *Knight,* ruling on a 12(b)(6) motion, refused dismissal even though, while pursuing injunctive relief in a grievance, the inmate did not pursue monetary or declaratory relief administratively. *Geisler* was not helpful to the court in *Knight,* but appears so here. Moreover, since *Knight* was issued, *Porter* has been decided by the Supreme Court, as have been both *Chimenti* and *Thomas*.

As the United States Supreme Court recently stated in *Porter*, prisoners must exhaust administrative remedies to any claim that arises in the prison setting, regardless of any limitation on the kind relief that may be gained through the grievance process. *Porter*, 122 S.Ct. at 992. It is undisputed that the claims that Hue asserts in this federal action arose in the prison setting, and involve what Hue claims to be general circumstances and particular episodes of particular wrongs that he further asserts occurred while he was a state prisoner. His claims now in a civil action for monetary and other relief is foreclosed as a consequence of his many failures regarding the process outlined herein, not the least of which is his failure to seek such available relief through the Department's grievance process as required by statute and his claims must be dismissed. SOF 7.

13

## **CONCLUSION**

For all of the foregoing reasons, moving Defendants respectfully request that the Court enter an order recommending that Defendants Motion for Summary Judgment be granted and that judgment be entered in their favor and against the Plaintiff, and the Court is further requested to grant such other relief as may be necessary, just and appropriate under the circumstances.

Respectfully submitted,

Office of General Counsel


Marsha M. Davis
Assistant Counsel
Attorney I.D. No. 28018
Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated:  June 6, 2002

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHAN HUE,                                :
                                         :
    Plaintiff,        :       Civil No. 01-CV-1064
                                         :
    v.                :       (Judge Kane)
                                         :
JAMES UPDIKE, et al.,                    :       (Magistrate Judge Smyser)
                                         :
    Defendants.       :

## CERTIFICATE OF SERVICE

I hereby certify that I am this day depositing in the U.S. mail a true and correct copy of Brief of Corrections Defendants' in Support of Motion for Summary Judgment in the above-referenced matter.

### Service by first-class mail addressed as follows:

Phan Hue, DY 0577                Alan Gold, Esquire
SCI-Retreat                      Monaghan & Gold, P.C.
660 State Route 11               7837 Old York Road
Hunlock Creek, Pa. 18621         Elkins Park, PA  19027

*Marilyn Jones*

Marilyn Jones
Clerk Typist 2

Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated:  June 6, 2002