ORIGINAL

**FILED**
HARRISBURG, PA

JUN 0 6 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHAN HUE,                           :
                                    :
    Plaintiff,               :        Civil No. 01-CV-1064
                                    :
    v.                       :        (Judge Kane)
                                    :
JAMES UPDIKE, et al.,               :        (Magistrate Judge Smyser)
                                    :
    Defendants.              :


## EXHIBITS IN SUPPORT OF CORRECTIONS DEFENDANTS'
## SUMMARY JUDGMENT MOTION

**EXHIBIT A:**    Statement of Material Facts under Local Rule 56.1.

**EXHIBIT B:**    Pennsylvania Department of Corrections' Inmate Grievance System Policy DC-ADM 804, effective October 1994, with five (5) Supplemental Bulletins.

**EXHIBIT C:**    Unsworn Declaration of Marilyn Semanski, Pennyslvania Department of Corrections and her Exhibits:

    A.  Hue's Grievance Number RET 0112.
    B.  April 14, 2000 response to RET 0112.
    C.  Hue's Grievance Number RET 0185.
    D.  June 23, 2000 response to RET 0185.

**EXHIBIT D:**   Unsworn Declaration of Kristen P. Reisinger, Pennsylvania Department of Corrections.

**EXHIBIT E:**   *Ray v. Kurts*, No. 99-3446 (3d Cir. April 3, 2002).

**EXHIBIT F:**   *Geisler v. Hoffman*,  Civil No. 99-1971 (3d Cir. Sept. 12, 2000), 234 F.3d 1264, 2000 U.S. App.LEXIS 25574.

**EXHIBIT G:**   *Laird v. Pennsylvania Department of Corrections*, Civil No. 3:CV-00-1039 (M.D. Pa. Sept. 26, 2001)(Nealon, J.).

**EXHIBIT H:**   *Chimenti v. Kimber*, Civil No. 3:CV-01-0273 (M.D. March 15, 2002)(Vanaski, CJ.).

**EXHIBIT I:**   *Thomas v. Meyers*, Civil No. 3:CV-00-1887 (M.D. Pa. March 25, 2002)(Caputo, J.).

**EXHIBIT J:**   *Knight v. Horn*, Civil No. 3:CV-00-1717 (M.D. Pa. December 27, 2001)(Munley, J.).

Respectfully submitted,

Office of General Counsel

BY, *Marsha M. Davis*

Marsha M. Davis
Assistant Counsel
Attorney I.D. No. 28018
Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill PA  17011
(717) 731-0444

Dated: June 6, 2002

2

**EXHIBIT**

tabbies®

A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHAN HUE,                        :

    Plaintiff,              :        Civil No. 01-CV-1064

                   :

    v.                      :        (Judge Kane)

                   :

JAMES UPDIKE, et al.,            :        (Magistrate Judge Smyser)

                   :

    Defendants.             :

## STATEMENT OF MATERIAL FACTS UNDER LOCAL RULE 56.1 IN SUPPORT OF CORRECTIONS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Corrections Defendants hereby submit the following statement of material facts in support of their Motion for Summary Judgment:

1.    At all times relevant, plaintiff, Phan Hue ("Hue"), under Department Inmate Number DY-0577, was confined as an inmate at the State Correctional

Institution at Retreat ("SCI-Retreat").   Exhibit "C", Semanski Declaration ¶3.

2.   On June 15, 2001, Hue filed a civil rights complaint ("Complaint") in this Court in which he named Joseph Mataloni, Health Care Administrator, Dale Hazlak, Unit Manager and Edward O'Brien, Food Services Manager at SCI-Retreat as Defendants.   Hue alleges they engaged in activity which resulted in his being forced to work while injured, being denied an opportunity to see a bone specialist and being denied his shoulder an arm restraint and medication.   All of which allegedly violated his constitutional rights. (Doc. No. 1).   He seeks monetary damages as well as removal of any misconducts from his file resulting from said unconstitutional conduct of the Defendants. (Doc. No. 1, p.3)

3.   In the relief section of his initial filing (Doc. No. 1, p. 3), Hue claimed "monetary compensation [awarded by a jury] commensurate with the physical and psychological pain/duress suffered to date."   He also requests punitive damages in the amount of "10,000.00 from each defendant so that they do not put another individual through the same trauma." (Doc. No. 1, p.3)

4.   At all times relevant to this lawsuit, Hue was a confined state prisoner. Exhibit "C", Semanski Declaration ¶3.

2

5.    At all times relevant to this lawsuit, the Pennsylvania Department of corrections has an inmate grievance system, which utilized a three step grievance procedures. DC-ADM 804 ("Inmate Grievance System" effective October 20, 1994 with five (5) supplemental bulletins). DC-ADM 804, VI ("Procedures") provide that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility/Regional Grievance Coordinator    ("Step 1"); an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections Regional Director ("Step 2"); and a final written appeal may be presented to the Chief Hearing Examiner, (after November 1, 1997 and before November 1, 2000). After November 1, 2000, a final written appeal had to be presented to the Chief Secretary's Office of Inmate Grievances and Appeals, ("Step 3 or final review"). Exhibit "D", Reisinger Declaration ¶8. *Booth v. Churner,* 206 F.3d 289, 293 n. 2 (3$^{d}$ Cir. 2000).

6.    DC-ADM 804, effective October 20, 1994, provides that a prisoner, in seeking review through the grievance system, " may submit a complaint related to a problem encountered during the course of his/her confinement." (DC-ADM 804 (IV)(A))

7.    In this case, Hue has never appealed to Final Review any inmate grievance which he filed. Therefore, for any grievance that Hue claims has relevancy

to the claims he asserted in his court filing(s), he never completed the third and final step of the available administrative remedies outlined in the Department's Policy DC-ADM 804. Exhibit "D," Reisinger Declaration ¶7.

8.    However, Hue did file grievances at SCI-Retreat dated April 12, 2000 and assigned SCI-Retreat No. 0112 and June 8, 2000, which was assigned SCI-Retreat No. 0185.  Exhibit "C," Semanski Declaration ¶4 (a & c).

9.    Hue's initial grievance document, (Step 1 of the Administrative Procedure for Grievance 0112) claimed that he had was given pain medication and taken off it and now just wanted a pain reliever till they do something.  See Exhibit "C," Semanski Declaration ¶4a.

10.    In response to the initial grievance, and in accordance with Step 1 of the administrative grievance process, Grievance Coordinator Lenygel rejected Grievance 0112. See Exhibit "C," Semanski Declaration ¶4b, her Exhibit "B".

11.    Hue never resubmitted Grievance 0112 and never appealed Mr. Lengyel's rejection of it.  Exhibit "C," Semanski Delclaration ¶4 (e)(i).

12.    Hue's second grievance document (Step 1 of the Administrative Procedures for Grievance 0185) claimed that he had made several attempts to see the dentist and he needs an appointment to get his upper and lower dentures as

he is having trouble eating.  See Exhibit "C," Semanski Declaration ¶4 (c),
Exhibit C.

13.    In response to the initial grievance, and in accordance with Step 1 of the
administrative grievance process, Grievance Coordinator Lengyel referred
the matter to Joseph Mataloni, Health Care Administrator, who set up an
appointment with the Dentist for Mr. Hue and saw to it that Mr. Hue
attended this appointment.  In his response however, Mr. Mataloni pointed
out that Mr. Hue had several prior appointments with the Dentist that he had
failed to appear for or even refused to appear at.  Exhibit "C," Semanski
Declaration ¶4 (d), Exhibit "D".

14.    Hue never resubmitted Grievance 0185 and never appealed Mr. Lengyel's
rejection of it.  Exhibit "C," Semanski Declaration ¶4 (e)(i).

15.    If Hue was unsatisfied with the responses, he could have appealed (step 2 or
initial appeal), to the Facility Manager, Superintendent Klem; the first of his
two appeals under the administrative grievance process.  Exhibit B, 804
(VI), with supplemental bulletins.  He did not do so.  Semanski Declaration
¶4 (e)(ii).  Reisinger Declaration ¶7 & 8.

16.    In Grievance 0185 or 0112 Hue never mentioned that he was being forced to
work in spite of an injury or that he was unable to do the work.  Semanski
Declaration ¶4 (e)(iv).

17. Hue never filed a grievance involving Dale Hazlak, Edward O'Brien or Joseph Mataloni indicating they were involved in any actions constituting retaliation or forcing him to work, or for that matter, any wrongdoing whatsoever. Semanski Declaration ¶4 (e)(vi).

18. Hue never requested monetary relief in any grievances filed. Semanski Declaration ¶4 (e)(vi).

19. Thus, Hue's claims, whether against Mataloni, Hazlak or O'Brien, are foreclosed as a consequence of his failure to exhaust or even seek specific relief or monetary relief through the Department's grievance process. Reisinger Declaration ¶9.

20. Hue's claims are subject to dismissal pursuant to 42 U.S.C. § 1997e(a), which provides in part that: "No action shall be brought with respect to prison conditions under …(42 U.S.C. §1983)…by any prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

21. On May 14, 2002, Corrections Defendants filed their Answer to Plaintiff's Complaint with affirmative defenses. Defendants', in the 21st Affirmative Defense," asserted that "Plaintiff failed to fully exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a)." (Doc. No. 36) Specifically, the 21st Affirmative Defense, reads:

## <u>TWENTY-FIRST AFFIRMATIVE DEFENSE</u>

Under Section 1997(e)(a) of Title 42 U.S.C., added by the Prison Litigation Reform Act (PLRA), a state prisoner, as Plaintiff is and was, must exhaust all available administrative remedies with regard to each and every issue prior to seeking relief pursuant to 42 U.S.C. §1983 or any other federal law. The Plaintiff is prohibited and barred from proceeding in federal court due to his failure to exhaust his administrative remedies.

Respectfully Submitted,

Office of General counsel

BY: _____
        Marsha M. Davis
        Assistant Counsel
        Attorney I.D. No. 28018
        PA Department of Corrections
        55 Utley Drive
        Camp Hill, PA  17011
        (717) 731-0444

Dated:  June 4, 2002



EXHIBIT

tabbies

B

**POLICY STATEMENT**

**Commonwealth of Pennsylvania ● Department of Corrections**

| Policy Subject: | Policy Number: |
|---|---|
| **Consolidated Inmate Grievance Review System** | **DC-ADM 804** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| July 20, 1994 | Joseph D. Lehman, Commissioner | Oct. 20, 1994 |

## I. AUTHORITY

The Authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

It is the purpose of this Administrative Directive to establish policy regarding the Consolidated Inmate Grievance Review System and to ensure that inmates have an avenue through which resolution of specific problems can be sought.

This directive sets forth procedures for the review of Inmate Grievances not already covered by other Administrative Directives and policies. It also provides the method through which review procedures established by other directives are to be integrated with the procedures outlined in this directive.

## III. APPLICABILITY

This policy is applicable to all employees of the Department of Corrections and all inmates under the jurisdiction of the Department of Corrections and to those individuals and groups who have business with or use the resources of the Department of Corrections.

## IV. DEFINITIONS

A. Grievance -

The formal written expression of a complaint submitted by an inmate related to a problem encountered during the course of his/her confinement.

B. Grievance Coordinator -

The Corrections Superintendent's Assistant in an institution or the Assistant to the Regional Director in Community Corrections who is responsible for the overall administration of the Inmate Grievance System in that facility\region. This includes all data collection, tracking and statistical reporting. At the direction of the Facility Manager or Community Corrections Regional Director, the Grievance Coordinator may be called upon to provide Initial Review of certain grievances.

DC-ADM 804

C. Grievance Officer -

An appropriate Department Head or Management Level staff person designated by the Facility Manager or CC Regional Director to provide Initial Review of an inmate grievance arising from his/her specific area of responsibility, e.g., a Unit Manager would be assigned to provide Initial Review of a grievance from the housing unit. If the grievance arises from the Food Services Area, the Grievance Officer designated by the Facility Manager shall be the Food Services Manager, likewise, the Corrections Health Care Administrator would be the Grievance Officer for a grievance related to a Health Care issue.

D. Central Office Review Committee **(CORC)** -

A committee of at least three (3) Central Office staff appointed by the Commissioner of Corrections to include the Commissioner, Executive Deputy Commissioner and Chief Counsel or their designees.

With the exception of appeals from disciplinary action under DC-ADM 801 and appeals arising from Health Care or medical treatment grievances, the CORC Shall have responsibility for direct review of all Inmate Appeals for Final Review.

E. Central Office Medical Review Committee **(COMRC)** -

A committee appointed by the Commissioner to include the Director of the Bureau of Health Services and relevant Bureau staff. The COMRC shall have responsibility for direct review of grievance appeals related to Health Care and medical treatment issues.

F. Initial Review -

The first step in the formal Inmate Grievance Process for all issues except those already governed by other specified procedures (see VI E). All reviews conducted below the level of Facility Manager or Regional Director are considered initial reviews.

G. Appeal from Initial Review -

The first level of appeal of a decision rendered at Initial Review. This appeal is directed to the Facility Manager or Community Corrections Regional Director.

**An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.**

**Only issues raised at Initial Review shall be appealed.**

H. Final Review -

Upon completion of Initial Review and appeal from Initial Review, an inmate may seek Final Review from the Central Office Review Committee **(CORC)**, for any issue involving continued non-compliance with Department of Corrections directives or policy, the ICU Consent Decree or other law.

**V.  POLICY**

A. It is the policy of the Pennsylvania Department of Corrections that every individual committed to its custody shall have access to a formal procedure - the Consolidated Inmate Grievance Review System - through which the resolution of problems or other issues of concern arising during the course of confinement may be sought. For every such issue there shall be a forum for review and an avenue of appeal, but only one.

DC-ADM 804

B. Informal Resolution of Problems - All inmates are expected to attempt to resolve problems or differences with staff on an informal basis through direct contact or by sending a request slip to appropriate staff. Action taken by the inmate to resolve the situation must be indicated on the grievance form, Section B.

The Grievance Form, DC 804, Part I, is available in each Housing Unit or upon request from Unit staff. This is the proper form to be used for submission of a grievance and it should be completed according to the directions provided.

**It is required that a genuine effort be made to resolve the problem before the grievance system is used. The inmate must document these efforts in Section B of the Grievance Form. Failure to do so may result in the grievance being returned to the inmate without action. The inmate may then refile the grievance with Section B properly completed.**

C. Any inmate using the grievance system shall do so in good faith and for good cause.

No one shall be punished, retaliated against or otherwise harmed for good faith use of this grievance system.

Deliberate misuse of the grievance system may result in restricted access or disciplinary action, at the discretion of the Facility Manager.

D. It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review. See VI., C. 1.

E. The Inmate Grievance Review System is intended to deal with a wide range of issues, procedures or events which may be of concern to inmates. It is not meant to address incidents of an urgent or emergency nature. When faced with such an event, the inmate should contact the nearest staff member for immediate assistance.

## VI. PROCEDURES

A. A Grievance shall be submitted to the Grievance Coordinator in the following manner.

1. All grievances shall be in writing and in the format provided on the forms supplied by the institution (DC-804 Part 1). See Section V., B.

2. All grievances shall be presented individually. Any grievance submitted by a group of inmates will not be processed, however, if the Grievance Coordinator believes that the issue being grieved is legitimate, it will be referred to appropriate Management Staff for review.

3. Only an inmate who has been personally affected by a Department or institution action or policy shall be permitted to seek review of a grievance or appeal. The inmate grievant must sign the grievance or appeal.

4. All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text of the grievance must be legible and presented in a courteous manner. The inmate should identify any persons who may have information which could be helpful in resolving the grievance. The inmate may also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, the ICU Consent Decree or other law. The inmate may request to be personally interviewed prior to the decision on Initial Review. Any inmate who submits a grievance containing false and malicious information may be subject to disciplinary action.

DC-ADM 804

5. Grievances and appeals based on different events should be presented separately, unless it is necessary to combine the issues to support the claim. The Grievance Officer may combine multiple grievances which relate to the same subject.

   **NOTE:**    At any point in the grievance process, the inmate has the right to withdraw the grievance.

B. Initial Review

   1. Initial Review Procedures must be completed before Appeal from Initial Review or Final Appeal may be sought. Any claims of violation of the ICU Consent Decree must be raised through this grievance procedure before they may be addressed by any court.

   2. Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause.

   3. The Grievance Coordinator will forward the grievance to the appropriate Grievance Officer for investigation and resolution. The inmate grievant and other persons having personal knowledge of the subject matter may be interviewed. A grievant who has requested a personal interview, shall be interviewed.

   4. Within ten (10) working days of receipt of the grievance by the Grievance Officer, the grievant shall be provided a written response to the grievance to include a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance.

      The Grievance Coordinator may authorize an extension of up to an additional ten (10) working days if the investigation of the grievance is pending. If an extension is necessary, the grievant shall be so advised in writing.

C. Appeal from Initial Review

   1. An Initial Review Decision of a grievance on a Health Care or medical treatment issue may be appealed directly to the Central Office Medical Review Committee for Final Review within five (5) days of receipt by the inmate of the Initial Review decision. A grievance for which the Corrections Health Care Administrator conducted the Initial Review will usually be considered a Medical Grievance.

      All other appeals will be submitted as follows.

   2. An inmate may appeal an initial review decision to the Facility Manager or Community Corrections Regional Director in writing, within five (5) days from the date of receipt by the inmate of the Initial Review decision. **The inmate must appeal in this manner prior to seeking Final Review. Only issues which were raised for initial review may be appealed.**

   3. All appeals must conform to the requirements specified in Section VI A of this directive. The appeal must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any initial review decision will be permitted.

   4. The Facility Manager or Regional Director must notify the inmate of his/her decision within ten (10) working days after receiving the appeal. This decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision.

DC-ADM 804

D. Final Review

1. Any inmate who is dissatisfied with the disposition of an Appeal from Initial Review decision, may, within seven (7) days of receiving the decision, appeal any issue related to non-compliance with the ICU Consent Decree, other law, Department directive or policy, for final review. Only issues raised at the Initial Review and Appeal level may be referred for Final Review.

2. Final Review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause.

3. Final Review of all appeals will be sent directly to the CORC except the following:

   a. Medical Grievances which will be reviewed by COMRC.

   b. Requests for Final Review of appeals from disciplinary actions which were processed through DC-ADM 801. These will be reviewed by the Office of the Chief Counsel which may respond directly to the inmate or refer the appeal to the Central Office Review Committee **(CORC)** for further reviews.

The address of the **CORC/COMRC** is:

> **PA DEPARTMENT OF CORRECTIONS**
> **CENTRAL OFFICE REVIEW COMMITTEE**
> **PO BOX 598/2520 LISBURN ROAD**
> **CAMP HILL, PA  17001-0598**

4. Requests for Final Review must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any second level (Appeal from Initial Review) decision will be permitted.

5. The CORC\COMRC, or any member thereof, may require additional investigation to be made prior to a decision on a Final Review appeal.

6. The CORC\COMRC will review all issues properly raised according to the above procedures. It may also review and consider any other related matter.

7. For all Appeals receiving Final Review, the CORC/COMRC will issue its decision within twenty-one (21) days after receipt of an appeal.  The decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision.  The committee shall notify the grievant and Facility Manager/Regional Director of its decision and rationale.

8. The Chief Counsel will notify counsel for the ICU class of disposition by the CORC/COMRC of any matter raised on Final Review alleging a violation of the ICU Consent Decree.

E. Exceptions

Initial Review and Appeal from Initial Review of issues related to the following Administrative Directives shall be in accordance with procedures outlined therein, and will not be reviewed by the Grievance Officer or Grievance Coordinator.

1. DC ADM 805 - Policy & Procedures for Obtaining Pre-Release Transfer.
2. DC ADM 801 - Inmate Disciplinary and Restricted Housing Unit Procedures. See DC-ADM 801 VI., G & I
3. DC ADM 802 - Administrative Custody Procedures. See DC-ADM 802, VI, B, 1,2. Appeal from Initial Review, see DC-ADM 802, VI, B, 4, a.

DC-ADM 804

    4.   DC-ADM 814 - Incoming Publications

        See 814-IIIB, Appeal from Initial Review, see 814-IIID.

    Additionally, there may be other kinds of issues for which Initial Review Procedures have been previously established by Administrative Memorandum or Policy Statement.

F.  Admissions and Review

    1.  All proceedings pursuant to this directive are in the nature of settlement negotiations and will, therefore, be inadmissible before any court or other tribunal in support of any claim made against the Commonwealth or any employee. No resolution of any grievance offered as a result of this procedure shall be admissible before any court or other tribunal as an admission of violation of the ICU Consent Decree or any State or federal law.

    2.  No decision rendered as a result of the processing of a grievance shall be reviewable by any court unless it establishes a system or institution-wide violation of the decree.

G.  Completion of Review After Transfer

    Any inmate who is transferred after the filing of a grievance or appeal, but prior to the completion of the appeal process, may continue to pursue the grievance or appeal by notifying the Facility Manager or Regional Director of the facility in which confined when the grievance was filed. Adjustments in the various time limitations may be made to facilitate review.

## VII. SUSPENSION DURING EMERGENCY

In an emergency situation or extended disruption of normal institutional operation, any provision or section of this policy may be suspended by the Commissioner or his/her designee for a specific period of time.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the policies of the Department of Corrections.

## IX. SUPERSEDED POLICY AND CROSS-REFERENCE

This directive revises the Inmate Grievance System (DC-ADM 804, MAY 1, 1984), and supersedes the pilot grievance system in effect at selected DOC institutions. It does not supersede or repeal any portion of any other directive or policy statement. Where this directive is inconsistent with any other directive or policy, both shall be interpreted so as to provide full review of all issues raised, consistent with the scope and purpose of this directive. Conflicts will most frequently occur at the Initial Review level, where other directives establish committees to review specific issues.

Cross References:  DC-ADM 801, DC-ADM 802

ACA Cross-References:  3-4271

cc:  Executive Deputy Commissioner Reid
     Deputy Commissioner Clymer
     Deputy Commissioner Fulcomer
     Acting Deputy Commissioner Beard
     All Superintendents
     CCC Directors (4)
     File

Joseph D. Lehman,
Commissioner



**Bulletin**
**Commonwealth of Pennsylvania ● Department of Corrections**

| To: | Policy Subject: |
|---|---|
| **Superintendents** **Boot Camp Commander** **Regional Directors** **Executive Staff** | **DC-ADM 804** **CONSOLIDATED INMATE GRIEVANCE REVIEW SYSTEM** |

| **Policy Number:   DC-ADM 804-1** |
| **Policy Issue Date:  July 20, 1994** |

| Date of Issue: April 2, 1996 | Authority: | Effective Date: May 20, 1996 |
|---|---|---|

The purpose of this Bulletin is to include medical grievances in the regular grievance process and to **discontinue** the Central Office Medical Review Committee (COMRC). .

It is important that the Superintendent be aware of all functions within the institution. Similarly, it is essential that the Bureau of Health Care Services be included in the CORC process, to include review by the Chief Counsel's office with respect to medical grievances. Therefore, all grievances, including those relating to medical issues, are to be processed in the same manner. The grievance coordinator will continue to forward medical grievances to the CHCA for initial review. Then, the Superintendent will be responsible for the Appeal from Initial Review, as for all other grievances.

Final Appeal of medical grievances will no longer be forwarded to the COMRC. The Central Office Review Committee (CORC) will process the appeals. The Director of the Bureau of Health Care Services, or designee, will participate as a member of CORC for all medical grievance appeals.

The following sections of DC-ADM 804 are to be **discontinued:**

IV.E.:     Definition of COMRC

IV.G.:     "An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.

V.D.:     "It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review."



**Bulletin**

**Commonwealth of Pennsylvania • Department of Corrections**

| | |
|---|---|
| **To:** Executive Staff<br>Superintendents<br>Regional Directors | **Policy Subject:** Consolidated Inmate<br>Grievance Review System |
| | **Policy Number:** DC-ADM 804-2 |
| | **Policy Issue Date:** July 20, 1994 |

| **Date of Issue:**<br>October 1, 1997 | **Authority:** | **Effective Date:**<br>November 1, 1997 |
|---|---|---|

The procedures for appeal to final review under DC-ADM 804, VI, D, 5-7, are amended as follows:

(1)     The Chief Hearing Examiner will replace the Central Office Review Committee (CORC) at final review of all grievance appeals. The Chief Hearing Examiner will perform all functions previously performed by CORC.

(2)     In reviewing grievances submitted for final review, the Chief Hearing Examiner will review the initial grievance and response, any appeals therefrom and the responses thereto and the issues appealed to final review.

(3)     The Chief Hearing Examiner will review health care related grievances with the Bureau of Health Care. Appeals raising legitimate legal issues, including but not limited to access to courts and sentencing issues, will be reviewed with an attorney prior to response.

(4)     Upon completion of final review, the Chief Hearing Examiner will respond directly to the inmate in all cases where the position taken by the institution is upheld.

(5)     In all cases where the action of the Grievance Coordinator, PRC, Incoming Publication Review Committee, or Superintendent is reversed or amended, or where a matter is remanded, the Chief Hearing Examiner will prepare a letter to the inmate and a memorandum to the Superintendent. The Chief Hearing Examiner will forward the letter and memorandum to the appropriate Regional Deputy Commissioner for review and signature.

(6)     The Chief Hearing Examiner will be responsible for assuring that:

    (a)     appeals to final review are responded to in a timely fashion;
    (b)     records pertaining to such appeals are maintained properly; and
    (c)     counsel for the ICU class is notified of the disposition at final review of any matter raised to final review alleging a violation of the ICU vs Shapp Consent Decree.

It is the intent of the Department of Corrections to provide inmates with a complete and timely review of all appeals properly raised to final review. These amendments have been established to ensure timeliness at final review while continuing to provide a thorough, impartial review of the issues.



|  | **Bulletin** |
|---|---|
|  | **Commonwealth of Pennsylvania • Department of Corrections** |

| **To:** | Executive Staff<br>Superintendents<br>Regional Directors<br>Boot Camp Commander | **Policy Subject:** | Consolidated Inmate<br>Grievance Review System |
|---|---|---|---|

**Policy Number:** DC-ADM 804-3

**Policy Issue Date:** July 20, 1994

| **Date of Issue:**<br><br>October 21, 1997 | **Authority:** | **Effective Date:**<br><br>November 1, 1997 |
|---|---|---|

The purpose of this bulletin is to facilitate timely responses from the Chief Hearing Examiner's Office to all appeals to final review.

(1) All appeals to final review should be addressed to the Chief Hearing Examiner,

> Chief Hearing Examiner
> 1451 S. Market Street
> Elizabethtown, PA 17022

Appeals which are addressed to the Commissioner, Chief Counsel, to other Central Office staff, are of course, delivered to these individuals first, then have to be referred to the Chief Hearing Examiner. Improperly addressed appeals may cause a delay in the response to final appeal.

(2) Inmates appealing to final review are responsible for providing the reviewing body with any available paperwork relevant to the appeal. A proper appeal to final review should include photocopies of the initial grievance, initial grievance response, and the Superintendent's response. Appeals without proper records will be reviewed, but the review will be delayed until the appropriate paperwork can be obtained.



**Bulletin**

**Commonwealth of Pennsylvania • Department of Corrections**

| To: | Policy Subject: |
|---|---|
| Executive Staff<br>Superintendents<br>CCC Regional Directors<br>Boot Camp Commander | Consolidated Inmate Grievance Review System |

**Policy Number:** DC-ADM 804-4

**Policy Issue Date:** July 20, 1994

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| April 29, 1998 | Martin F. Horn | May 1, 1998 |

The purpose of this bulletin is to amend the section VI. Procedures, A.4. to read,

"All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text must be legible and presented in a courteous manner. The Grievant should identify any persons who may have information which could be helpful in resolving the grievance. The Grievant may specifically raise any claims concerning violations of Department of Corrections directives, regulations, court orders, or other law. The Grievant may also include a request for compensation or other legal relief normally available from a court. The inmate may request to be personally interviewed at initial review. Any inmate who submits a grievance containing false information may be subject to disciplinary action. Inmates who have not already completed final review may request compensation or legal relief on appeal to final review."

And to amend Section VI. Procedures, B. Initial Review, 2. to read:

"Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause. Such extensions will normally be granted if the events complained of would state a claim of violation of federal right.



| BULLETIN |
| --- |
| **Commonwealth of Pennsylvania • Department of Corrections** |

| **TO:** | **Policy Subject:** |
| --- | --- |
| **Executive Staff**<br>**Superintendents**<br>**Boot Camp Commander**<br>**Regional Directors** | **Consolidated Inmate**<br>**Grievance Review System** |
|  | **Policy Number:**    DC-ADM 804-05 |
|  | **Policy Issue Date:**    July 20, 1994 |

| **Date of Issue:** | **Authority:** | **Effective Date:** |
| --- | --- | --- |
| October 30, 2000 | *[signature]*<br>**Martin F. Horn** | November 1, 2000 |

Effective November 1, 2000, all final appeals of inmate grievances shall be handled by the Secretary's Office of Inmate Grievances and Appeals. Therefore, any final appeal to be submitted on or after November 1, 2000, should be sent to the following address:

> Chief, Secretary's Office of Inmate Grievances and Appeals
> Department of Corrections
> 2520 Lisburn Road, P.O. Box 598
> Camp Hill, PA 17001-0598



EXHIBIT

C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHAN HUE,                                  :
                                           :
        Plaintiff,                         :        Civil No. 01-CV-1064
                                           :
        v.                                 :        (Judge Kane)
                                           :
JAMES UPDIKE, et al.,                      :        (Magistrate Judge Smyser)
                                           :
        Defendants.                        :

## UNSWORN DECLARATION OF MARILYN SEMANSKI

I, Marilyn Semanski, hereby declare under penalty of perjury that the following statements are true and correct based upon my personal knowledge and belief:

1.      I am currently employed by the Pennsylvania Department of Corrections ("Department") as the Superintendent's Secretary / Clerk Steno 3 Coordinator at the State Correctional Institution at Retreat ("SCI-Retreat"). I have held that position since March 1993.

2.     In addition I hold the title of Acting Facility Grievance Coordinator at SCI-Retreat, since February 27, 2002, for Initial Review of inmate grievances filed by our housed inmates pursuant to Department Policy DC-ACM 804, entitled "Inmate Grievance System." 804 (VI)(B)(1)(a-j) ("804"). A true and correct copy of the policy in effect during 2000 (effective October 20, 1994) is attached to this Brief in Support of the Summary Judgment Motion as Exhibit "B."

3.     In my capacity as Acting Litigation Coordinator at SCI-Retreat, since February 27, 2002, I am aware of the Court filings in the above-captioned litigation made by Phan Hue, who is confined here under Department Inmate Number DY-0577 ("Hue"); from the Departments' records I have determined that Hue was a confined state prisoner during all times mentioned by him in this litigation and at this time; further, I have specifically: reviewed the original complaint that Hue filed in June, 2001, in which he named Mataloni, O'Brien, and Hazlak as Defendants and where Hue alleges that said individuals, in addition to others, have violated his Eighth Amendment rights by their forcing him to work while injured and their failure to provide adequate medical treatment.

4.     I have personally reviewed our Grievance filings with respect to Phan Hue, DY-0577, and each grievance filed by him between February 2000 (date of alleged injury) and June 2001 (date original complaint was filed) with the following results:

2

a.  Hue filed a grievance on April 12, 2000, which was assigned SCI-Retreat Grievance No. RET-0112: in that grievance Hue claimed that he just wanted a pain reliever till they do something with his shoulder.  See Exhibit "A" hereto.

b.  Grievance No. RET-0112 was rejected by Joseph Lengyel, former Inmate Grievance Coordinator, who indicated that Joseph Mataloni, the Health Care Administrator, designated Grievance Officer for this type of grievance reported "What medication is given and for how long, is the decision of the M.D. or P.A.  This is a medical decision made by the Practitioners."  Hue was directed to sign up for sick call again if he was still having problems with his medication.  See Exhibit "B" hereto.

c.  Hue filed a grievance on June 8, 2000, which was assigned SCI-Retreat Grievance No. RET 0185 ("Grievance 0185"): in that grievance Hue claimed that he was unable to get an appointment with the dentist to obtain his upper and lower dentures and was having a problem eating.  See Exhibit "C" hereto.

d.  This grievance was also assigned to Joseph Mataloni, Health Care Administrator, Grievance Officer for these types of matters, and he responded June 23, 2000, citing the dental history of the Plaintiff

3

to date including the fact that he had the Plaintiff scheduled for a dental appointment that date. The dental records of the Plaintiff reflect that he had failed to appear or refused to be seen by the dentist on five (5) prior occasions. Plaintiff also failed to appear and had to be called several times to keep the current appointment, June 23, 2000. See Exhibit "D" hereto.

e. Hue never:

    i. Resubmitted his grievances, RET 0112 or RET 0185 per 804 or appealed, therefrom, before he filed suit in this action against the Corrections Defendants, in June 2001.

    ii. In fact, there is no record that Hue filed any other grievances or that he filed any timely appeal to the Superintendent prior to the filing of his federal court complaint.

    iii. It is my understanding that the relevant time period for any grievance filing by Hue would be the period before he filed his complaint in federal court in June 2001; my office does not have any grievances filed subsequent to the federal court filing date as well.

4

iv. None of the grievances referenced above mentioned that Hue was being forced to work in spite of an injury or that he was unable to work.

v. None of the grievances referenced above request monetary relief.

vi. None of the referenced grievances allege Dale Hazlak, Edward O'Brien, or Joseph Mataloni were involved in forcing Hue to work, took any retaliatory actions against Hue or that they engaged in any actions whatsoever in relation to Hue.

vii. Hue could have appealed the rejection of any of his grievances but has not done so; and, to my knowledge, when Hue's grievances have been accepted and a response given by the Grievance Officer, Hue has never timely appealed to the Superintendent; and, further, Hue has also never appealed to Final Review any grievance at all.

**Therefore**, based upon our review Phan Hue, DY-0577, has not exhausted the administrative remedies available to him under the Inmate Grievance System and as required by 42 U.S.C. §1997e(a) before he filed this lawsuit.

Executed this 4th day of
June 2002.

*Marilyn Semanski*
Marilyn Semanski
Superintendent's Secretary / Clerk Steno 3
Acting Litigation Coordinator
Acting Grievance Coordinator
SCI-Retreat

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**



**EXHIBIT**

C:    C

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO.    RET0181-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| JOSEPH L. LENGTEL | S.C.I RETREAT | 6-8-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| PHAN HUE DY-0577 | | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| KITCHEN | BLOCK AA 10 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

There has been many attempts by Phan Hue at the dentist office in a attempt to get his dentures-Uper's and bottom's are needed. Several months ago Phan did have his bottom teeth removed, and he was told that this dentist office will take reasurement to order the needed false teeth. Since last September 1999, these appointment have been taken place, and it is all most one year period of time to do this work. It has been difficult for Phan to obtain a daily balance of allowance diet, do to him not having some way of eating certian foods, which need to be broken up by the process of suctioning teeth. This is the second GRIEVANCE filed because the first may had been lost. False teeth are needed.

B. Actions taken and staff you have contacted before submitting this grievance:

Submitted eleven request froms to the dentist office, action taken reschedule appointment nothing fulfilled. And one to J. MATALONI and he implied of a date Dec 27, 99 but Phan was never called. STAFF was given notice properly, DC-ADM 804, v Policy (57).

Your grievance has been received and will be processed in accordance with DC-ADM 804.

6-14-00

_____
Signature of Grievance Coordinator

June 8, 00
Date

DC-804
PART II



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**



EXHIBIT

C: D

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

GRIEVANCE NO. **RET 0185-00**

| TO: (Name & DC NO.) | INSTITUTION | QUARTERS | GRIEVANCE DATE |
|---|---|---|---|
| **Phan Hue, DY-0577** | **SCI-RETREAT** | **A-UNIT** | **6/23/00** |

The following is a summary of my findings regarding your grievance:

Your Dental History is as follows:

7/30/99 – Initial Exam
8/20, 8/31, 9/7/99 – No Show for schedule appointments, rescheduled.
12/3/99 – Seen by Dr. Mika, treatment plan arranged
1/19/00 – X-rays taken
1/24/00 – No-show
2/23/00 – Oral Surgery consult ordered for lower extraction
2/29/00 – Oral Surgeon completed extraction
4/27/00 – Impressions taken after appropriate healing time
6/7/00 – Refused to be seen
6/23/00 – Seen today, several calls to the block after inmate Phan fail to show-up for schedule appointment.

I suggest you start keeping his scheduled appointments.

JPM\cec

J. MATALONI, CHCA

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR | DATE 6/23/0 |
|---|---|---|

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**EXHIBIT**

C: A

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO.  RET0112-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION SCI Retreat | DATE 4-12-2000 |
|---|---|---|
| FROM: (Commitment Name & Number) HUE PhAN DY0577 | INMATE'S SIGNATURE | |
| WORK ASSIGNMENT (Previous) Kitchen worker | QUARTERS ASSIGNMENT A - A - 10 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief clear statement of grievance:

I'm Filing this greivance twoards MATT ALoni head of the medical Department. Because I had An accident in the kitchen where I used to work Feb 28, 2000 was the Date. I hurt my shoulder And my teeth were Broke when I fell. My shoulder was looked At by A Doctor At An outside hospital, he said it was not broke but I need to see A Bone Specialist I was Gaven pain medication, then I was taken off it After a month I'm still having terrible pain in my shoulder, I have went to sick Call A numerous Amount of times and the Assistant Physician tells me I'm okay And I don't need A Sling or medication no more. I CAN not hardly move my shoulder I explained All of the complications I am having And They will not listen. Something is wrong, or I wouldn't have to see A Bone specialist. I Just want A Pain Reliever till they Do something.

B. Actions taken and staff you have contacted before submitting this grievance:

HAve went to Sick Call, Seen the Assistant Physician, he never lets me see A Doctor.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Grievance Coordinator

4-13-00
Date

**Commonwealth of Pennsylvania**
**State Correctional Institution at Retreat**

4-13-2000

SUBJECT:    **INMATE GRIEVANCE #:  RET 0112  -00**

TO:    Joe Mataloni

RECEIVED

EXHIBIT

C: B

FROM:    *J Lyel*
Joseph L. Lengyel
Inmate Grievance Coordinator

APR 14 2000
SCI RETREAT
SUPERINTENDENT'S
OFFICE

Attached Grievance was submitted by an inmate, and deals with your area of responsibility.  I am
assigning it to you, requesting you look into it, and take whatever action you feel is appropriate.
**Return this Page & Grievance to me by 4-20-2000**, with your actions listed below.

**\* INMATE  HAS / HAS NOT  REQUESTED AN INTERVIEW. \***
mts

-----------------------------------------------------------------------------

TO:    Joseph L. Lengyel
         Inmate Grievance Coordinator

FROM:

___ Actions listed below were taken.

___ Inmate was interviewed on _____.

___ The following staff members were interviewed:

**RESULTS & CONCLUSIONS: (*Continue on back, if necessary*)**

I do not prescribe medication. What
medication an inmate is given and for how
long, is the decision of the MD or PA.
This is a Medical decision made by the
practitioners.

J. MATALONI, CHCA

4/13/0?

**DC-804**
**PART II**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**



EXHIBIT

C: B

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

GRIEVANCE NO. **RET 0112-00**

| TO: (Name & DC NO.) | INSTITUTION | QUARTERS | GRIEVANCE DATE |
|---|---|---|---|
| **HUE PHAN, DY-0577** | **SCI-RETREAT** | **A-UNIT** | **4/12/00** |

The following is a summary of my findings regarding your grievance:

This Grievance was referred to Mr. Mataloni, designated Grievance Officer for this type of Grievance.

Mr. Mataloni reports, "What medication is given and for how long is the decision of the M.D. or P.A. This is a medical decision made by the Practitioners."

If you are having problem with your medication, you should sign up for Sick Call again.

JLL/mts

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR | DATE |
|---|---|---|
| | *J Lyol* | 4-14-2000 |

EXHIBIT

tabbies

D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHAN HUE,                              :
                                       :
    Plaintiff,                         :          Civil No. 01-CV-1064
                                       :
    v.                                 :          (Judge Kane)
                                       :
JAMES UPDIKE, et al.,                  :          (Magistrate Judge Smyser)
                                       :
    Defendants.                        :

## UNSWORN DECLARATION OF KRISTEN P. REISINGER

I, Kristen P. Reisinger, hereby declare under penalty of perjury that the following statements are true and correct based upon my personal knowledge and belief:

1.    I am the Assistant Chief Grievance Coordinator in the Secretary's Office of Grievances and Appeals for the Pennsylvania Department of Corrections ("Department").

2.    One of my primary job responsibilities is to maintain records of the appeals filed with the Secretary's Office of Grievances and Appeals by inmates at the various state corrections institutions.  This office maintains all appeals filed whether before or after November 1, 2000, the date this office was created.  Any grievance appeals filed with the Chief Hearing Examiner, pursuant to the 804 Policy in effect in 2000, are maintained in my office.

3.    I am aware, by reviewing Marilyn Semanski's Declaration, that Phan Hue (DY-0577) has sued various department employees at the State Correctional Institution at Retreat ("SCI-Retreat") in federal court litigation.

4.    The Department's administrative directive entitled "Inmate Grievance System," DC-ADM 804 ("804"), provides a multi-step administrative grievance appeal process that was established to ensure that inmates have an avenue through which to resolve issues relating to their incarceration.  A true and correct copy of 804 in effect during 2000 (effective Oct.20, 1994) with five (5) supplemental bulletin's is attached to the Brief for Summary Judgment Motion as Exhibit "B."

5.    Pursuant to 804, inmates first file grievances with their institution's grievance coordinator.  If a grievance is rejected it must be resubmitted under the same grievance number within five working days.  If the inmate is unsatisfied with the initial review provided by the grievance coordinator or the rejection of their grievance, they are permitted to file an appeal of the decision with the Institution's

2

Facility Manager (Superintendent).    Upon receiving a decision from the Superintendent, inmates were permitted final review through the Chief Hearing Examiner.    All grievance appeals, whether medical or not, were handled in the same manner throughout 2000.

6.    I have been requested by counsel for the Defendants in the above captioned matter to check the grievance appeal records to determine whether any grievances, including rejected grievances, were appealed to this office or the office of the Chief Hearing Examiner for final review by Phan Hue, inmate number DY-0577.

7.    I have researched the records from our office and have confirmed that Phan Hue, Inmate Number DY-0577 has never appealed any grievances, including any rejected grievances, to this office for final review.  The time for Hue has long passed to timely complete any of the steps of the process and any appeal now would be rejected as untimely under 804.

8.    Under 804, the three-step process begins at the institution level for initial review and the appeal to the Facility Manger and, thereafter, there is only one avenue of appeal.  Subsequent to January 2000 but prior to November 1, 2000 that only avenue was to submit all necessary paperwork within seven (7) days of the decision on appeal from initial review to the Chief Hearing Examiner. After November 1, 2000 all necessary paperwork must be submitted within five (5)

3

working days of the decision on appeal from initial review to Chief Secretary's Office of Inmate Grievance and Appeals.

9.    In light of the above, Mr. Hue (DY-0577) has not exhausted his available administrative remedies under the grievance process as set forth in 804 at that time or at any time prior to June 2001.

Executed this **31**<sup>st</sup> day of May, 2002.

Kristen P. Reisinger
Assistant Chief Grievance Coordinator
Department of Corrections

4

EXHIBIT

E

tables

PRECEDENTIAL

　　　Filed April 3, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3446

FREDERICK T. RAY

v.

C.O. KERTES; C.O. STOLZ; C.O. REED;
C.O. ROGERS; LT. NASH; LT. HICKS;
LT. A. SMITH; CAPT. ALMANSHIFER;
R. NORRIS; TIM LAUNTZ

FREDERICK RAY,
　　　Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 99-cv-00396)
District Judge: Hon. Malcolm Muir

Argued September 20, 2001

Before: SLOVITER, NYGAARD and McKEE, Circuit Judges

(Filed: April 3, 2002)

　　　Jon Romberg
　　　Craig T. Moran (Argued)
　　　John P. Campbell (Argued)
　　　Seton Hall Law School
　　　Newark, NJ 07102

　　　 Attorneys for Appellant

　　　D. Michael Fisher
　　　 Attorney General
　　　J. Bart DeLone (Argued)
　　　 Deputy Attorney General
　　　Calvin R. Koons
　　　 Senior Deputy Attorney General
　　　John G. Knorr, III
　　　 Chief Deputy Attorney General
　　　 Chief, Appellate Litigation Section
　　　Office of Attorney General
　　　Appellate Litigation Section
　　　Harrisburg, PA 17120

　　　 Attorneys for Appellees

SLOVITER, Circuit Judge.

Frederick Ray, a former inmate in the Pennsylvania state prison system, appeals from the order of the District Court dismissing sua sponte Ray's complaint against prison officials filed pursuant to 42 U.S.C. S 1983 (2001).1 The District Court dismissed Ray's complaint based on its determination that Ray had not "demonstrated" that he had exhausted his administrative remedies. Section 1997e(a) of

---

1. Ray's notice of appeal was filed pro se. This court sought representation for Ray from Professor Jon Romberg, Associate Director of the Center for Social Justice at Seton Hall University School of Law. Ray's appeal was handled by John P. Campbell and Craig T. Moran, who were at the time of briefing students at Seton Hall Law School under the supervision of Professor Romberg. Mr. Campbell and Mr. Moran had graduated by the time they argued before us, both capably, and we extend our appreciation to them and to Professor Romberg.

2

the Prison Litigation Reform Act of 1996 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. S 1997e(a) (2001).

Ray argues that the District Court erred in dismissing his complaint for two reasons. His principal argument is that the PLRA's exhaustion requirement is an affirmative defense, to be alleged and proved by the defendants. This is a question of first impression for this court. Other courts of appeals have divided on this issue. Ray's alternate argument is that even if we were to decide that the PLRA exhaustion requirement is not an affirmative defense, the District Court erred by imposing an improperly heightened pleading standard that required Ray not only to plead but also to prove his exhaustion in the complaint.

I.

FACTS AND PROCEDURAL HISTORY

In his complaint, Ray alleges that while he was a prisoner at the Pennsylvania State Correctional Institution at Huntingdon, he was twice assaulted by officers, who retaliated by filing groundless misconduct charges against him when he told them he would sue. Ray, while still a prisoner and using a printed form complaint provided to prisoners, filed a S 1983 complaint pro se in the District Court for the Middle District of Pennsylvania against the officers who allegedly assaulted him and other prison officials. In his complaint, Ray alleged that various officers and certain prison procedures violated his First, Fifth, Eighth and Fourteenth Amendment rights.

On the first page of the form complaint, under a caption
entitled "Exhaustion of Administrative Remedies," the form
asked "Is there a grievance procedure available at your
institution?"; "Have you filed a grievance concerning the
facts relating to the complaint?"; and "Is the grievance
process completed?" Ray checked "Yes" in response to all
three questions. App. at 4.

3

Shortly after Ray filed his complaint, the District Court
referred it to a Magistrate Judge. The Magistrate Judge filed
a report and recommendation, recommending dismissal for
failure to exhaust administrative remedies. According to the
Magistrate Judge, "[W]hile the plaintiff alleges that he filed
various grievances with respect to the claims which he now
raises in his complaint, there is no indication from the
plaintiff's complaint that he took any further action to
properly exhaust his administrative remedies." Supp. at 7.

Ray filed objections to the Magistrate Judge's report,
alleging that he had asserted the claims of assaults by
prison guards as defenses to the misconduct charges made
against him which charged him with a number of violations
of prison rules. Those misconduct charges stemmed from
the same altercations that are the subject of hisS 1983
claims.

The misconduct charges brought against Ray were
brought under Pennsylvania Department of Corrections'
Inmate Disciplinary and Restricted Housing Procedures,
DC-ADM 801 (effective Sept. 20, 1994) ("Inmate
Disciplinary Procedures"), Supp. App. at 1-11, which govern
inmate violations of prison rules. The Inmate Disciplinary
Procedures are distinct from the Consolidated Inmate
Grievance Review System, DC-ADM 804 (effective Oct. 20,
1994) ("Inmate Grievance System"), Supp. at 45, which is
designed to address inmate-initiated grievances. 2 In his
objections to the Magistrate Judge's Report, Ray asserted
that grievances may not be filed for claims related to
disciplinary proceedings. App. at 16-17.

In the disciplinary proceeding against Ray, a hearing
examiner had dismissed all of the charges save one. The
Inmate Disciplinary Procedures provide that "[n]o appeals
from a finding of not guilty are permitted." DC-ADM 801
VI(I)(1)(b), Supp. App. at 8. It is unclear whether prison
officials interpret this clause to permit appeals from
dismissals where no culpability determination is made,
such as the dismissed misconduct charges against Ray.

---

2. Both the Inmate Disciplinary Procedures and the Inmate Grievance
System have since been modified.

4

Ray attached to his objections to the Magistrate Judge's

Report handwritten copies of a number of the misconduct
charges, along with the letter from the Chief Hearing
Examiner denying Ray's appeal, which constituted the final
administrative disposition of Ray's appeal of the one guilty.
charge. That letter notes, "I [, the Chief Hearing Examiner,]
have reviewed the entire record of these misconducts;
including the misconduct report, the hearing report and
relevant documents, your appeal to the Program Review
Committee and their response, your appeal to the
Superintendent and his response." App. at 23. This litany
of appeals precisely tracks the full panoply of available
administrative appeals provided for by the Inmate
Disciplinary Procedures. The Commonwealth does not
argue otherwise.

On May 3, 1999, before the defendants were served, the
District Court dismissed Ray's complaint based on its
assessment that Ray had not demonstrated exhaustion of
administrative remedies.3 The District Court stated that Ray
had "not attached copies of [his various] grievances to his
objections [to the Magistrate Judge's report]." Supp. at 3.
The District Court also observed that Ray had not set forth
the specific steps that he had taken to exhaust
administrative remedies and concluded by noting,"[A]ny
appeal from this order will be deemed frivolous, without
probable cause and not taken in good faith." Supp. at 4.

II.

JURISDICTION AND STANDARD OF REVIEW

The District Court dismissed Ray's complaint without
prejudice. Appeal from a dismissal without prejudice is
permitted under 28 U.S.C. S 1291 when a plaintiff "declares
his intention to stand on his complaint or when he cannot
cure the defect in his complaint." Booth v. Churner, 206
F.3d 289, 293 n.3 (3d Cir. 2000) aff'd 532 U.S. 731 (2001).

---

3. Although the defendants in the action below made no appearance
before this court, the Commonwealth of Pennsylvania appeared as an
amicus curiae, filing a brief in support of the District Court's decision.
A deputy attorney general ably argued the case.

5

Ray states that he "intends to stand on his Complaint."
Br. of Appellant at 1. He also contends that he can no
longer pursue administrative remedies due to the passage
of time and his release from prison. We have previously
exercised jurisdiction when "both parties agree that the
time is long past for [the inmate-appellant] to pursue his
normal administrative remedies [preventing him from]
cur[ing] the defect in his complaint on which the District
Court based its dismissal." Booth, 206 F.3d at 293 n.3.
Accordingly, we have jurisdiction over the appeal.

This court subjects district court decisions interpreting

964 (3d Cir. 1998); Moody v. Sec. Pac. Bus. Credit, Inc., 971
F.2d 1056, 1063 (3d Cir. 1992). On review of a motion to
dismiss, we accept as true all factual allegations in the
complaint. Leatherman v. Tarrant County Narcotics
Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).
The availability of administrative remedies to a prisoner is
a question of law. See, e.g., Snider v. Melindez, 199 F.3d
108, 113-14 (2d Cir. 1999).

III.

DISCUSSION

A. Exhaustion As An Affirmative Defense

Ray argues the District Court erred in dismissing his
complaint for failure to exhaust administrative remedies
and in failing to recognize that the PLRA exhaustion
requirement in 42 U.S.C. S 1997e(a) is an affirmative
defense. Ray does not dispute that the language of
S 1997e(a) requiring administrative exhaustion of claims
with respect to prison conditions applies to claims of
excessive force by prison guards. If there had been any
question about that, it was settled by the Supreme Court's
recent decision in Porter v. Nussle, 122 S. Ct. 983 (2002),
where the Court explicitly so held. Nor does Ray dispute
that he must have satisfied the exhaustion requirement
before he could file this action. The principal question here
is not the substantive one of whether exhaustion is

6

required but the procedural issue of which party has the
burden of pleading exhaustion or its absence.4

In support of his argument that failure to exhaust the
prison's administrative remedies is an affirmative defense
that must be pleaded and proven by the defendants in a
PLRA suit, Ray relies on this court's decision in Williams v.
Runyon, 130 F.3d 568 (3d Cir. 1997), a Title VII case,
where we stated that "failure to exhaust administrative
remedies is an affirmative defense in the nature of
statute[s] of limitations." Id. at 573. Just as the imperative
language in the PLRA's exhaustion requirement does not, of
itself, act as a jurisdictional bar, neither does the
mandatory phrasing determine the burden of pleading. For
example, although statutes of limitations are very often
phrased in mandatory language, see, e.g., Jackson, 89 F.
Supp. 2d 48, 56-57 (D.D.C. 2000), they are quite clearly
affirmative defenses, see e.g., Fed. R. Civ. Proc. 8(c) (listing
the statute of limitation as an affirmative defense); Gruber
v. Price Waterhouse, 911 F.2d 960, 963 (3d Cir. 1990).

Courts in addition to this one have treated the
exhaustion requirements of Title VII and the Age
Discrimination in Employment Act (ADEA) as affirmative
defenses. See, e.g., Wyatt v. Terhune , No. 00-16568, 2002
U.S. App. LEXIS 2217, at *19-20 (9th Cir. Feb. 12, 2002)

ADEA context); Bowden v. United States, 106 F.3d 433, 437
(D.C. Cir. 1997) (discussing exhaustion requirement in the
Title VII context); Daugherity v. Traylor Bros., Inc., 970 F.2d
348, 352-53 (7th Cir. 1992) (discussing exhaustion
requirement in the ADEA context).

Ray argues that the purposes for the exhaustion
requirement in Title VII suits are similar to those for the
exhaustion requirement in PLRA suits and therefore the

---

4. Neither the District Court nor the Commonwealth has suggested that
the mandatory language of S 1997e(a) --"no action shall be brought"
(emphasis added) -- makes the exhaustion requirement a jurisdictional
one. As this court held in Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir.
2000), "[W]e agree with the clear majority of courts that 1997e(a) is not
a jurisdictional requirement, such that failure to comply with the section
would deprive federal courts of subject matter jurisdiction."

7

---

same pleading requirement should follow. We have, in
another context, described the purposes that underlie a
statutory requirement of exhaustion of administrative
remedies. In Heywood v. Cruzan Motors, Inc., 792 F.2d 367,
370 (3d Cir. 1986), we listed the following as the purposes
of the exhaustion doctrine:

> 1) promotes administrative efficiency by "preventing
> premature interference with the agency processes,"
>
> 2) respects executive autonomy by allowing an agency
> the "opportunity to correct its own errors,"
>
> 3) facilitates judicial review by affording courts the
> benefit of the agency's experience and expertise, and
>
> 4) serves judicial economy by having the agency or
> other tribunal rather than the district court, compile
> the factual record.

Id. at 370 (quoting Cerro Metal Prods. v. Marshall, 620 F.2d
964, 970 (3d Cir. 1980)).

Ray notes that in Nyhuis v. Reno, 204 F.3d 65 (3d Cir.
2000), we ascribed similar reasons for the exhaustion
requirement in the PLRA. Indeed, in Nyhuis we did discuss,
as underlying the exhaustion requirement of S 1997e(a), the
concern with the heavy volume of frivolous prison litigation
in the federal courts and the concomitant burden of
expending significant and scarce judicial resources to
review and refine legal claims which are "untidy, repetitious
and redolent of legal language." Id. at 74. These reasons are
not dissimilar from those discussed in Heywood.

Although this is the first time we have faced how the
PLRA's exhaustion requirement should be pled,5 six other

5. In its brief, Pennsylvania suggests this circuit confronted the procedural characterization of the PLRA's exhaustion requirement in Booth v. Churner, 206 F.3d 289 (3d Cir. 2000), and Nyhuis. In both Booth and Nyhuis the plaintiff-prisoners explicitly conceded their failure to exhaust administrative remedies. Booth, 206 F.3d at 293 n.2 ("Booth concedes that he did not avail himself of either the intermediate or final review process."); Nyhuis, 204 F.3d at 66 (stating plaintiff "argues that he did not avail himself of the administrative process because it could not provide him with two of the three forms of relief that he seeks in the present action"). Both dismissals would thus fall within a district court's inherent power to dismiss sua sponte a complaint which facially violates a bar to suit.

8

circuits have considered the issue.6 The Second, Seventh, Ninth and D.C. Circuits have held that the exhaustion requirement is an affirmative defense, akin to a statute of limitations. See, e.g., Wyatt, 2002 U.S. App. LEXIS 2217, at *18; Jackson v. District of Columbia, 254 F.3d 262, 267 (D.C. Cir. 2001); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000); Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999); Massey v. Helman, 196 F.3d 727, 734-35 (7th Cir. 1999); Perez v. Wis. Dept. of Corr. , 182 F.3d 532, 536 (7th Cir. 1999) ("Defendants may waive or forfeit reliance on S 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations."); Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999) ("[U]nder the PLRA, . . . . a defendant . . . may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's [exhaustion] requirement[ ]."); see also Jackson , 89 F. Supp. 2d at 56-58; 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure S 1271, at 76 (Supp. 2001); Kathryn F. Taylor, Note, The Prison Litigation Reform Act's Administrative Exhaustion Requirement: Closing the Money Damages Loophole, 78 Wash. U. L.Q. 955, 965 & n.73 (describing the different practices, and arguing in favor of characterizing exhaustion as an affirmative defense). Some dicta in the Fifth Circuit supports this view. Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) ("Rather, the amended statute imposes a requirement, rather like a statute of limitations, that may be subject to certain defenses such as waiver, estoppel, or equitable tolling.").

The Commonwealth relies on the contrary position held

---

6. The district courts in this circuit are divided on whether the PLRA exhaustion requirement is an affirmative defense or some form of heightened pleading. Compare cases putting pleading burden on defendant, see, e.g., Santiago v. Fields , 170 F. Supp. 2d 453, 458 (D. Del. 2001); Gregory v. PHS, Inc., No. 00-467, 2001 U.S. Dist. LEXIS 15765, at *7-10 (D. Del. Sept. 21, 2001), with those that hold it is plaintiff's burden, see, e.g., Bensinger v. Hollandhull, No. 00-CV-5037, 2001 U.S. Dist. LEXIS 21014, at *8 (E.D. Pa. Dec. 18, 2001); Rivera v. Whitman, 161 F. Supp. 2d 337, 343 (D.N.J. 2001); Payton v. Horn, 49 F. Supp. 2d 791, 797 (E.D. Pa. 1999) (citing Brown v. Toombs, 139 F.3d 1102, 1004 (6th Cir 1998)); White v. Fauver, 19 F. Supp. 2d 305, 312

9

by the Sixth Circuit. In Brown v. Toombs, 139 F.3d 1102
(6th Cir. 1998), that court read the "plain mandatory
language of the [PLRA] regarding exhaustion of remedies,
the legislative purpose underlying the plain language, and
the sound policy on which it is based, [as] requir[ing] that
prisoners filing S 1983 cases involving prison conditions
. . . allege and show that they have exhausted all available
state administrative remedies." Id. at 1104. The court
further stated that "[a] prisoner should attach to his S 1983
complaint the administrative decision, if it is available,
showing the administrative disposition of his complaint." Id.
Thereafter, in Knuckles El v. Toombs, 215 F.3d 640, 642
(6th Cir. 2000), the court held that a prisoner was required
to "plead his claims with specificity and show that they
have been exhausted by attaching a copy of the applicable
administrative dispositions to the complaint, or, in the
absence of written documentation, describe with specificity
the administrative proceeding and its outcome." See also
Scarborough v. Morgan, 21 Fed. Appx. 279, 280 (6th Cir.
2001).7

Although we agree with the Brown court that the plain
language of the PLRA requiring that prisoners exhaust their
administrative remedies before filing suit reflects the
Congressional policy underlying the PLRA, the pleading rule
Brown adopted does not necessarily follow. Congress
appears to have had two primary concerns in enacting
S 1997e(a). First, Congress expressed a desire to lessen the

---

7. The position of the Eighth Circuit is not clearly defined. In McAlpin v.
Morgan, 216 F.3d 680, 682 (8th Cir. 2000), the court, after citing Brown,
dismissed the prisoner's complaint, noting he failed to attach evidence of
exhaustion. See also Jarrett v. Norris, 12 Fed. Appx. 438, 439 (8th Cir.
2001) ("Although Jarrett submitted numerous grievances regarding his
medical care, he did not present proof that he fully exhausted as to all
of the claims in his complaint."); Gill v. Herndon, 8 Fed. Appx. 585, 586
(8th Cir. 2001) ("Gill failed to attach to his complaint any proof of
administrative exhaustion. In fact, Gill did not even attach proof of his
initial grievances that were embodied in administrative records.").
Recently, however, in Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir.
2001), the court stated, without citation to Brown or McAlpin, that "we
recognize that reliance upon the PLRA exhaustion requirement is an
affirmative defense under Fed. R. Civ. P. 8(c)" and cited the Seventh
Circuit's decision in Massey.

10

burden frivolous prison claims placed on federal courts.
See, e.g., 141 Cong. Rec. 26,548 (1995) ("Frivolous lawsuits
filed by prisoners tie up the courts, waste valuable legal
resources, and affect the quality of justice enjoyed by law-
abiding citizens.") (statement of Sen. Dole); see also Nyhuis,
204 F.3d at 73 (observing " 'Congress amended section

volume of frivolous prison litigation in the federal courts' ")
(quoting Alexander v. Hawk, 159 F.3d 1321, 1326 n.11
(11th Cir. 1998)) (citing 141 Cong. Rec. H14078-02 (daily
ed. Dec. 6, 1995)). Second, Congress wished to reinforce the
power of prison administrators to control prison problems,
minimizing the "interference" of federal courts in matters of
prison administration. See, e.g., Alexander, 159 F.3d at
1326 n.11 ("Congress desired 'to wrest control of our
prisons from the lawyers and the inmates and return that
control to the competent administrators appointed to look
out for society's interests as well as the legitimate needs of
prisoners.' ") (quoting 141 Cong. Rec. 26,553 (1995)
(statement of Sen. Kyl)); see also Taylor, supra at 964
(stating purpose behind the administrative exhaustion
requirement is to give "prison administrators . .. an
opportunity to correct the inmate's problem on their own.")
(citing 141 Cong. Rec. 14,573 (1995) (statement of Sen.
Kyl)).

These policies are not inconsistent with construing the
exhaustion requirement of S 1997e(a) as an affirmative
defense. Under S 1997e(c)(1) and (2), courts have the power
to dismiss frivolous lawsuits sua sponte, handily fulfilling
the first congressional policy and making it unnecessary to
view S 1997e(a) as authorizing the same action. The second
policy, that of giving prison administrators the opportunity
to control the situation within the prison, is addressed by
the exhaustion requirement itself. The rules of pleading and
proof do not bear on that issue. In fact, an opinion by
Judge Easterbrook of the Seventh Circuit suggests that
prison officials may choose to waive exhaustion,
presumably so that they can secure judicial imprimatur for
some intractable disputes. See, e.g., Perez, 182 F.3d at 536
("Filing suit before exhausting prison remedies therefore is
not the sort of defect that judges must notice even if the
defendant is happy to contest the suit on the merits.").

11

We return therefore to our decision in Williams holding
that defendants must plead and prove failure to exhaust as
an affirmative defense. See Williams, 130 F.3d at 573.
Although we recognize that the substance of the PLRA is
different from that of Title VII, we note that Williams was
relied on by the Seventh Circuit when it held lack of
exhaustion to be an affirmative defense in the PLRA
context, Massey v. Helman, 196 F.3d 727, 735 (7th Cir.
1999). We see no good reason not to do the same,
particularly because of the similar policies underlying both
exhaustion requirements.

In their discussion of categorizing affirmative defense,
Wright and Miller recommend resort to "considerations of
policy [and] fairness." Wright & Miller, supra, S 1271, at
444. According to those authors,

        "[f]airness" probably should be viewed as a shorthand
        expression reflecting the judgment that all or most of
        the relevant information on a particular element of a

> claim is within the control of one party or that one
> party has a unique nexus with the issue in question
> and therefore that party should bear the burden of
> affirmatively raising the matter.

Id. at 445. Applying this consideration to the exhaustion
requirement, it appears that it is considerably easier for a
prison administrator to show a failure to exhaust than it is
for a prisoner to demonstrate exhaustion. "[P]rison officials
are likely to have greater legal expertise and, as important,
superior access to prison administrative records in
comparison to prisoners." Wyatt, 2002 U.S. App. LEXIS
2217, at *20. Prison officials and their attorneys can also
readily provide the court with clear, typed explanations,
including photocopies of relevant administrative
regulations. Pro se prisoners will often lack even such
rudimentary resources.

We thus join the many other circuits that have held that
failure to exhaust is an affirmative defense to be pleaded by
the defendant.8

─────────────────────────────────────────────

8. We do not suggest that defendants may not raise failure to exhaust as
the basis for a motion to dismiss in appropriate cases. The issue is not

12

B. The District Court's Pleading Requirements

In addition to holding that failure to exhaust is an
affirmative defense, we find that the District Court erred in
dismissing the complaint for failure to meet the heightened
pleading requirement it imposed and in doing so sua
sponte. The District Court's sua sponte dismissal is
inconsistent with the statutory structure of the PLRA.
Subsection (c) of S 1997e, entitled "Dismissal," provides for
sua sponte dismissal by a district court for certain
enumerated reasons. The section provides:

> (c) Dismissal
>
> (1) The court shall on its own motion or on the
> motion of a party dismiss any action brought with
> respect to prison conditions under section 1983 of this
> title, or any other Federal law, by a prisoner confined in
> any jail, prison, or other correctional facility if the court
> is satisfied that the action is frivolous, malicious, fails
> to state a claim upon which relief can be granted, or
> seeks monetary relief from a defendant who is immune
> from such relief.
>
> (2) In the event that a claim is, on its face, frivolous,
> malicious, fails to state a claim upon which relief can
> be granted, or seeks monetary relief from a defendant
> who is immune from such relief, the court may dismiss
> the underlying claim without first requiring the
> exhaustion of administrative remedies.

42 U.S.C. S 1997e(c).

Availing here is an application of the principle of
expressio unius est exclusio alterius -- when a statute
specifically enumerates some categories, it impliedly
excludes others. See, e.g., Leatherman v. Tarant County
Narcotics Intelligence & Coordination Unit, 507 U.S. 163,

---

raised by this case, and neither party has stated its position. See, e.g.,
Flight Sys., Inc. v. Elec. Data Sys. Corp., 112 F.3d 124, 127 (3d Cir.
1997) (observing affirmative defenses may be considered on a Rule
12(b)(6) motion if the defense would "present[ ] an insuperable barrier to
recovery by the plaintiff").

13

---

168 (1993). Section 1997e(c) explicitly provides for sua
sponte dismissals in four instances: if the court is satisfied
that the action is (1) frivolous, (2) malicious, (3) fails to
state a claim upon which relief can be granted, or (4) seeks
monetary relief from a defendant who is immune from such
relief. In S 1997e(c), Congress demonstrated a capacity to
clearly authorize sua sponte dismissal when it so desired.
Notably absent from the list is any reference to failure to
exhaust. The final sentence in S 1997e(c)(2) that "the court
may dismiss the underlying claim [for the four specified
reasons] without first requiring the exhaustion of
administrative remedies" shows that Congress had not
forgotten about the need for exhaustion, but chose not to
include failure to exhaust among the grounds for which the
court could dismiss sua sponte.[9] Inasmuch as the omission
of failure to exhaust from the categories explicitly
permitting sua sponte dismissal is found in S 1997e, the
same section of the PLRA that sets out the exhaustion
requirement, the inference is inescapable that Congress did
not intend to include failure to exhaust among the
categories justifying sua sponte dismissal.[10]

---

9. The statutory structure also belies any possibility that a failure to
exhaust is included in (c)(1)'s broad rubric of "failure to state a claim
upon which relief can be granted." As one court observed:

> Any argument that Congress intended the broad categories in
> Section 1997e(c)(1) to include dismissal for failure to exhaust is
> demolished by Section 1997e(c)(2), which grants the court power to
> dismiss sua sponte without requiring exhaustion of administrative
> remedies. It makes little sense to permit dismissal for failure to
> exhaust and then state that the court may dismiss without "first
> requiring the exhaustion of administrative remedies."

Jackson, 89 F. Supp. 2d at 57 (quoting 42 U.S.C.S 1997e(c)(2)); see also
Snider, 199 F.3d at 112 (" '[F]ail[ure] to state a claim,' as used in
Sections 1997e(c) . . . of the PLRA, does not include failure to exhaust
administrative remedies.").

10. Moreover, failure to exhaust was not included when the PLRA
amended the provision authorizing prisoner in forma pauperis suits to

provide explicitly for sua sponte dismissal for certain specified reasons,
see 28 U.S.C. S 1915(e)(2) (2001) (amended by Pub. L. 104-134, 110
Stat. 1321-74 (1996)) (permitting dismissals "at any time" for falsely
alleging poverty, or because, inter alia, the action is frivolous or

14

As a general proposition, sua sponte dismissal is
inappropriate unless the basis is apparent from the face of
the complaint. See, e.g., Rycoline Prods., Inc. v. C & W
Unlimited, 109 F.3d 883, 886 (3d Cir. 1997); see also
Snider, 199 F.3d at 111-13 (discussing extensively sua
sponte dismissals in the S 1997e(a) context). Ray's failure to
exhaust was not apparent from the complaint or other
documents before the District Court. On the first page of
his complaint, under a caption entitled "Exhaustion of
Administrative Remedies," Ray alleged that the grievance
process had been completed. Also, Ray's objections to the
Magistrate Judge's Report and Recommendation were filed
in the District Court. In those objections, Ray again noted
his exhaustion, this time with more particularity, stating
"Plaintiff did exhaust administrative remedies by
exhausting the appeal process for all misconduct
mentioned in the complaint." App. at 11. Ray also attached
to his objections copies of several misconduct charges, and
a handwritten copy of the final disposition of the sole
misconduct of which he was found guilty. Without further
inquiry, the District Court was not in a position to reach
the conclusion that Ray failed to exhaust his administrative
remedies.

The District Court also stated that Ray's complaint was
deficient because "Ray has not demonstrated that he has
exhausted administrative remedies," Supp. at 2 (emphasis
added). In so stating, the court imposed the additional
requirement that a prisoner must demonstrate compliance
with the exhaustion requirement. We view that holding as
inconsistent with the Supreme Court's teachings in
Leatherman, where the Court explained that courts should
narrowly interpret statutory language to avoid heightened
pleadings standards. 507 U.S. at 168. As the Court pointed
out, heightened pleading standards are inconsistent with
the "liberal system of 'notice pleading' set up by the federal

---

malicious), and also instituted a screening process for prisoner suits
against governmental entities and their employees, see 28 U.S.C.
S 1915A(a)-(b) (directing dismissal "before docketing, if feasible" for,
among other grounds, claims which seek monetary relief from
defendants immune from such redress).

15

rules." Id.; see also Brader v. Allegheny Gen. Hosp., 64 F.3d
869, 876-77 (3d Cir. 1995). In Crawford-El v. Britton, 523
U.S. 574 (1998), the Supreme Court applied the same
rationale in the PLRA context, criticizing "the creation of
new rules by federal judges." Id. at 596. The Court pointed

out that "Congress has already fashioned special rules [in the PLRA]," concluding that "[i]f there is a compelling need to frame new rules of law . . . , presumably Congress either would have dealt with the problem in the [PLRA], or will respond to it in future legislation." Id. at 596-97.

Most recently, in Swierkiewicz v. Sorema, No. 00-1853, 70 USLW 4152 (Feb. 26, 2002), the Court, in a unanimous opinion, reiterated that courts may not require greater particularity in pleading than the Federal Rules require. As Justice Thomas wrote:

> Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake. This Court, however, has declined to extend such exceptions to other contexts.

Id. at 4154 (footnote omitted). As we previously noted, no provision of the PLRA requires pleading exhaustion with particularity.

Ray asks us to use this occasion to clarify that a Pennsylvania inmate may satisfy his or her exhaustion obligation in the course of the proceedings charging the inmate with misconduct under the Inmate Disciplinary Procedures. We decline to so hold. That issue should be considered in the first instance by the District Court because it may require information regarding how prison administrators interpret the scope of the Inmate Disciplinary Procedures, the Inmate Grievance System, and the interaction between them.

IV.

CONCLUSION

For the reasons set forth, we will reverse the decision of the District Court dismissing Ray's complaint.

16

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17

234 F. 3d 1264, 2000 U.S. App LEXIS 2

EXHIBIT

F

UNREPORTED/NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――――

No. 99-1971

―――――――

LARRY GEISLER,
Appellant

v.

STANLEY HOFFMAN, DR.;
DONALD T. VAUGHN

―――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 99-CV-3764
District Judge:  The Honorable John R. Padova

―――――――

Argued:  September 12, 2000

―――――――

Before: NYGAARD, ROTH, and BARRY, Circuit Judges

(Opinion Filed:  September 29, 2000 )

―――――――

MEMORANDUM OPINION OF THE COURT

―――――――

BARRY, Circuit Judge

Appellant Larry Geisler, a former prisoner at SCI-Graterford, appeals separate orders

of the District Court which granted motions to dismiss his civil rights action against appellees

Dr. Stanley Hoffman and Superintendent Donald T. Vaughn. The District Court dismissed

Geisler's action against Dr. Hoffman for failure to exhaust administrative remedies and

dismissed the action against Superintendent Vaughn on the merits.[1]  In this appeal, Geisler

seeks reversal of the orders of dismissal and adds a constitutional challenge to 42 U.S.C. §

1997e(a), a challenge he did not raise before the District Court.[2]  For the reasons set forth

below, we will affirm.

    The facts underlying this case, as sympathetic as they are to Geisler, are well-known

to the parties involved and will not be repeated here.  Despite that sympathetic story,

however, we must follow the mandate of Congress in 42 U.S.C. § 1997e(a), as interpreted

---

[1] Superintendent Vaughn argues that because Geisler's brief on appeal fails to address
the merits of his claim against him, much less tell this Court why, in his opinion, the
District Court erred in dismissing the action as to him, that order of dismissal is not
properly before us for review.  We agree.  "An issue is waived unless a party raises it in
its opening brief, and for those purposes 'a passing reference to an issue . . . will not
suffice to bring that issue before t[he] court.'"  Laborers' Int'l Union of No. Am. v. Foster
Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (quoting Simmons v. City of
Philadelphia, 947 F.2d 1042, 1066 (3d Cir. 1991), cert. denied, 503 U.S. 985 (1992)); see
also Penn. Dept. of Public Welfare v. U.S. Dept. of Health and Human Services, 101 F.3d
939, 944 (3d Cir. 1996).  The remainder of this opinion will, therefore, address only
Geisler's appeal from the dismissal of Dr. Hoffman and we will affirm as to
Superintendent Vaughn without further discussion.

[2] We have consistently refused to consider issues that are raised for the first time on appeal.
See Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994); Richerson v. Jones, 572 F.2d
89, 97 (3d Cir. 1978) (noting that "refusing to consider on appeal an issue or argument not raised
below normally promotes the finality of judgments and conserves judicial resources").  While
there is a "manifest injustice" exception to this Court's rule against consideration of new legal
issues on appeal, this rarely-applied exception is not triggered here.  We, therefore, will not

by this Court, and affirm the dismissal as to Dr. Hoffman because Geisler simply did not exhaust his administrative remedies as to the monetary relief he now seeks.

The plain language of 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act ("PLRA"), makes clear that: "No action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*" 42 U.S.C. § 1997(e)(a) (emphasis added). As we determined in Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000), Congress intended for the PLRA to amend "§ 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory–*whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action.*" The decision in Nyhuis – a Bivens action –  to reject a "futility" exception to § 1997e(a) and to regard the exhaustion requirement as unqualified has been extended to § 1983 claims. See Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000) ("[T]he rule we announced in Nyhuis has equal force in the § 1983 context . . . for § 1997e(a) treats Bivens actions and § 1983 actions as functional equivalents."), petition for cert. filed, 68 U.S.L.W. 3774 (U.S. June 05, 2000) (No. 99-1964).

As the record reveals and Geisler's counsel concedes, Geisler failed to utilize all three of the tiers of the administrative appeals process provided for by the Pennsylvania Department of Corrections via the Consolidated Inmate Grievance Review Procedure ("DC-ADM 804"). While Geisler claims to have filed a grievance to have his J tube reimplanted

and arranged to have an inmate file a second grievance on his behalf, he admittedly never went beyond that initial step within the formal appeals process outlined in DC-ADM 804. Moreover, the failure of the prison officials to formally respond in writing to these grievances did not, contrary to Geisler's argument, relieve him of the obligation of exhausting the requisite administrative remedies. DC-ADM 804 does not prohibit prisoners from appealing the failure of prison officials to act on initial grievances and, therefore, Geisler was statutorily constrained to bring his grievances to the next level within the prison grievance scheme before pursuing relief in the judicial forum.  And, we note, Geisler's grievances sought relief wholly different from the monetary remedy that he subsequently sought from the District Court. To this end, even if Geisler had brought his grievances before the two appellate tiers provided for by DC-ADM 804, exhaustion in that setting clearly would not have exhausted his current claim for monetary relief, a claim which he never even began to pursue administratively.

In this connection, Geisler cannot be heard to argue that seeking monetary damages in the administrative setting would have been "futile." First of all, DC-ADM 804 made awards of monetary relief available to inmates as of May 1, 1998 – well before Geisler filed his federal complaint in July 26, 1999; if the very relief Geisler sought in the judicial forum was first available to him in the administrative forum, a grievance in that forum could not have been "futile." Second, even if administrative remedies had not been available to Geisler via DC-ADM 804, any attempt to invoke a "futility" exception would be denied in light of

Nyhuis and Booth. See Nyhuis, 204 F.3d at 70-77 (explaining that Congress, via the PLRA, intended for exhaustion to be an unqualified requirement in prisoner civil rights litigation in an attempt to conserve judicial resources and to give deference to and promote the efficacy of administrative processes); Booth 206 F.3d at 300 (same).

In sum, Geisler's complaint fits squarely within the dictates of § 1997e(a), as interpreted by this court in Nyhuis and Booth, that a prisoner exhaust the administrative remedies available to him or her prior to initiating suit in federal court. Because Geisler failed to exhaust the three-tiered administrative appeals process with respect to both (1) his request to have his J tube reimplanted and (2) his current request for monetary damages attributable to the time he was deprived of the J tube, the District Court properly granted Dr. Hoffman's motion to dismiss.

We make, however, one observation. While Nyhuis and Booth compel us to uphold the dismissal of Geisler's complaint for failure to exhaust, we note that exhaustion is a two-way street with obligations on the part of prison officials as well as on the part of the prisoner. In Nyhuis, this Court stated that "applying § 1997e(a) without exception promotes the efficacy of the administrative process itself..." Nyhuis, 204 F.3d at 76. We anticipated that under a strict exhaustion requirement "prison grievance procedures will receive enhanced attention and improved administration." Id. While the state's failure to formally respond to Geisler's grievances – and on a motion to dismiss both the filing of the grievances and the failure to respond must be accepted as true – does not constitute a ground for

excusing Geisler from exhausting the administrative appeals process, such failure is wholly inconsistent with the "cooperative ethos . . . between inmate and jailer" which this Court envisioned a strict exhaustion requirement would promote. Id. at 77. In response to the inattention in this case, we issue a simple yet stern reminder: federal courts and prisoners alike depend upon prison officials to take seriously their roles within the relevant administrative grievance scheme. Only prompt attention and formal, guided response to timely prisoner grievances will facilitate the overarching policies of the PLRA.

TO THE CLERK OF THE COURT:

    Kindly file the foregoing Memorandum Opinion.

                    /s/ Maryanne Trump Barry
                       Circuit Judge

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 99-1971

———

LARRY GEISLER,
Appellant

v.

STANLEY HOFFMAN, DR.;
DONALD T. VAUGHN

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 99-CV-3764
District Judge:  The Honorable John R. Padova

———

Argued: September 12, 2000

———

Before: NYGAARD, ROTH, and BARRY, Circuit Judges

(Opinion Filed: September 29, 2000 )

———

JUDGMENT

———

This cause came to be heard on the record from the United States District Court for

the Eastern District of Pennsylvania and was argued on September 12, 2000.

After consideration of all contentions raised by the appellant, it is

ADJUDGED and ORDERED that the judgments of the District Court be and are

hereby affirmed.

Costs taxed against appellant.

*Marcia M. Waldron*

Marcia M. Waldron, Clerk

Dated: September 29, 2000

EXHIBIT

G

FILED
SCRANTON

SEP 2 6 2001

PER _____

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON LAIRD,
    Plaintiff

    vs.

COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF CORRECTIONS, ET AL.,
    Defendants

CIVIL ACTION NO. 3:CV-00-1039

(JUDGE NEALON)

## MEMORANDUM AND ORDER

Plaintiff, Jason Laird, an inmate formerly confined in the State Correctional Institution at Camp Hill ("SCI-Camp Hill"), Camp Hill, Pennsylvania, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. Defendants filed a motion to dismiss. (Doc. 9). As a result of an insufficient record the court withheld its decision regarding the issue of exhaustion of administrative remedies under 42 U.S.C. § 1997e(a). Consequently, the parties were ordered to file responses addressing the issue of exhaustion of administrative remedies. The parties jointly requested and received an enlargement of time to file their responses. (Doc. 17). The issue has been fully briefed and is in posture for consideration by the court. For the reasons set forth below, the complaint will be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies.

## Background

The remaining defendants are "Officer Howard"[1] and Corrections Officers Albert Clarke and Karl Lattimore.[2] On July 20, 1998, plaintiff alleged in a written inmate grievance that on June 13, 1998, Officers Clarke and Lattimore forced him to retain a cigarette in his mouth until it burned his lips.[3] As relief, he requested that defendants Clark and Lattimore be prohibited from "torturing inmates and inflicting burns on people." Superintendent Kyler in a correspondence dated July 22, 1998, confirmed to plaintiff the receipt of his grievance and indicated that an investigation would be conducted with the results forthcoming. The investigation was assigned to then Acting Intelligence Captain Orwig. On September 4, 1998, Laird was transferred from SCI-Camp Hill to State Correctional Institution at Rockview ("SCI-Rockview"), Bellefonte, Pennsylvania. Orwig in a memorandum to Superintendent Kyler dated November 6, 1998 recommended the following:

> [T]his Acting Captain cannot prove/substantiate the allegations made by inmate Laird against Sergeant Clark and Officer Lattimore. Inmate Laird is currently housed at SCI-Rockview, which will negate any further interaction with Sergeant Clark and Officer Lattimore. Therefore, this Acting Captain recommends no further action be taken concerning this matter.

Plaintiff never received a response summarizing the conclusions and actions taken to resolve the issues raised in his grievance. He states that as a consequence of not receiving such a response he twice requested copies of his July 28, 1998 grievance only to be denied on both occasions. Plaintiff

---

[1] Officer Howard has not been identified further and no motion was filed on his behalf.

[2] The Commonwealth of Pennsylvania, the Department of Corrections, all defendants in their official capacities, Security Captain David Orwig and former Superintendent at SCI-Camp Hill Kenneth Kyler were dismissed previously by the court. (Doc. 15).

[3] Plaintiff's grievance was enclosed with a letter and sent to Superintendent Kyler.

did not appeal the grievance and/or lack of response thereto.

**Discussion**

Section 1997e(a) of Title 42 U.S.C. provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

The exhaustion requirement of section 1997e(a) applies to grievance procedures "regardless of the relief offered by the administrative procedures." Booth v. Churner, 121 S. Ct. 1819, 1825 (2001). An inmate is prohibited from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials until the inmate has exhausted available administrative remedies. 42 U.S.C. § 1997e(a); Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000); Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000), aff'd on other grounds, 121 S. Ct. 1825 (2001). Our Court of Appeals for the Third Circuit has identified the various policies underlying the exhaustion requirement:

First, adherence to the doctrine shows appropriate deference to Congress' decision, embodied in statute, that an independent administrative tribunal, and not the courts, should serve as the initial forum for dispute resolution.

Second, the exhaustion doctrine illustrates respect for administrative autonomy by forbidding unnecessary judicial interruption of the administrative process. This autonomy allows the administrative tribunal to exercise its own discretion, apply its own special expertise, and correct its own errors, thereby promoting administrative responsibility and efficiency and minimizing the frequent and deliberate flouting of administrative processes which could weaken the tribunal's effectiveness.

Third, the exhaustion requirement fosters judicial economy both by permitting the administrative tribunal to vindicate a complaining party's rights in the course of its proceedings, thereby obviating judicial intervention, and by encouraging the tribunal to make findings of fact on which courts can later rely in their decisionmaking.

Lyons v. United States Marshals, 840 F.2d 202, 204-05 (3d Cir. 1988) (quoting Republic Indus., Inc.

v. Central Pa.Teamsters Pension Fund, 693 F.2d 290, 293 (3d Cir. 1982)).

The Pennsylvania Department of Corrections has an inmate grievance review system. DC-ADM 804 ("Consolidated Inmate Review System", effective October 20, 1994, as amended by DC-ADM 804-2, 804-3, both effective November 1, 1997). With certain exceptions none of which are applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections Regional Director; and a final written appeal may be presented to the Chief Hearing Examiner.

Effective May 1, 1998, the Department of Corrections amended DC-ADM 804 to provide that a prisoner, in seeking review through the grievance system, may include requests for "any claims concerning violations of Department of Corrections directives, regulations, court orders, or other law. The Grievant may also include a request for compensation or other legal relief normally available from a court." DC-ADM 804-4, issued April 29, 1998. Further, the amendment requires that the [g]rievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based," but allows for extensions of time for good cause, which "will normally be granted if the events complained of would state a claim of a violation of a federal right." Id.

Laird's complaint concerns the use of excessive force and/or cruel and unusual punishment, however, he fails to establish that he has exhausted the administrative remedies available to him as outlined above. Plaintiff filed a grievance with Superintendent Kyler, but received no response and his later request for copies of the grievance was denied. He did not appeal the grievance and/or lack of response thereto asserting that he was not provided information as to how to advance a grievance

in a case of non-response.

The administrative procedure contemplates several tiers of review and the inmate grievance review system is not exhausted when an inmate files a grievance and then takes no other action through established channels when a grievance is not resolved to his or her satisfaction. Plaintiff's next step was to appeal his grievance and/or lack of response thereto to the Facility Manager or Community Corrections Regional Director and then file a final appeal to the Chief Hearing Examiner.

Although not precedential, the analysis of a similar factual situation in Geisler v. Hoffman, et al., 99-1971, 234 F.3d 1264 (3d Cir. 2000) is interesting and informative. In Geisler, the panel concluded that the failure of the prison officials to formally respond in writing to his grievance did not relieve him of the obligation of exhausting the requisite administrative remedies and that Geisler was statutorily constrained to bring his grievance to the next level within the prison grievance scheme before pursuing relief in the judicial forum. Furthermore, even if he complied with DC-ADM 804, he still would not have exhausted his monetary claim because, as with Laird, he did not seek monetary damages administratively. It should be noted that plaintiff was transferred to another prison on September 4, 1998, some forty-six (46) days after Superintendent Kyler received his grievance and the report on the investigation was not completed until November 6, 1998. This may have been more of a factor in the failure of the prison authorities to respond to plaintiff's grievance rather than inattention or dereliction on their part.

Thus, plaintiff's apparent failure to comply with 42 U.S.C. § 1997e(a), as amended, warrants the dismissal of his complaint but without prejudice. See Emerich v. Seudl, et al., Civil Action No. 00-1032 (M.D. Pa. June 28, 2000) (Nealon, J.); Taylor v. Commonwealth of Pennsylvania, Civil Action No. 99-591 (M.D. Pa. May 27, 1999) (Kane, J.); Spain v. Miller, Civil Action No. 98-1912

(M.D. Pa. December 16, 1998) (McClure, J.); <u>Garcia v. Horn</u>, Civil Action No. 98- 0463 (M.D. Pa.

March 26, 1998) (Conaboy, J.); <u>Pew v. Imschweiler, et al.</u>, Civil Action No. 96-0760 (M.D. Pa.

September 12, 1996) (Kosik, J.); <u>Johnson v. Gillis, et al.</u>, Civil Action No. 96-1569 (M.D. Pa. August

29, 1996) (Conaboy, J.). An appropriate Order is attached.


Date: *Sept. 26, 2001*


_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON LAIRD,
     Plaintiff          :

     vs.              :

COMMONWEALTH OF PENNSYLVANIA, :
DEPARTMENT OF CORRECTIONS, ET AL., :
     Defendants     :

CIVIL ACTION NO. 3:CV-00-1039

(JUDGE NEALON)

AND NOW, THEREFORE, THIS 26ᵗʰ DAY OF SEPTEMBER, 2001, IT IS HEREBY ORDERED THAT:

1.) The complaint is dismissed without prejudice, pursuant to 42 U.S.C. § 1997e(a) for failing to exhaust administrative remedies;

2.) The Clerk of Court is directed to close this case;

3.) Any appeal from this order will be deemed frivolous, not taken in good faith and lacking probable cause.

United States District Judge

7

16:44 MAR 15, 2002  TO: JOHN   TALABER    FR: SCAN31            #2923

EXHIBIT

H

(52)

3/15/02
TS

FILED
SCRANTON

MAR 15 2002

PER_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SALVATORE CHIMENTI,              :

      Plaintiff,              :

                :

      v.                       :  CIVIL NO. 3:CV-01-0273

                :  (Chief Judge Vanaskie)

ROGER KIMBER, ET AL.,            :

      Defendants.             :

### MEMORANDUM

### BACKGROUND

    This <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983 was initiated by Salvatore

Chimenti, an inmate presently incarcerated at the State Correctional Institution, Huntingdon,

Pennsylvania (SCI-Huntingdon).  Plaintiff's <u>in forma pauperis</u> application was previously

construed as a motion to proceed without full prepayment of fees and costs, and granted.

    Named as Defendants are Secretary Martin Horn and Chief Hearing Examiner Robert

Bitner of the Pennsylvania Department of Corrections (DOC) and the following SCI-Huntingdon

officials:  Superintendent Frederick Frank and Nurses Patricia Yarger and Patricia Everhart.

Also named are five employees of Wexford Health Sources, Inc., a health care service which

provides medical treatment to SCI-Huntingdon inmates on a contractual basis:  Peter Baddick

M.D., David Rowe, D.O., Gerald Kaufer, M.D., Site Coordinator Carol Pollock L.P.N., and

Farrohk Mohadjerin, M.D.  The Plaintiff is also proceeding against Roger Kimber, M.D., who is identified as being a former SCI-Huntingdon Medical Director.

Chimenti states that he has been confined at SCI-Huntingdon since 1991.  Blood tests conducted during 1991 revealed that Plaintiff had elevated liver enzymes.  As a result, a non-defendant, Doctor Reiners, ordered a liver biopsy.  The biopsy tested positive for Hepatitis C. Between 1991 and 1996, Chimenti was treated by various physicians who are not named as defendants in this action.  During 1996, Plaintiff's Hepatitis-related symptoms "became more severe and pronounced." (Dkt. Entry # 1, ¶10.)  As a result, blood testing was performed in December, 1996.

The then newly-appointed SCI-Huntingdon Medical Director, Defendant Doctor Mohadjerin, reviewed the results of the blood test with Chimenti on or about January 15, 1997. The test revealed that Chimenti had elevated liver enzyme levels.

In April of 1997, Chimenti filed Grievance No. 0057-97, complaining of the alleged lack of medical care provided by Dr. Mohadjarin and the Wexford Health Group. (See Ex. "B" to Plaintiff's Complaint.)  As relief, Chimenti asked that Dr. Mohadjarin "recuse himself from treating me . . . and to also recuse himself from making any medical decisions regarding any types of tests, x-rays, operations, doctor consultations, or any other medical decisions pertaining to my health."  Chimenti also requested that "Dr. Rieners or Dr. Aranenda attend to me in the future." (Id., p. 6.)  Chimenti unsuccessfully pursued this grievance through the final

2

review stage, with DOC Commissioner Horn sustaining the denial of the grievance in a letter dated June 27, 1997. (Ex. "E" to the Complaint.) Chimenti did not pursue a civil action with respect to this matter.

During the summer of 1997, Chimenti was referred to Dr. Gaugler, who ordered a liver biopsy and testing to determine the condition of the Hepatitis-C. In October of 1997, when testing had not been undertaken, Chimenti complained in writing to Defendant Dr. Kaufer. (See Exs. "F" and "G" to the Complaint.) By letter dated November 12, 1997, Defendant Pollock responded to Chimenti's letters to Dr. Kaufer. (Ex. "H" to the Complaint.) Chimenti did not pursue an administrative grievance with respect to the matters covered in his letter to Dr. Kaufer.

In the interim, on November 5, 1997, a liver biopsy was performed and Dr. Gaugler recommended Interferon therapy. Chimenti received Interferon therapy for about 3 ½ months, beginning in December of 1997. (Complaint, ¶¶ 40-41.) Dr. Mohadjarin discontinued the Interferon therapy in March of 1998 because the Hepatitis C was "'not fully responding to treatment.'" (Id., ¶ 41.) Chimenti alleges that Dr. Gaugler recommended that the Interferon treatment be intensified, but Dr. Mohadjarin refused. (Id, ¶ 46-47.) Thereafter, Chimenti asked that Dr. Mohadjarin approve "Rebetron Therapy," but he again declined to order the treatment. (Id., ¶ 49-52.)

On February 10, 1999, Chimenti initiated another administrative proceeding concerning

3

his medical care. This grievance, assigned No. 0037-99, was "lodged against SCI-[Huntington]

Medical Dept., Dr. Mohadjarin, Wexford Health Sources, Inc., and the D.O.C." (Complaint, Ex.

"I," p. 1.) Chimenti sought to compel implementation of the Rebetron therapy. By letter dated

May 10, 1999, the denial of Chimenti's grievance was sustained on final review. (Complaint,

Ex. "O.") No additional administrative grievances were pursued by Chimenti.

Chimenti did not bring this lawsuit until February 13, 2001. Chimenti alleges that he did

not receive any treatment for hepatitis from March of 1998 until June 26, 2000. (Complaint, ¶

65.) He further alleges that, as a result, his condition deteriorated substantially. (Id., ¶ 66.)

He acknowledges, however, that on June 26, 2000, he started receiving Rebetron

therapy. (Id., ¶ 68.) On December 13, 2000, Defendant Dr. Kimber ordered that this treatment

be discontinued because Chimenti's condition continued to deteriorate. (Id., ¶ 72.) Chimenti

alleges that Defendants Drs. Kimber and Baddick then refused to provide him any additional

treatment. His complaint contends that he has been diagnosed with cirrhosis of the liver. He

further avers that he "now languishes in a prison cell, suffering from an extremely advanced life

threatening illness...." (Complaint, ¶ 79.) As relief for the alleged deliberate indifference of the

Defendants, Chimenti requests compensatory and punitive damages plus an injunctive decree

directing his transfer to the State Correctional Institution at Pittsburgh, Pennsylvania (SCI-

Pittsburgh) for the purpose of being evaluated as a liver transplant candidate.

On May 29, 2001, the Wexford employees who have been sued in this case,

4

Defendants Baddick, Rowe, Kaufer, Pollock, and Mohadjerin (hereinafter the Wexford Defendants) submitted a motion to dismiss. <u>See</u> Dkt. Entry # 29. Shortly thereafter, Dr. Kimber filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. (<u>See</u> Dkt. Entry # 30.)  The remaining Defendants, Horn, Bitner, Frank, Yarger, and Everhart (hereinafter the Commonwealth Defendants) also filed a motion to dismiss. (<u>See</u> Dkt. Entry # 32.) Briefing has been completed on the respective motions, and they are ripe for consideration.

## DISCUSSION

"The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." <u>Holder v. City of Allentown</u>, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." <u>Markowitz v. Northeast Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990); <u>Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth.</u>, 103 F.3d 1165, 1168 (3d Cir. 1997). In <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."  Finally, it is additionally well-settled that <u>pro se</u> complaints should be liberally construed. <u>Haines v. Kerner</u>, 404 U.S. 519, 520

5

(1972).

The separate motions to dismiss raise some common grounds. Specifically, Dr. Kimber

and the Wexford Defendants assert that dismissal is appropriate on the ground that Chimenti

did not adequately exhaust administrative remedies. Both the Wexford and Commonwealth

Defendants argue that the complaint fails to set forth a valid claim of deliberate indifference.

## A. Failure to Exhaust Administrative Remedies

Dr. Kimber maintains that the claim asserted against him was not included in Chimenti's

administrative grievances.[1] The Wexford Defendants' argument that Chimenti failed to exhaust

his administrative remedies is twofold. First, they point out that the two administrative

complaints that Chimenti pursued did not name nor seek relief on account of actions or inaction

of Baddick, Rowe, Kaufer and Pollock. And second, the Wexford Defendants contend that

Chimenti is not entitled to pursue his claims in this Court because the relief requested --

monetary damages and a transfer to SCI-Pittsburgh for evaluation for a liver transplant -- was

not sought in the administrative complaint process.

---

[1]     The Complaint alleges that Dr. Kimber became the prison's Medical Director during
"October/November 2000." (Dkt Entry # 1, ¶ 69.) On December 13, 2000, Kimber allegedly
discontinued Chimenti's Rebetron therapy because his illness "failed to respond to said
treatment." (Id. at ¶ 72.) Thereafter, on January 18, 2001, Kimber informed the Plaintiff that a
second referral made by Doctor Reiners for Chimenti to be examined by a gastroenterologist
had been rejected by Doctor Baddick, Wexford's Regional Director. The complaint concludes
that Kimber refused to provide Plaintiff with needed treatment.

Section 1997e(a) of Title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under
> section 1979 of the   Revised Statutes of the United States (42
> U.S.C. 1983), or any other Federal law, by a prisoner confined in
> any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

The Supreme Court has made clear that prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through a grievance process. See Porter v. Nussle, 122 S.Ct. 983, 992 (2002)("we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth v. Churner, 121 S.Ct. 1819, 1825 n.6 (2001)("we hold . . . that Congress has provided in § 1997e(a) that an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues"). Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to § 1983 or any other federal law.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance Review System. DC-ADM 804 (effective January 1, 2001). With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or

Community Corrections Regional Director; and a final written appeal may be presented to the

Secretary's Office of Inmate Grievances and Appeals.  A prisoner, in seeking review through

the grievance system, may include requests for "compensation or other legal relief normally

available from a court." (DC-ADM 804-4, issued April 29, 1998.)  Furthermore, although

"[g]rievances must be submitted for initial review to the Facility/Regional grievance Coordinator

within fifteen (15) days after the events upon which the claims are based," allowances of

extensions of time for good cause "will normally be granted if the events complained of would

state a claim of a violation of a federal right." ( Id.)

    With respect to Dr. Kimber's failure to exhaust argument, Plaintiff contends the he was

subjected to a continuous denial of medical treatment and all available administrative remedies

were exhausted as evidenced by Exhibits "L" and "O" to the original complaint. ( See Dkt. Entry

# 37, ¶ 8.)  The two exhibits cited by Chimenti relate to Grievance 0037-99, which was filed and

ruled upon long before Dr. Kimber assumed his duties as Medical Director at SCI-Huntingdon.

Specifically, as established by Exhibit "O", final administrative review of said grievance

concluded on May 10, 1999, over a year before Medical Director Kimber began his tenure.

Plaintiff's earlier grievance, No. 0057-97 was likewise initiated and reached final disposition

long before Dr. Kimber's involvement.

    Moreover, Plaintiff's attempt to avoid compliance with the exhaustion requirement on the

basis that he was subjected to a continuing pattern of deliberate indifference is not compelling

8

Clearly, Dr. Kimber cannot be held accountable for the actions of his predecessors. The filing of an administrative grievance regarding prior actions allegedly taken by other correctional officials simply does not permit this Court to entertain unexhausted claims against Kimber. To do so would undermine the purpose of § 1997e(a).[2]  Consequently, since Plaintiff did not initially seek administrative relief through the DOC grievance procedure prior to asserting claims against Dr. Kimber in federal court, his claims against him are unexhausted and must be dismissed, without prejudice, pursuant to § 1997e(a).[3]

An identical conclusion is compelled with respect to Doctors Baddick, Rowe and Kaufer, as well as Nurse Pollock. Plaintiff's initial grievance, # 0057-97, was filed against "Dr. Mohadjerin and the Wexford Health Group." (Complaint, Ex. "B", p. 1.) As previously noted, Plaintiff requested that Dr. Mohadjerin be removed as his treating physician and be replaced by Doctor Reiners or Aranenda. The Complaint did not mention any of the remaining Wexford Defendants by name, and did not seek any other relief.

---

[2]  It is additionally noted that in May, 2001, Plaintiff, by his own admission, initiated a grievance against Kimber regarding the rejection of his request to be transferred to the University of Pittsburgh in order to be evaluated by a liver specialist. (See Dkt. Entry # 45, Exhibit "C".) Chimenti's action undermines his apparent argument that he felt that it was unnecessary to seek administrative relief against Kimber.

[3]  A discussion regarding Kimber's alternative argument that Chimenti failed to allege any facts which could support a deliberate indifference claim is thus unnecessary.

9

Plaintiff's second grievance, No. 0037-99, filed February 10, 1999, was "lodged against SCI-H, Medical Dept., Dr. Mohadjerin, Wexford Health Sources, Inc. and the DOC."(Complaint, Ex. "I", p. 1.)  Chimenti asserted that he had not been provided with Rebetron therapy in a timely fashion and requested that he be provided with said treatment.  Once again, with the exception of Dr. Mohadjerin, the grievance did not mention any of the remaining Wexford Defendants by name, nor were there any discernible claims asserted against those individuals.

Since Baddick, Rowe, Kaufer, and Pollock were not named or mentioned in either of the administrative grievances initiated by Chimenti, the instant claims asserted against them have not been exhausted.  The mere inclusion of the Wexford Group in both grievances is not enough to show that Chimenti was complaining of discrete instances of medical treatment relative to any of these defendants.  Moreover, his complaint shows that none of these defendants had more than a passing or tangential connection with Chimenti's medical care.  For example, Nurse Pollock's connection to Chimenti appears to have been restricted to answering letters he wrote to Dr. Kaufer in the Fall of 1997.[4]  Under these circumstances, dismissal of Chimenti's claims against these defendants for failure to exhaust administrative

---

[4] A review of the complaint reveals that Plaintiff states that he sent Dr. Kaufer two letters during October, 1997. (See id. at ¶ 32-3), and Exhibits "F"& "G.")  His complaint maintains that Pollock denied him treatment in a November 1997 response to the aforementioned October letters. (See id. at ¶ 35, and Exhibit "H.") Finally, Plaintiff claims that Kaufer and Rowe acted improperly in responding to two referrals made by Doctor Mohadjerin in June or July of 1997. (See id. at ¶ 28.)

remedies is warranted.

The fact that Chimenti pursued two separate grievances against Dr. Mohadjerin does not necessarily satisfy the exhaustion requirement. The Third Circuit, in an unreported decision, has suggested that an inmate may not pursue a claim for monetary relief when such a claim was not pursued administratively. See Geisler v. Hoffman, Civil No. 99-1971, slip op. at 4 (3d Cir. Sept. 12, 2000). A learned member of this Court, relying upon Geisler, has held that an inmate plaintiff's failure to seek monetary damages in prison grievance proceedings precluded the inmate from seeking such relief in a civil rights action. See Laird v. Pennsylvania Department of Corrections, Civil No. 3:CV-00-1039, slip op. at 3 (M.D. Pa. Sept. 26, 2001 (Nealon, J.).)

Chimenti did not include a request for monetary damages in his administrative complaints. Moreover, he did not seek a transfer to another institution in those complaints. Thus, Chimenti's claims against Dr. Mohadjerin for monetary and equitable relief would appear to be foreclosed as a consequence of his failure to seek such relief through the DOC grievance process.[5] Even if the exhaustion requirement had been satisfied as to Dr. Mohadjerin, however, Chimenti has not presented a viable claim against him.

---

[5] It appears that Dr. Mohadjerin is no longer employed as the Medical Director for SCI-Huntington by the Wexford Group. Under these circumstances, the equitable relief sought by Chimenti in this case could not be awarded, at least insofar as Dr. Mohadjerin is concerned.

### B. The Claims Against Dr. Mohadjerin

Dr. Mohadjerin asserts that since Plaintiff acknowledges that he was provided with extensive treatment, his complaint "merely establishes a disagreement between an inmate and medical professionals with respect to the appropriate course of treatment," (Dkt. Entry # 34, page 14.)  The remaining Wexford Defendant concludes that such disagreement does not rise to the level of a viable Eighth Amendment claim.

As recognized in Estelle v. Gamble, 429 U.S. 97 (1976), the government has an "obligation to provide medical care for those whom it is punishing by incarceration." Id. at 103. A constitutional violation, however, does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain." Id. at 104 (citation omitted).  The proper analysis for deliberate indifference is whether prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).  Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  Where a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate

12

treatment results simply from an error in medical judgment, there is no constitutional violation. See id.

After being diagnosed with Hepatitis C in 1991, numerous physicians, including specialists, provided Chimenti with varied treatment. Shortly after assuming his duties at SCI-Huntingdon, Doctor Mohadjerin met with Chimenti in January, 1997 and thereafter became involved in his treatment. In May, 1998, Doctors Gaugler (a non-defendant Gastroenterologist) and Mohadjerin disagreed as to whether Plaintiff should both remain on, and be provided with increased Interferon therapy. (See Dkt. Entry # 1, ¶ 46.) During that same month, Plaintiff alleges that Doctor Mohadjerin told him that a new treatment, Rebetron therapy,[6] was not yet available because it was awaiting approval by the Food and Drug Administration (FDA). Moreover, said approval was required before "the plaintiff would be treated in any fashion."( Id. at ¶ 49.) The following month the FDA issued its approval. (See id. ) That same month, Medical Director Mohadjerin allegedly told Chimenti that before "plaintiff could receive the new therapy" a protocol for treatment between Wexford and the DOC had to be established. (Id. at ¶ 52.) Plaintiff notes that a protocol for Rebetron therapy was established by the Center for Disease Control in October, 1998. (See id. at ¶ 64.) In addition, Mohadjerin referred Chimenti to Dr. Gaugler in November of 1998. An agreement regarding the Rebetron protocol was

---

[6] Plaintiff describes Rebetron therapy as being a combination of Interferon and Ribavirin. (See Dkt. Entry # 1, ¶ 49.)

13

allegedly reached by January 1, 1999.

However, in February, 1999, Plaintiff claims that Dr. Mohadjerin informed him that he still could not receive Rebetron therapy because the "DOC had backed out of protocol negotiations with Wexford." (Dkt. Entry #1, ¶ 55.) Finally, some twenty-seven (27) months after the FDA issued its approval, Plaintiff began his Rebetron therapy on June 26, 2000. This therapy continued until Dr. Kimber replaced Mohadjerin as the prison's Medical Director. (Id. at ¶ 69-70.)

There are no allegations that the remaining Wexford Defendant, Dr. Mohadjerin, had personal involvement in any delays during the FDA's approval process or the protocol negotiations between the DOC and Wexford. All of the Plaintiff's other allegations concerning Mohadjerin are based on decisions made by that Defendant with respect to the course of Chimenti's treatment. At best, those claims represent disagreement between Plaintiff and Dr. Mohadjerin with respect to Chimenti's treatment. Since the record demonstrates that Chimenti has been provided with ongoing treatment during his confinement at SCI-Huntingdon, under the standards announced in Estelle and Farmer, the allegations asserted against Mohadjerin are insufficient for purposes of setting forth a viable claim of deliberate indifference.[7]

---

[7] Dr. Mohadjerin also asserts that the claims raised against him are limited by the applicable statute of limitations to those matters that occurred within two (2) years of the filing of the complaint in February of 2001. Plaintiff counters that the alleged deliberate indifference by

(continued...)

## C. The Claims Against the Commonwealth Defendants

The Commonwealth Defendants consist of three non-medical officials: Secretary Horn, Chief Hearing Examiner Bitner and Superintendent Frank, and two members of the SCI-Huntingdon medical staff, Nurses Yarger and Everhart. Collectively, they seek dismissal on the basis that there are no allegations that they were personally involved in any constitutional misconduct and Plaintiff's disagreements over the treatment he received are not actionable under § 1983.

Each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.

---

[7](...continued)

Mohadjerin was part of a continuing pattern of constitutional misconduct enabling him to recover for matters that occurred more than 2 years before this action was brought. In addition, included in Plaintiff's second grievance, No. 0037-99, are allegations which pre-date February 1, 1999. It is unclear whether the limitations period as to such matters should be tolled while administrative processes are being pursued. Dr. Mohadjerin's counsel has not addressed either the continuing wrong theory or the tolling question. Consequently, a proper determination as to the merits of his statute of limitations argument cannot be made at this time.

<u>Rode</u>, 845 F.2d at 1207.

On April 27, 1997, Nurse Everhart responded to a letter sent by the Plaintiff to Dr.

Mohadjerin.  (Complaint, Ex. "A".)   In her response, Everhart noted that there was no cure for

hepatitis and that Dr. Mohadjerin had concluded that "the side effects of providing interferon

outweigh the treatment itself." ( <u>Id.</u> ) During that same month, Chimenti filed his initial inmate

grievance.  The grievance, which requested that either Doctor Rieners or Dr. Aranenda replace

Dr. Mohadjerin, was initially denied by Nurse Yarger on May 1, 1997.  Subsequent

unsuccessful appeals to Superintendent Frank and Commissioner Horn followed.  <u>(See</u>

Complaint Exs. "D" and "E".)

As a result of the alleged breakdown in protocol negotiations between Wexford and the

DOC,  Plaintiff initiating a second grievance, No. 0037-99, asserting that he was being treated

unjustly because inmates at other correctional facilities were being provided with Rebetron

treatment. <u>See id.</u> at Exhibit I. Nurse Yarger provided an initial response to the grievance on

February 6, 1999, informing Chimenti that there was no DOC policy instructing DOC medical

vendors not to provide treatment for hepatis disorders and that the vendors had been directed

to provide appropriate and adequate care when necessary.  (<u>See id.</u> at Exhibit "J".)  Plaintiff

unsuccessfully appealed Nurse Yarger's decision to both Superintendent Frank and Chief

Hearing Examiner Bitner.  Plaintiff's complaint concludes that the Commonwealth Defendants

by failing to act on his internal complaints and administrative grievances, were directly involved in actions which purportedly allowed his hepatitis to go untreated for a period of twenty-seven (27) months beginning in June, 2000.

The Court of Appeals for the Third Circuit in <u>Durmer</u> established that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. None of the remaining Commonwealth Defendants is a physician. Furthermore, the record of this action clearly demonstrates that during all relevant periods Plaintiff was under the care of a physician. In February 1999, Doctor Mohadjerin told Chimenti that the protocol negotiations between the DOC and Wexford had broken down. There are no allegations which could support an inference that any of the remaining Commonwealth Defendants were involved in those protocol negotiations regarding the Rebetron therapy or that they deliberately delayed the implementation of the Rebetron treatment for non-medical reasons. The mere fact that the Commonwealth Defendants responded to Chimenti's grievances does not support an inference that they were deliberately indifferent to his medical needs. They were entitled to rely upon the advice of the health care professionals. There is no allegation that any of the Commonwealth Defendants improperly interfered with the health care professionals or adversely influenced the care and treatment Chimenti received. Consequently, under the standards announced in <u>Durmer</u>, there is no basis for an Eighth Amendment claim against any of the Commonwealth

17

Defendants.[8]

## CONCLUSION

Since Chimenti failed to pursue an administrative grievance against Drs. Kimber,

Kaufer, Baddick and Rowe, as well as Nurse Pollock, the claims against those Defendants

must be dismissed without prejudice pursuant to § 1997e(a).   Plaintiff's claims against Dr.

Mohadjerin and the Commonwealth Defendants fail to assert a viable claim of deliberate

indifference.  An appropriate Order will follow.


Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania


DATED: MARCH 15, 2002


---

[8] Moreover, there is no constitutional right to a grievance procedure.  See Jones v. North
Carolina Prisoners' Labor Union, Inc., 443 U.S. 119, 137-38 (1977)(Burger, C.J., concurring)("I
do not suggest that the [grievance] procedures are constitutionally mandated.").  Accordingly, to
the extent Plaintiff contends that the Commonwealth Defendants violated his constitutional
rights by not taking corrective action on his medical complaints, said allegations fail to state a
claim upon which relief may be granted.  See Johnson v. Harding, Civil No. 3:CV-99-977, slip
op. at p. 8 (Feb. 29, 2000)(Vanaskie, C.J.).

18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SALVATORE CHIMENTI,              :
                                 :
    Plaintiff,             :
                                 :
v.                               : CIVIL NO. 3:CV-01-0273
                                 :
ROGER KIMBER, ET AL.,            : (Chief Judge Vanaskie)
                                 :
    Defendants.            :

**FILED**
**SCRANTON**
MAR 1 5 2002

PER_____
    **DEPUTY CLERK**

## O R D E R

NOW, THIS 15th DAY OF MARCH, 2002, for the reasons set forth in the foregoing

Memorandum, IT IS HEREBY ORDERED THAT:

    1.    The Wexford Defendants' motion to dismiss (Dkt. Entry # 29) is

**GRANTED.** The claims against Baddick, Rowe, Kaufer and Pollock are dismissed without

prejudice for failure to exhaust administrative remedies. The claim asserted against Dr.

Mohadjerin is dismissed for failure to state a claim upon which relief may be granted.

    2.    Defendant Roger Kimber M.D.'s motion to dismiss (Dkt Entry # 30) is **GRANTED.**

The claims against Kimber are dismissed without prejudice for failure to exhaust administrative

remedies

    3.    The Commonwealth Defendants' motion to dismiss (Dkt. Entry # 32) is **GRANTED.**

The claims against the Commonwealth Defendants are dismissed for failure to state a claim

upon which relief may be granted.

4.    The Clerk of Court is directed to **CLOSE** the case.


Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

O:\PRO_SE\VAN_WIE\OPINIONS\CHIMENTI.MTDS1

16:07 MAR 25, 2002  TO: JOHN    TALABER    FR: SCAN31                #3535

**EXHIBIT**

I

87.
3/15/0
5

# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD THOMAS,          :
        Plaintiff,       :      CIVIL NO. 3:CV-00-1887
                :
      v.               :      (JUDGE CAPUTO)
                :
                :
ROBERT W. MEYERS, *et al.*,    :
        Defendants    :

FILED
SCRANTON

MAR 25 2002

PER _____
DEPUTY CLER

## MEMORANDUM

Plaintiff, Richard Thomas, an inmate presently confined in the State Correction

Institution, Waymart, Pennsylvania, ("SCI-Waymart") filed this civil rights action pursuant

to 42 U.S.C. § 1983. The plaintiff proceeds *pro se*. During the relevant time period of the

action, plaintiff was incarcerated at the State Correctional Institution at Rockview ("SC

Rockview"). Defendants in this action include the following Department of Correction

employees at SCI-Rockview (moving defendants): Robert Meyers, superintendent; Ter

Whitman and David Wakefield, deputy superintendents; and Larry Lidgett, former heal

care administrator.

The complaint was accompanied by an application to proceed *in forma pauperis*. T

Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (April 2

1996) imposed new obligations on prisoners who file suit in federal court and wish

proceed *in forma pauperis* under 28 U.S.C. § 1915, *e.g.*, the full filing fee ultimately must

paid (at least in a non-habeas suit).[1]

In his third amended complaint, plaintiff alleges defendants from 1989 to 19

failed to disclose he had hepatitis and failed to provide proper medical care. Thomas see

declaratory relief as well as nominal, compensatory, and punitive damages.

Currently pending before this Court are moving defendants' motion for judgme

on the pleadings. (Doc. 74). Also pending before this Court is plaintiff's motion for lea

to file an amended complaint to identify previously unnamed defendants and add a medi

malpractice claim, (Doc. 81), motion to amend medical report, (Doc. 83), motion

appointment of counsel, (Doc. 85), and second motion to amend attached medical repo

(Doc. 86).

Because plaintiff relies upon a theory of *respondeat superior* as to the movi

defendants, defendants' motion for judgment on the pleadings will be granted. Plainti

motion to file an amended complaint will be denied and plaintiff's claims as to t

remaining defendants will be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B

because plaintiff's action is barred by the statute of limitations, 28 U.S.C.

1915(e)(2)(B)(ii) for failing to state a claim upon which relief may be granted, and

U.S.C. § 1997(e)(a) for failing to exhaust administrative remedies. Plaintiff's motions

---

1.   The plaintiff completed this Court's form application to proceed *in forma pauperis*
and authorization to have funds deducted from his prison account. The Court then
issued an administrative order directing the superintendent at SCI Waymart to
commence deducting the full filing fee from plaintiff's prison trust fund account.

16:08 MAR 25, 2002  TO: JOHN J. ,ALABER    FR: SCAN31    #3535  PAGE: 4/19

amend his medical report will be granted. Plaintiff's motion for appointment of counsel wi be dismissed as moot.

## BACKGROUND

### A.    Relevant Procedural History

Plaintiff initiated this action with the filing of a complaint and an application f *in forma pauperis* status on October 25, 2000. (Docs. 1, 2). By court order dated Novemb 2, 2000, the Court granted Thomas *in forma pauperis* status and directed the United Stat Marshal to serve the complaint on defendants.[2] A waiver of reply was entered by couns for the moving defendants on December 5, 2000.

Pursuant to court order granting plaintiff's motion for leave to file an amend complaint, Thomas filed his first amended complaint on December 14, 2000. (Doc. 1: Defendant Wexford Health Sources, Inc. submitted a waiver of reply to plaintif amendment complaint on January 5, 2001. (Doc. 20).

On July 11, 2001, the Court granted moving defendants motion for more defin statement. (Doc. 41). In the same order, plaintiff's second amended complaint was deni and plaintiff was directed to file an amended complaint. Pursuant to court order, Thon filed his third amended complaint on August 2, 2001. (Doc. 45).[3]

---

2.    Regarding DOC employees, summons were *only* issued as to the moving defendan and numerous "John and Jane Doe" defendants. *See* Original Complaint (Doc. 1). Summons was also issued as to defendant Wexford Insurance Co.

3.    As part of his amended complaint, Thomas added the following defendants: Martin Horn, "former secretary of Pennsylvania;" Joseph Lehaman and David Owens. Jr., "state officials for Department of Corrections;" various John and Jane Does,

On December 7, 2001, moving defendants filed their answer to Thomas' third

amended complaint. (Doc. 72). On December 10, 2001, the moving defendants filed their

motion for judgment on the pleadings. (Doc. 74). The motion is fully briefed and ripe for

consideration.[4]

On January 29, 2002, plaintiff filed a motion for leave to file another amended

complaint. (Doc. 81). Plaintiff seeks to identify the various Jane and John Doe defendants.

The defendants consist of numerous medical doctors, a nurse, and a former superintendent

at SCI-Rockview. Plaintiff also seeks to add a medical malpractice claim. Because plaintiff's

original complaint is barred by the statute of limitations and the matter is not properly

before this Court, the motion will be denied since the identification of the Doe defendants

has no impact on the statute of limitation issue.

Plaintiff is also seeking to add additional medical documents to his record. (Doc.

83, 86). By letter dated February 14, 2002, moving defendants stated they did not oppose

---

employees of SCI-Rockview; Dr. John Symons and various unnamed employees of
Wexford Health Sources, Inc.; Dennis Roth, warden of Montgomery County
Correctional Facilities ("MCCF"); Julie Algaron, deputy warden of MCCF; various
unnamed employees at MCCF; Donald Vaughn, superintendent at state correctional
institution at Graterford ("SCI-Graterford"); and various unnamed employees at SCI-
Graterford. (Doc. 45, ¶¶ 4-8).

4.    On February 14, 2002, counsel for moving defendants waived their right to file a
reply brief via letter to the Court. (Doc. 84).

the first request by plaintiff.[5]  Because the medical reports are consistent with plaintiff's

allegations in his amended complaint, the motions will be granted.[6]

B.      Factual Background[7]

On or about February 23, 1989, Thomas was transferred from SCI-Graterford to

SCI-Rockview where he was housed for more than eleven (11) years.  Plaintiff alleges that

in April of 1989, unnamed doctors or nurses at SCI-Rockview Medical Department took a

blood sample and tested it for diseases.  Plaintiff asserts that the results of the blood test

revealed he had the hepatitis virus and his liver was deteriorating faster than normal.

Thomas contends the results were not made available to him, and, therefore, he could not

seek medical care to treat the disease.  Plaintiff states he did not receive any medical

treatment for his hepatitis virus until October 1999.

Thomas contends that in April 1989 there was no protocol or medical treatment

for inmates infected with hepatitis B or C and that it was not until January 2000 that SCI-

Rockview and the DOC had " [a] medical 'protocol' from (sic) inmates affected with the

Hepatitis C virus dispite (sic) an epidemic at that prison."  Plaintiff further contends that

---

5.   Plaintiff's second motion was filed after receipt of defendants' letter.

6.   The Court may consider these documents in resolving the motion to dismiss
without converting it into one for summary judgment since there is no dispute among
the parties as to their authenticity and plaintiff's complaint refers to the substance of
these documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d
1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly
authentic document that a defendant attaches as an exhibit to a motion to dismiss if the
plaintiff's claims are based on the document.").

7.   *See* Third Amended Complaint, ¶¶ 42-65.

defendants intentionally exhibited deliberate indifference by denying him medical treatment

for the hepatitis virus from 1989 to 1996. Thomas asserts that the intentional concealment

of his condition by unnamed prison officials at SCI-Rockview allowed the disease to grow

worse since, in his opinion, his medical needs were "objectively sufficiently serious."

Thomas alleges that on October 15, 1998, Dr. John Symons, a Wexford employee,

informed him that he had the hepatitis virus since 1989; specifically, Dr. Symons allegedly

informed Thomas that he had cirrhosis of the liver, caused by a lack of proper medical care.

Thomas contends he was introduced to Dr. Eggler, also a Wexford employee, who became

his treating physician.

Thomas concludes that moving defendants knew he carried the hepatitis virus and

intentionally refused to provide a minimum level of necessary medical care causing an

excessive risk to his health. Thomas argues that the moving defendants, as reasonable

persons, should have recognized the severity of his illness, yet intentionally concealed his

hepatitis conditions for a period of eleven years causing the diseases to grow worse.

## DISCUSSION

### A.    Standard of Review

Fed. R. Civ. P. 12(c) states, in part, that "[a]fter the pleadings are closed but within

such time as not to delay trial, any party may move for judgment on the pleadings." In

determining a motion for judgment on the pleadings, there must be no dispute of material

facts and the moving party must be entitled to judgment as a matter of law. When a

motion for judgment on the pleadings is based on failure to state a claim, the same

standards apply that pertain to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Phalo v. Ohio Civil Rights Commission*, 2001 WL 506525, *2 (S.D. Ohio April 17, 2001).

Moving defendants submit that based on the pleadings before this Court, there are no disputes of material facts and moving defendants are entitled to judgment as a matter of law. (Doc. 77, p. 7).

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the plaintiff's allegations. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *White v. Napoleon*, 897 F.2d 103, 106 (3d Cir. 1990). A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *ALA, Inc. v. CCAIR, Inc.* 29 F.3d 855, 859 (3d Cir. 1994). The reviewing court must consider only those facts alleged in the complaint and accept all of the allegations as true. *Id.*

In *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." "The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990); *Independent*

*Enters., Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1168 (3d Cir. 1997). This Court will now discuss defendants' motions in light of the standards set forth above and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B.**      *Respondeat Superior*

The moving defendants contend that plaintiff's allegations regarding them fails to state a claim upon which relief can be granted because Thomas is relying solely upon a theory of *respondeat superior.* (Doc. 77, p. 9). Moving defendants further assert that plaintiff's statements are conclusory allegations that are not supported by specific facts and Thomas fails to link the moving defendants to the central acts that he alleges in his complaint. (*Id.*). In his opposing brief, Thomas contends moving defendants were provided with sound medical findings and had an obligation to inform him of his chronic illness. (Doc. 82, p. 9).

It is well-settled that claims brought under §1983 cannot be premised on a theory of *respondeat superior. Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode,* 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acqui-

> escence.  Allegations of participation or
> actual knowledge and acquiescence, however,
> must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

Although a complaint is to be liberally construed in favor of the plaintiff (*Se...*

Fed.R.Civ.P. 8(f)), the Court does not have to accept every allegation it contains as tru...

*Pennsylvania House, Inc. v. Barrett*, 760 F.Supp. 439, 449 (M.D.Pa. 1991)(McClure, J....

Furthermore, conclusory allegations of law, unsupported conclusions and unwarrant...

inferences need not be accepted as true.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957...

*Flanagan v. Shively*, 783 F. Supp. 922, 927 (M.D. Pa. 1992).

An application of the above standards to Thomas' third amended complaint clearl...

shows that he has failed to set forth a cognizable claim against the moving defendants.  No...

only does plaintiff fail to comply with Fed. R. Civ. P. 8, he clearly is relying upon a theor...

of *respondeat superior*.  Plaintiff's complaint, with respect to those defendants, does not sta...

with appropriate particularity any personal knowledge or acquiescence on their par...

Plaintiff merely offers conclusory statements.  Accordingly, the moving defendants, Meyer...

Whitman, Wakefield, and Lidgett are entitled to an entry of dismissal and defendant...

motion for judgment on the pleadings will be granted.[8]

---

8.    Plaintiff also relies upon a theory of *respondeat superior* as to nonmoving defendants
Horn, Lehaman, Owens, Roth, Algaron, and Vaughn who were added to the instant cas...
in plaintiff's third amended complaint, but, based on the record before the Court, does...
not appear to have been served.  Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) those
defendants are summarily dismissed from the instant action because plaintiff fails to
state a claim for which relief is available.

C.    Statute of Limitations

Title 28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions

federal court and wish to proceed *in forma pauperis*. Section 1915(e)(2) provides:

> Notwithstanding any filing fee, or any portion thereof, that
> may have been paid, the court shall dismiss the case at any time
> if the court determines that (A) the allegation of poverty is
> untrue; or (B) the action or appeal (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune
> from such relief.

In reviewing the applicability of the statute of limitations to an action fi

pursuant to § 1983, a federal court must apply the appropriate state statute of limitatio

which governs personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276-80 (198

*Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996). The Uni

States Supreme Court clarified its decision in *Wilson* when it held that the residual

general applicable state personal injury statute of limitations should be applied in § 19

actions. *Owens v. Okure*, 488 U.S. 235, 245-49 (1989); *Little v. Lycoming County*, 912

Supp. 809, 814 (M.D. Pa.), aff'd mem., 101 F.3d 691 (3d Cir. 1996). Pennsylvania ha

personal injury statute of limitations of two years. *Fitzgerald v. Larson*, 769 F.2d 160,

(3d Cir. 1985); *Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir.), *cert. denied*, 474 U

950 (1985); *Little*, 912 F. Supp. at 814; *see* 42 Pa. C.S.A. § 5524 (Supp. 1997).

The question of when a cause of action accrues is a question of federal law. *S*

*v. Wambaugh*, 887 F. Supp. 752, 755 (M.D. Pa. 1995), *aff'd.*, 87 F.3d 108 (3d Cir. 19

"In general, a section 1983 claim accrues when the facts which support the claim ar

should be, apparent to a person with a reasonably prudent regard for his rights and when

the identity of the person or persons responsible for the alleged violation is known or

reasonably should have been known to the plaintiff." *Id.* ( citations omitted).

Thomas filed his complaint on October 25, 2000. Plaintiff states that on October

15, 1998, he was informed that he had hepatitis and that he had the infection since 1989.

(Doc. 45, ¶ 51).   As such, his claims are clearly time barred.

Although this is not jurisdictional, and the statute of limitations defense may be

voluntarily waived, it is certain that if this case was permitted to go forward in regards to

the remaining defendants, motions to dismiss would be filed and would have to be

granted.[10] It has been held that a district court may properly dismiss as frivolous an *in forma*

*pauperis* complaint when it is apparent on the face of the complaint that the statute of

limitations has expired. *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995); Myers v. Vogal. 960

F.2d 750, 750-51 (8th Cir. 1992); *Street v. Vose*, 936 F.2d 38, 39 (1st Cir. 1991) (per

---

9.   Plaintiff contends in his opposing brief that he filed his original complaint in May
2000. (Doc. 82, p. 13). However, in May 2000, plaintiff filed a writ of mandamus
which was construed to be a § 1983 action and transferred to the United States District
Court in the Eastern District of Pennsylvania. The only named respondent/defendant in
that matter was the Court of Common Pleas for Montgomery County. *See Thomas v.
Court of Common Pleas of Montgomery County*, Civil No. 3:CV-00-0893 (M.D. Pa. June 13,
2000)(Caputo, J.). Several documents were filed with plaintiff's original complaint and
all were date filed on October 25, 2000. (Docs. 1-3, 5-7). Plaintiff fails to provide an
explanation for the late filing but merely contends that he filed the complaint on May 9,
2000, which is not supported by the record before the Court.

10.   As is evident in the instant motion for judgment on the pleadings in which
moving defendants raised the statute of limitations as another ground for dismissal of
the third amended complaint.

curiam), *cert. denied*, 502 U.S. 1063 (1992); *Norris v. Vaughn*, Civ. No. 00- 1856, slip op. at 3-4 (M.D. Pa. Oct. 30, 2000) ( Rambo, J.); *Wicks v. Horn*, Civ. No. 98-0171, slip op. at 3-4 (M.D. Pa. Feb. 24, 1998) (Vanaskie, J.); *Clark v. Belfonti*, Civ. No. 96-1164, slip op. at 3-4 (M.D. Pa. July 2, 1996) (Rambo, C.J.). Accordingly, Thomas' third amended complaint will be dismissed as legally frivolous as to the remaining defendants, pursuant to 28 U.S.C. §1915(e)(2)(B)(i) because it is clearly time barred.

Although Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires," the district court retains the discretion to deny leave to amend "on the ground that an amendment would be futile." *Smith v. National Collegiate Athletic Ass'n*, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999). The running of a statutory limitations period can be grounds for a finding of futility. *See, e.g., Baker*, 50 F.3d at 1189-90. Thomas' § 1983 claims against the newly identified defendants in his proposed amended complaint are also precluded by Pennsylvania's two-year statute of limitations for personal injury actions. *See Bougher v. University of Pittsburgh*, 882 F.2d 74, 78-79 (3d Cir. 1989). The defendants in the proposed amended complaint are not new to the action, they are just now properly named. The actual names of the John and Jane Doe defendants does not create a "relating back" issue because the actual identification of the defendants does not change the fact that the original and amended complaints were time barred by the statute of limitations. Plaintiff's proposed medical malpractice claim is likewise time barred. As a result, Thomas' request for leave to amend his third amended complaint is denied.

D.    Exhaustion of Administrative Remedies

The Court further notes that even if the complaint was timely before me, Thomas

third amended complaint would be summarily dismissed for failure to exhaust his

administrative remedies.  Section 1997(e)(a) of Title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions
> under section 1979 of the Revised Statutes of the United
> States (42 U.S.C. § 1983), or any other Federal law, by a
> prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available
> are exhausted.

The Supreme Court has made clear that prisoners must exhaust administrative

remedies as to any claim that arises in the prison setting, regardless of any limitations on

the kind of relief that may be gained through a grievance process.  *See Porter v. Nussle*, 122

S.Ct. 983, 992 (2002)("we hold that the PLRA's exhaustion requirement applies to all

inmate suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong."); *Booth v. Churner*,

121 S.Ct. 1819, 1825 n. 6 (2001)("we hold ... that Congress has provided in § 1997e(a)

that an inmate must exhaust [administrative remedies] irrespective of the forms of relief

sought and offered through administrative avenues.).  Thus, prisoners are required to

exhaust available administrative remedies prior to seeking relief pursuant to § 1983 or any

other federal law.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance

Review System.  DC-ADM 804 (effective October 20, 1994).  With certain exceptions not

13

applicable here, DC-ADM 804 provides for an administrative review of institution

grievances. A grievance is a complaint submitted by an inmate related to a problem

encountered during the course of confinement. DC-ADM 804 provides that an inmate may

submit a written grievance to the prison's Grievance Coordinator. An appeal from the

decision of the Grievance Coordinator may be made in writing to the prison superintendent

and a final written appeal may be presented to the Chief Hearing Examiner for the

Department of Corrections.

Effective May 1, 1998, the Department of Corrections amended DC-ADM 804 to

provide that a prisoner, in seeking review through the grievance system, may include

requests for "any claims concerning violations of Department of Corrections directives,

regulations, court orders, or other laws." DC-ADM 804-4 issued April 29, 1998.  This was

the policy in place at the time plaintiff filed his grievance.[11]

Plaintiff contends he exhausted his administrative remedies based on Grievance No.

0440-99 which was filed on July 2, 1999. The grievance states:

> I have been incarcerated in the state system since August 23,
> 1988. Lasty (sic) year I was informed by the medical staff of
> this prison that I have been diagnosed with Hepatitis C, (sic)
> and B. My blood has been periodically tested, but no treatment
> has been provided.

---

11.    DC-ADM 804 has since been amended effective January 1, 2001. As of
January 1, 2001, all inmates under the jurisdiction of the Department who have been
personally affected by a Department or institution action or policy are permitted to file a
grievance, to file an appeal to the facility manager from the initial grievance review, and
to file a final appeal of the grievance decision to the Secretary's Office of Inmate
Grievances and Appeals.

(Doc. 45, Plt. exh. DC-804 Part I). The Grievance Coordinator stated his complaint had

been reviewed by the nurse supervisor and the DOC was attempting to finalize a policy for

the treatment of Hepatitis C. (Doc. 45, Plt. exh. DC-804 Part II). The response further

noted that "[a]s long as you are being periodically tested for the liver enzymes and they

have not risen dramatically, you may not need treatment at this time." (*Id.*). Thomas was

directed to speak with the doctors to see where he stood in reference to treatment. (*Id.*).

Thomas' grievance does not mention any of the defendants by name, does not seek

any relief including monetary, and fails to identify any specific acts or omissions performed

by a particular individual. The fact plaintiff pursued a generic grievance regarding his

diagnosis and treatment does not necessarily satisfy the exhaustion requirement. The Third

Circuit, in an unreported decision, has suggested that an inmate may not pursue a claim for

monetary relief when such a claim was not pursued administratively. *See Geisler v. Hoffman*,

Civil No. 99-1971, *slip op.* at 4 (3d Cir. Sept. 12, 2000). Two members of this Court,

relying upon *Geisler*, have held that an inmate plaintiff's failure to seek monetary damages

in prison grievance proceedings precluded the inmate from seeking such relief in a civil

rights action. *See Laird v. Pennsylvania Department of Corrections*, Civil No. 3:CV-00-1039, *slip*

*op.* at 3 (M.D. Pa. Sept. 26, 2001)(Nealon, J.).), *Chimenti v. Kimber, et al.*, Civil No. 3:CV-

01-0273, *slip op.* at 11 (M.D. Pa. March 15, 2002)(Vanaskie, C.J.).)

Thomas did not include a request for monetary damages in his grievance nor did

he seek declaratory relief. Thus, plaintiff's claims against defendants for monetary and

equitable relief would appear to be foreclosed as a consequence of his failure to seek such

15

relief through the DOC grievance process. Plaintiff's third amended complaint and

proposed amendments are subject to dismissal pursuant to § 1997(e)(a).

## CONCLUSION

Because plaintiff relies solely upon a theory of *respondeat superior*, defendant

Meyers, Whitman, Wakefield, and Lidgett's motion for judgment on the pleadings will be

granted. The third amended complaint will be summarily dismissed as to the remaining

defendants for failure to state a claim upon which relief may be granted, 28 U.S.C. §

1915(e)(2)(B)(ii); failure to exhaust administrative remedies, 42 U.S.C. § 1997(e)(a); and

as frivolous for being time barred, 28 U.S.C. § 1915(e)(2)(B)(i). Plaintiff's motion for leave

to file an amended complaint is denied as futile. Plaintiff's motions to add medical

documents are granted. Finally, plaintiff's motion for appointment of counsel will be

dismissed as moot. An appropriate order follows.



A. RICHARD CAPUTO
United States District Judge

Dated: MARCH 25, 2002

## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD THOMAS,             :
    Plaintiff,           :       CIVIL NO. 3:CV-00-1887
                      :
    v.                 :       (JUDGE CAPUTO)
                      :
ROBERT W. MEYERS, *et al.*,   :
    Defendants       :

FILED
SCRANTO
MAR 2 5 2
PER
DEPUTY C

### ORDER

NOW, THEREFORE, THIS 25th DAY OF MARCH, 2002, for the reasons s

forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1.    Defendants' motion for judgment on the pleadings as to defendan

    Meyers, Whitman, Wakefield, and Lidgett (Doc. 74) is granted.

2.    The third amended complaint (Doc. 45) is summarily dismissed as to th

    remaining defendants for failure to state a claim upon which relief may

    granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); as legally frivolo

    because time barred by the statute of limitations pursuant to 28 U.S.C.

    1915(e)(2)(B)(i); and failure to exhaust administrative remedies pursuan

    to 42 U.S.C. § 1997(e)(a).

3.    Plaintiff's motion for leave to file an amended complaint (Doc. 81)

    denied as futile.

4.    Plaintiff's motions to add medical documents (Docs. 83, 86) are grante

5.    Plaintiff's motion for appointment of counsel (Doc. 85) is dismissed as

moot.

6.    The Clerk of Court is directed to close the case.[12]

7.    Any appeal taken from this order will be deemed frivolous, without

probable cause, and not taken in good faith.

A. RICHARD CAPUTO
United States District Judge

---

12.   The dismissal of this action does not relieve plaintiff of the obligation to pay the
full filing fee. Until the filing fee is paid in full, the Administrative Order previously
issued is binding on the superintendent of SCI-Waymart, as well as the warden or
superintendent of any correctional facility to which Thomas is transferred.

EXHIBIT

J

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN KNIGHT,                          :
     Plaintiff             :
                               :
                               :
     v.                         :        No. 3:00cv1717
                               :
MARTIN HORN, Secretary                :
Pennsylvania Department of            :
Corrections; ROBERT MYERS,            :
Superintendent, State Correctional    :        (Judge Munley)
Institution at Rockview; JOHN         :
SYMONS, M.D., Contracted Medical.     :
Director at the State Correctional    :
Institution at Rockview; LARRY        :
LIDGETT, Health Care                  :
Administrator at the State            :
Correctional Institution at Rockview; :
WEXFORD HEALTH SOURCES, INC.,         :
Health Care Vendor at State           :
Correctional Institution at Rockview; :
JOHN DOE, Regional Director,          :
     Defendants            :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

FILED
SCRANTON

DEC 2 7 2001

PER _____

DEPUTY CLERK

## MEMORANDUM

Before the court for disposition is the October 22, 2001 report and recommendation

filed by Magistrate Malachy E. Mannion. The report and recommendation endorses the

granting of the motions to dismiss filed by the defendants. The plaintiff has filed objections

to the report and recommendation. The objections have been fully briefed and are ripe for

disposition.

Background

Plaintiff, an inmate at the State Correctional Institution at Rockview, (hereinafter

"SCI-Rockview"), Bellefonte, Pennsylvania has filed the instant civil rights case alleging as

follows:

Plaintiff has had a history of nasal problems.   In 1990, while incarcerated at the State

Correctional Institution at Graterford, (hereinafter "SCI-Graterford") he sustained a nasal

fracture, causing internal and external left deviation, that is a deviated septum.  In the early

1990s while incarcerated at the Bridgeport, Connecticut Community Correction Center, a

basketball struck plaintiff in the face and re-injured his nose.  As a result, plaintiff sustained

a nasal fracture with internal and external left deviation, similar to the injury sustained at

SCI-Graterford in 1990.

Plaintiff experienced chronic nasal problems while in the custody of the Connecticut

Department of Corrections between 1995 and 1999.  These problems resulted in pain, nasal

drip, nasal blockage, sinus headaches, sleep deprivation and moderate loss of taste and

smell.  During this time period, plaintiff received conservative treatment for the problem,

including medicated nasal sprays that ultimately resulted in residual injury to his nasal

cavity.  The Department of Corrections' medical staff repeatedly promised him that he

would have the condition surgically corrected with a procedure known as a septoplasty.  On

August 31, 1999, plaintiff was scheduled to have the septoplasty performed.  The surgeon

who was to perform the operation was unavailable, however, and a different doctor

performed an alternative stopgap measure until such time as the septoplasty could be

performed.

Plaintiff completed the sentence he was serving in Connecticut within a month of this

2

procedure before another procedure was performed. He was released to the Pennsylvania Department of Corrections. In Pennsylvania, he was initially held at the State Correctional Institute at Waymart (hereinafter "SCI-Waymart"). The prison doctors at SCI-Waymart determined that the plaintiff needed an ear, nose and throat specialist, and such a specialist subsequently examined him. The specialist recommended a complete septoplasty be performed to correct the deviated septum. He indicated that the septoplasty would be the only way to relieve the plaintiff's pain and other sinus problems.

Before any surgery could be approved or performed, plaintiff was transferred to SCI-Rockview where he once again sought treatment for his deviated septum. Defendant John Symons M.D., the prison's medical director examined the plaintiff. Symons told him that a septoplasty would alleviate his pain and other adverse sinus problems. In April 2000, Symons submitted a request to Defendant Wexford Health Sources, Inc. (hereinafter "Wexford") for plaintiff to be seen by an ear, nose and throat specialist for surgical consultation. (Wexford is the health care vendor under contract with the Department of Corrections and SCI-Rockview to provide medical care to SCI-Rockview's inmates.) Symons informed plaintiff on April 16, 2000 that Defendant Wexford had denied the surgical consultation, and he has refused to submit any new surgical consultation requests to Wexford.

Plaintiff filed a grievance seeking injunctive relief, more particularly requesting that the Department of Corrections intervene on his behalf and require Wexford to approve the

surgical consultation and subsequent surgery. The plaintiff's grievance did not seek

monetary damages. The plaintiff was not successful with his grievance, and he appealed it

to Defendant Myers, the Superintendent at SCI-Rockview. Myers denied the appeal after a

review by Defendant Lidgett, the healthcare administrator at SCI-Rocview and Defendant

Symons, SCI-Rockview's medical director. Plaintiff then sought final review of his

grievance from the chief hearing examiner. This appeal was also denied.

Based on the above facts, plaintiff filed a civil rights action under 42 U.S.C. § 1983[1]

in which he alleges a violation of his Eighth Amendment constitutional right to be free from

cruel and unusual punishment.[2] Plaintiff's claim is that the defendants were deliberately

indifferent to his serious medical needs because they denied him completion of a septoplasty

and continued to use conservative methods to treat his deviated septum during his

confinement at SCI-Rockford. He further asserts that the conservative treatment in the form

of medicated nasal sprays continues to cause him residual injury. He also contends that he

---

[1]Section 1983 provides as follows:
> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or District of
> Columbia, subjects, or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[2]Plaintiff's complaint also includes allegations regarding Hepatitis C. The plaintiff has
withdrawn all claims in his complaint relating to a lack of notification and/or medical care regarding
the Hepatitis C virus. Hence, we shall not address them. See Notice of Voluntary Dismissal, Doc. 7.

continues to suffer pain, nasal drip, nasal blockage, sinus headaches, sleep deprivation and

moderate loss of taste and smell. In his complaint, the plaintiff seeks both injunctive relief

and monetary damages.[3]

Two motions to dismiss have been filed pursuant to Fed.R.Civ.P. 12(b)(6). One

motion was filed by Defendants John Symons, M.D. and Wexford Health Sources,

(hereinafter "Wexford"). The other motion to dismiss was filed by Defendants Martin Horn,

Robert W. Myers, and Larry Lidgett, (hereinafter "Corrections Defendants."

**Standard of Review**

In disposing of objections to a magistrate's report and recommendation, the district

court must make a *de novo* determination of those portions of the report to which objections

are made. 28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d

Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate. The judge may also receive further evidence or

recommit the matter to the magistrate with instructions. Id. In the instant case, the

magistrate recommends granting the Rule 12(b)(6) motions to dismiss based upon a failure

to exhaust administrative remedies.

When 12(b)6 motions are filed, the sufficiency of a complaint's allegations are tested.

---

[3]More particularly, plaintiff requests a declaratory judgment that Defendants Horn, Myers,
Lidgett, Symons, Wexford and John Doe violated his constitutional rights; a permanent injunction
requiring the defendants to arrange to have a complete septoplasty performed; compensatory
damages; punitive damages; reasonable attorney fees and costs; and any other relief this Court may
deem appropriate. See Compl. pg. 11-12.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)6 motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).

## Discussion

The defendants claim that the plaintiff has failed to exhaust his administrative remedies and that therefore, the case should be dismissed. The law provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see e.g., Booth v. Churner, 532 U.S. 731 (2001). Accordingly, the Third Circuit Court of Appeals has concluded that "it is beyond the power of this court . . . to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir.2000). The Third Circuit, however, has noted that compliance with the administrative remedy scheme will be satisfactory if it is substantial. Id. at 77-78. Accordingly, our inquiry is whether the plaintiff substantially complied with the administrative remedy afforded in the instant case.

The Pennsylvania Department of Corrections provides an administrative grievance system that calls for an aggrieved inmate to first file a written charge. The grievance is

6

referred to a grievance officer for investigation and resolution. If the inmate is unsatisfied with the result, he can appeal to an intermediate reviewing authority and ultimately appeal to the central review committee. See The Pennsylvania Department of Corrections Consolidated Inmate Grievance Review System, DC-ADM 804; Booth v. Churner, 532 U.S. 731 (2001).

In the instant case, it is undisputed that the plaintiff proceeded through the grievance procedure with respect to his request for injunctive relief–that is to have a septoplasty performed. The plaintiff, however, also seeks monetary damages. The defendants claim that because plaintiff did not seek monetary damages in his grievance, his case must be dismissed for failure to exhaust available administrative remedies. Thus, the sole question before us is whether the plaintiff substantially complied with the administrative review process where he only sought an injunction in his grievance but now seeks an injunction and monetary damages in his federal civil rights action . For the reasons that follow, we find that plaintiff has substantially complied with the administrative review process.

In support of their position that the case should be dismissed for failure to exhaust, the defendants rely on the unreported/unprecedential Third Circuit Court of Appeals memorandum Geisler v. Hoffman, No. 99-1971, slip. op. (3d Cir. Sept. 29, 2000). In that case, a prisoner brought a section 1983 action. The factual background provided in the memorandum is scant; but apparently, the plaintiff in Geisler filed a grievance seeking to have some type of medical procedure performed. He never proceeded beyond the initial

7

grievance step within the formal appeals process outlined in DC-ADM 804. The plaintiff filed suit seeking monetary damages. The case was dismissed for failure to exhaust administrative remedies.

The Court stated: "And, we note, Geisler's grievances sought relief wholly different from the monetary remedy that he subsequently sought from the District Court. To this end, even if Geisler had brought his grievances before the two appellate tiers provided for by DC-ADM 804, exhaustion in that setting clearly would not have exhausted his current claim for monetary relief, a claim which he never even began to pursue administratively." Geisler, supra, at 5.

The memorandum in Geisler is marked "Unreported/Not Precedential." We must determine how much weight we to afford this memorandum. According to its Internal Operating Procedure 5.8, the Third Circuit Court of Appeals would not cite the Geisler case as authority because it is a non-precendential opinion. Nonetheless, the opinion could be persuasive authority for this court to follow. Unfortunately, however, the memorandum does not sufficiently recite the facts for us to be able to determine whether it is on point with the instant case. It is not clear from the Geisler memorandum, whether the plaintiff sought both injunctive relief and monetary damages in his civil rights complaint. Geisler may have then been a case where the plaintiff failed to exhaust either his monetary or injunctive claim and then sued merely on the monetary claim. In any event, Geisler was not a case, like the present one, where the plaintiff exhausted the injunctive claim, but never filed a grievance

8

regarding monetary damages.  Thus, we must look elsewhere for authority.

In Nyhuis, *supra*, the Third Circuit explained the policies underlying the exhaustion requirement as follows: 1) exhaustion helps to avoid premature interruption of the administrative process and provides the agency with the opportunity to discover and correct its own errors; 2) requiring exhaustion also conserves scarce judicial resources, because the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and 3) the exhaustion requirement improves the efficacy of the administrative process.  Nyhuis, 204 F.3d at 75.  We find that none of these policies would be furthered by dismissing the instant case.

The first policy - to avoid premature interruption of the administrative process and/or give the agency a chance to discover and correct its own errors - would not be furthered by dismissing this case.  The Third Circuit has explained that in seeking monetary damages through administrative process the prison might stop the practice about which the plaintiff complains.  Id. at 76.  That is not likely in the instant case.  The plaintiff has already proceeded through the administrative procedure and the prison has been provided ample opportunity to correct the practices of which he complains.  The prison has chose not to remedy the situation.

The second policy that exhaustion seeks to further is to conserve scarce judicial resources.  Judicial resources are conserved in requiring exhaustion of administrative remedies because some cases will settle out at that stage and never reach the federal courts.

9

In addition, the administrative process can contribute to the creation of a record for subsequent proceedings and help to focus a poorly pled or confusing claim. <u>Nyhuis</u>, 204 F.3d at 76.

In the instant case, judicial resources will be conserved by not dismissing the claim for monetary damages.  The plaintiff has exhausted his claim with respect to whether the prison should be ordered to perform the septoplasty on him.  As this claim is exhausted, we would not be able to dismiss that part of the case for failure to exhaust.  Only the portion seeking relief beyond an injunction, namely monetary damages, has not proceeded through the administrative process.  If we dismissed that portion of the claim and allowed the portion of the claim seeking injunctive relief to proceed, we would have the situation of the plaintiff possibly trying to prosecute two actions (one for monetary damages, after that claims was exhausted, in addition to the instant case which would then seek only injunctive relief).  For the court to deal with two cases, one now and one at a later date, would be a waste of scarce judicial resources.

The third policy that is furthered by requiring exhaustion is improving the efficacy of the administrative process.  The Third Circuit has explained this factor as follows: "[A] prison administrative grievance procedure will afford an inmate with a sense of respect.  If prison officials treat his claims with seriousness and care, they may well discover that he can be easily satisfied. . . . [A] letter of apology, transfer to a more favorable cell block, or disciplining the prison official who wronged the inmate may suffice. And if the inmate sees

his meritorious claims handled with care by his jailers, he is more likely to respect their rules

and serve his time in a manner that is productive as possible." Id. at 76-77. The plaintiff in

the instant case has already proceeded through the grievance procedure with his claim for

injunctive relief. There is no reason to believe that allowing him to proceed with his

monetary claim will allow the prison to discover that his claims can be "easily satisfied."

The opportunity for such relief has already been provided.

The above analysis leads us to the conclusion that requiring that the plaintiff proceed

through the administrative process with respect to his claim for monetary damages fails to

further any of the policies underlying the exhaustion requirement. Consequently, we find

that the plaintiff's compliance with the administrative remedy was substantial in this case

because he proceeded through the administrative process with the claim for injunctive relief.

No reason exists for this court to dismiss the case, in total or in part, in order for the plaintiff

to exhaust his remedies with respect to monetary damages which he now seeks in addition to

the injunctive relief. Our conclusion is especially apt as the requirement of exhaustion is

not a jurisdictional requirement such that failure to comply with the section deprives federal

courts subject matter jurisdiction. Nyhuis, 204 F. 3d at 69, n. 4. In other words, the

exhaustion requirement goes to the timing of the complaint, not whether the suit can be

brought at all.

Consequently, we will not adopt the magistrate's report and recommendation. We

will not, however, deny the defendants' motions to dismiss. Other grounds, besides

11

exhaustion were raised in these motions.  Because he found it to be dispositive, the magistrate only addressed the exhaustion issue.  We disagree, and will remand the motions to the magistrate to consider the other grounds raised by the defendants.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN KNIGHT,
       Plaintiff       :

                        :

   v.               :      No. 3:00cv1717

                        :

MARTIN HORN, Secretary    :
Pennsylvania Department of
Corrections; ROBERT MYERS,  :
Superintendent, State Correctional
Institution at Rockview; JOHN   :    (Judge Munley)
SYMONS, M.D., Contracted Medical
Director at the State          :
Correctional Institution at Rockview; LARRY
LIDGETT, Health Care       :
Administrator at the State
Correctional Institution at Rockview;  :
WEXFORD HEALTH SOURCES, INC.,
Health Care Vendor at State    :
Correctional Institution at Rockview;
JOHN DOE, Regional Director,   :
       Defendants         :

FILED
SCRANTON

DEC 2 7 2001

PER _____
DEPUTY CLERK

## ORDER

AND NOW, to wit, this __27^TH__ day of December 2001, the magistrate's report

and recommendation [36-1] is not adopted. The Clerk of Court is directed to remand this

case to the Magistrate Malachy E. Mannion for further proceedings consistent with the

attached memorandum.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court

13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES BUTLER,                          :
                                         :
          Plaintiff,                     :
                                         :        Civil Action No. 1:CV-01-1880
     v.                                  :
                                         :        (Judge Caldwell)
WILLIAM B. GREENE, CO1, et al.,  :
                                         :        (Magistrate Judge Mannion)
          Defendant                      :

### CERTIFICATE OF SERVICE

I hereby certify that I am this day depositing in the U.S. mail a true and correct copy of the foregoing Exhibits in Support of Defendants' Motion for Summary Judgment upon the person(s) and in the manner indicated below.

Service by first-class mail
addressed as follows:

Charles Butler, CQ-3210
SCI-Smithfield
P.O. Box 999
Huntingdon, PA  16652

Janelle C. Stapleton
Clerk Typist 2
Pennsylvania Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated:  May 6, 2002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHAN HUE,                          :
                                   :
   Plaintiff,               :       Civil No. 01-CV-1064
                                   :
   v.                       :       (Judge Kane)
                                   :
JAMES UPDIKE, et al.,              :       (Magistrate Judge Smyser)
                                   :
   Defendants.              :

### CERTIFICATE OF SERVICE

    I hereby certify that I am this day depositing in the U.S. mail a true and correct copy of Defendants' Exhibits in Support of Corrections Defendants' Summary Judgment Motion in the above-referenced matter.
<u>Service by first-class mail addressed as follows:</u>

Phan Hue, DY 0577                  Alan Gold, Esquire
SCI-Retreat                        Monaghan & Gold, P.C.
660 State Route 11                 7837 Old York Road
Hunlock Creek, Pa. 18621           Elkins Park, PA 19027

                     *Marilyn Jones*
                     Marilyn Jones
                     Clerk Typist 2

Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011
(717) 731-0444

Dated: June 6, 2002