JUDGE'S COPY  1-CU-01-1064    Copy 5

**DC-135A**

FILED
HARRISBURG, PA COMMONWEALTH OF PENNSYLVANIA

JUL 1 6 2002

**DEPARTMENT OF CORRECTIONS**

**INMATE'S REQUEST TO STAFF MEMBER**    INSTRUCTIONS

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk   Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.

| 1. TO: (NAME AND TITLE OF OFFICER) Joseph Mataloni  Health care administrator | 2. DATE 5-6-00 |
|---|---|
| 3. BY: (INSTITUTIONAL NAME AND NUMBER) PHan Hue  DY0577 | 4. COUNSELOR'S NAME Ms Simmons |
| 5. WORK ASSIGNMENT Kitchen | 6. QUARTERS ASSIGNMENT A-Block  AA10 |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

I am not aware if I have Been taken off of medical Restriction due to my still present shoulder condition I have been put Back to work in the Kitchen and at Block janitorial Labor. I am having terrible pain in shoulder and slight numbess in lower part of right arm. I was last referred to a outside physician By the DOC medical doctor because Injury was to technical to treat in house. The outside doctor said I would or need to see a Bone specialists for proper treatment and or diagnosis. This has not Been done, and I feel that I am being denied proper medical services. Please respond soon as can

Thank You

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Mr Hue,
Sign-up for sick-call + Ask the PA About work restrictions He will Address your concerns.

☐ TO DC-14 CAR ONLY        ☐ TO DC-14 CAR AND DC-15 IRS

| STAFF MEMBER       J. MATALONI, CHCA | DATE 5/10/00 |

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1. To: (Name and Title of Officer) ~~Education~~<br>~~MR. Warnagiri's department.~~ | 2. Date:<br>3 - 11 - 2 |
| 3. By: (Print Inmate Name and Number)<br>Phan Hue DY0577<br><br>_____<br>Inmate Signature | 4. Counselor's Name<br>Miller |
| | 5. Unit Manager's Name<br>Hazlak |
| 6. Work Assignment<br>Laundry | 7. Housing Assignment<br>HA   19 |

8. Subject: State your request completely but briefly. Give details.

I was wondering if you still has my test scores of my tabe test. I think it was back in September of 1999. I wan to know my scores for Reading and writing in English.

I was in MRS. Grauls class for a period of time.
Would you please write in my past scores or any proof of my Education.

9. Response: (This Section for Staff Response Only)

Mr. Hue,

I'm unable to find a hard copy of any TABE You have taken here at SCI Retreat. My computer based Education Report shows you took a TABE on 12/18/00. I suspect it was administered by Mrs. Graul. Possibly you could write to her for assistance.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ _____ Date 03/13/02
Print                    Sign

Revised July 2000

**DC-141      PART II B**
Rev. 6-84
DISCIPLINARY HEARING REPORT

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part |
|---|---|---|---|---|---|
| DY0577 | Phan | SCI RT | 01 May 00 | 1300 hrs | |

| INMATE PLEA | ☐ Guilty  ☐ Not Guilty | ☐ No Plea  ☐ Other | Verdict | ☐ Guilty  ☐ Not Guilty | |

**HEARING ACTION**

CHARGES   Class I Category B #39, Refusing to Work

FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED                    01 May 00

This is an informal resolution

Return to work in Kitchen

and

3 days of Cleaning Showers, Ø pay

effective May 3, 2000 through May 5, 2000

| | | |
|---|---|---|
| ☐ YES  ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | |
| ☐ YES  ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | **SEE APPENDICES** ☐ |
| ☐ YES  ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | |
| ☐ YES  ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | |

| NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED) | Hearing Report and all appended information must be signed. Signature indicates finished report with appendices. |
|---|---|
| | _[signature]_ |
| | SIGNATURE OF HEARING EXAMINER/COORDINATOR |

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1. To: (Name and Title of Officer)<br>Jos. Lengyel / Griev. Coor. | 2. Date:<br>2-15-02 |
|---|---|
| 3. By: (Print Inmate Name and Number)<br>Hue Phan, DV-0577<br>_Hue Phan_<br>Inmate Signature | 4. Counselor's Name<br>miller |
| | 5. Unit Manager's Name<br>Horlak |
| 6. Work Assignment  Laundry | 7. Housing Assignment  AA-19 |

8. Subject: State your request completely but briefly. Give details.

Sir, I need a photocopy of the Grievance & subsequent review of same. I'll deter the costs.

9. Response: (This Section for Staff Response Only)

You should take your copy to the library to have it done.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ / _____    Date 2-20-02
                      Print                 Sign

Revised July 2000

*19*

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)  Lengyel
   Grievance Accordinater

2. Date: 3-11-2

3. By: (Print Inmate Name and Number)
   Phan Hue DY0577

   _____
   Inmate Signature

4. Counselor's Name
   Miller

5. Unit Manager's Name
   Hazlak

6. Work Assignment
   Laundry,

7. Housing Assignment
   AA   19

8. Subject: State your request completely but briefly. Give details.

I had filed a grievance back in 2000, April 12, 2000. And I want a copy of the resolution results. I was never given a copy in the past as too date. Here is my grievance Number Ret. 0112-00. It is for my person record. I was a Kitchen worker then. I will pay the cost of the photo copy or copies.

*Thank you*

9. Response: (This Section for Staff Response Only)

Mr. Hue,

Copy of grievance is attached

RECEIVED

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☒ |
|---|---|

SCI-GREENE
SUPERINTENDENT'S
OFFICE

Staff Member: E. Klen        E. Kl        Date 3/12/02
                    Print                    Sign

Revised July 2000

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

1. **To:** (Name and Title of Officer)   *Jos. Lengvel / Griev. Coor.*

2. **Date:** *2-15-02*

3. **By:** (Print Inmate Name and Number)   *Hue Phan, DY-0577*

    *Hue Phan*
           Inmate Signature

4. **Counselor's Name**   *miller*

5. **Unit Manager's Name**   *Horlok*

6. **Work Assignment**   *Laundry*

7. **Housing Assignment**   *AA-19*

8. **Subject:** State your request completely but briefly. Give details.

*Sir, I need a photocopy of the Grievance & subsequent review of same. I'll defer the costs.*

**9. Response** (This Section for Staff Response Only)

*You should take your copy to the library to have it done.*

To DC-14 CAR only ☐     To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____ / _____ Date *2-20-02*
               Print                   Sign

Revised July 2000

**DC-141**    **PART II B**
Rev. 6-84
DISCIPLINARY HEARING REPORT

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part |
|-----------|------|-------------|--------------|--------------|---------------|
| DY0577 | Phan | SCI RT | 01 May 00 | 1300 hrs | |

| INMATE PLEA | ☐ Guilty   ☐ No Plea   ☐ Not Guilty   ☐ Other | Verdict | ☐ Guilty ☐ Not Guilty |
|---|---|---|---|

**HEARING ACTION**

CHARGES    Class I Category B #39, Refusing to Work

FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED     01 May 00

This is an informal resolution

Return to work in kitchen

and

3 days of Cleaning Showers, no pay

effective May 3, 2000 through May 5, 2000

| | | |
|---|---|---|
| ☐ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. |
| ☐ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. |
| ☐ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. |
| ☐ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. |

SEE APPENDICES ☐

NAME(S) OF HEARING EXAMINER/COMMITTEE
(TYPED OR PRINTED)

Hearing Report and all appended information must be signed. Signature indicates finished report with appendices.

SIGNATURE OF HEARING EXAMINER/COORDINATOR

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

| 1. To: (Name and Title of Officer) | 2. Date: |
|---|---|
| *Grievance Coordinater* | *4-8-2* |

| 3. By: (Print Inmate Name and Number) | 4. Counselor's Name |
|---|---|
| *Phan Hue DY0577* | *Miller* |

| | 5. Unit Manager's Name |
|---|---|
| Inmate Signature | *Hazlak* |

| 6. Work Assignment | 7. Housing Assignment |
|---|---|
| | *A-Unit* |

8. Subject: State your request completely but briefly. Give details.

*This request is regarding a copy of the determination of my grievance No. 0185-00. And A copy of the actual grievance when it was fixed Langyel refused me this type of materials when he was here.*

*Klem gave me copies of my other grievance.*

9. Response: (This Section for Staff Response Only)

Mr. Phan Hue:

Per DOC Policy, the following charges will be imposed for reproduction of records maintained on paper - a fee of $1.00 for the first page and $.25 per page thereafter.

So, if you submit 3 signed Cash Slips for $1.25 to the Grievance Coordinator, your Grievance #RET 0185-00 will be copied and sent to you.

c: Ms. O'Day
    Mrs. Sheetz
    Mr. Hazlak
    File

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☑ |
|---|---|

Staff Member Name ___*E. Klem*___ / ___*E. Kl___*___ Date *4/11/0*
            Print                        Sign

Revised July 2000

*0185-00*

**DC-141** **PART II B**
Rev. 6-84
DISCIPLINARY HEARING REPORT

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Pa... |
|---|---|---|---|---|---|
| DY0577 | Phan, Huy | SCIP | 17 Dec 01 | 1120 hrs | 4/6/9... |

| INMATE PLEA | ☑ Guilty ☐ Not Guilty | ☐ No Plea ☐ Other | Verdict | ☑ Guilty ☐ Not Guilty | ☑ Informal Resolution |

CHARGES  II, C, #52 any violation of a rule or regulation in the inmate handbook not specified as a class 1 misconduct charge. Specifically DC-ADM 803 II procedure A.3, b

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

Informal resolution hearing held.
Inmate counselled about this conduct.
Sanction: Loss of Privileges 7 Days

No yard, No dayroom, No gym

May shower upon return to the unit from work.

Start: 17 Dec 01          End: 23 Dec 01

| | | |
|---|---|---|
| ☐ YES ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | |
| ☐ YES ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | |
| ☐ YES ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | **SEE APPENDICES** ☐ |
| ☐ YES ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | |

NAME(S) OF HEARING EXAMINER/COMMITTEE
(TYPED OR PRINTED)

D. HAZLA/L

Hearing Report and all appended information must be signed. Signature indicates finished report with appendices.

SIGNATURE OF HEARING EXAMINER/COORDINATOR

WHITE—DC-15          YELLOW—Inmate Cited          PINK—Staff Member Reporting Misconduct          GOLDENROD—Deputy Superintendent

FORM **DC-141** **PART 1**
Rev 3/00

## COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS

416198

☐ MISCONDUCT REPORT    ☐ OTHER    ☒ DC-ADM 801  INFORMAL RESOLUTION

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DY0577 | Phan | SCI-RT | N/A | | 12-12-01 |
| Quarters | Place of Incident | | | | |
| AA1090 | N/A | | | | |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | |
|---|---|---|---|---|---|---|---|
| | Horn | ✓ | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** C Class II #52 Any violation of a rule or regulation in the Inmate Handbook not specified as a Class I misconduct charge. SPECIFICALLY DC-ADM 803 VI Procedures A. 3 b

**STAFF MEMBER'S VERSION**

Inmate Phan Admitted to entering into a business type transaction with inmate Horn, CX3545, and Horn's mother. Phan granted Power of Attorney to the Horns and all agreed to split proceeds from a property owned by Phan.
Inmates are prohibited from transferring or receiving monies or things with value to other inmates or their families without prior approval of the Facility Manager. An attempt to do so is the same as the act.
Delay in writing misconduct due to discovery and investigation.

Informal resolution Hearing held 17 Dec 01
D. Hn/M

**IMMEDIATE ACTION TAKEN AND REASON** Continue present status and refer to Unit Manager ~~the confined~~ for informal resolution

### PRE-HEARING CONFINEMENT

| | IF YES | |
|---|---|---|
| | TIME | DATE |
| ☐ YES | | |
| ☒ NO | | |

**FORMS GIVEN TO INMATE**
☐ REQUEST FOR WITNESSES AND REPRESENTATION    ☐ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED, AND APPROVED BY RANKING C.O. ON DUTY  SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| M. K. Adams CO IV | M. K. Adams, CO IV | DATE / TIME 24 HOUR BASE |

**YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER**
DATE _____ TIME _____

**MISCONDUCT CATEGORY**
☒ CLASS 1    ☐ CLASS 2

Signature of Person Serving Notice

### NOTICE TO INMATE
You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15        YELLOW — Inmate        PINK — Reporting Staff Member        GOLDENROD — Deputy Superintendent Facility Management

*DC-ADM 801 Inmate Discipline Policy, Attachment B*

**DC-141**
Rev. 6-84
**PART II B**

DISCIPLINARY HEARING REPORT

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part |
|---|---|---|---|---|---|
| DY0577 | PHAN | SCIRT | 12-14-01 | 1821 | 409803 |

| INMATE PLEA | ☐ Guilty ☐ Not Guilty | ☐ No Plea / ☐ Other | Verdict | ☐ Guilty ☐ Not Guilty |
|---|---|---|---|---|

**HEARING ACTION**

CHARGES **#52**

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

Charge dismissed without Prejudel,
Hearing was done informally.

| | | |
|---|---|---|
| ☑ YES ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | |
| ☑ YES ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | SEE APPENDICES |
| ☑ YES ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | ☐ |
| ☑ YES ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | |

| NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED) | Hearing Report and all appended information must be signed. Signature indicates finished report with appendices. |
|---|---|
| DONAld J. JONES | _Donald J. Jones_ SIGNATURE OF HEARING EXAMINER/COORDINATOR |

WHITE—DC-15        YELLOW—Inmate Cited        PINK—Staff Member Reporting Misconduct        GOLDENROD—Deputy Superintendent

FORM **DC-141**    **PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
Rev 3/00
**DEPARTMENT OF CORRECTIONS**

409803

☑ MISCONDUCT REPORT    ☐ OTHER    ☐ DC-ADM 801  INFORMAL RESOLUTION

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|-----------|------|-------------|---------------------------|---------------|----------------|
| BY-0577 | PHAN | SCI-RT | 15 30 | 12-11-01 | 12-11-01 |

| Quarters | Place of Incident |
|----------|-------------------|
| A | |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC  Number | Name | I | W | DC Number | Name | I |
|-----------|------|---|---|-----------|------|---|
| | CAPT. HOOVER | | ✓ | | | |
| | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION**  // DC-ADM 803 VI A 3 B #11 #52
ANY VIOLATION OF A RULE OR REGULATION IN THE INMATE HAND BOOK
NOT SPECIFIED A CLASS I MISCONDUCT.

**STAFF MEMBER'S VERSION**  BY-0577 PHAN IS IN VIOLATION OF DC-ADM 803
VI A 3 B IN WHICH IIM PHAN GRANTED POWER OF ATTORNEY
TO THE MOTHER OF CX-3545 THORN FOR THE PURPOSE OF
SHARING IN PROFIT FROM A BUILDING IIM PHAN OWNED IN
PHILA.
INMATES ARE NOT ALLOWED TO ENGAGE IN ANY BUSINESS
WITH OTHER INMATES OR THEIR FAMILYS

**IMMEDIATE ACTION TAKEN AND REASON**   Refer to Hearing Examiner because
severity of misconduct

| PRE-HEARING CONFINEMENT | | |
|---|---|---|
| | **IF YES** | |
| | TIME | DATE |
| ☐ YES | | |
| ☐ NO | | |

FORMS GIVEN TO INMATE
☑ REQUEST FOR WITNESSES AND REPRESENTATION    ☑ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY    SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| | | DATE | TIME 24 HOUR BASE |
| Lt Buff | Capt Mill c.o. IV | 12-11-01 | 1900 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | MISCONDUCT CATEGORY | Signature of Person Serving Notice |
|---|---|---|---|
| DATE | TIME | | |
| 12-13-01 | 0900 | ☑ CLASS 1  ☐ CLASS 2 | ZABRETSKI C.O |

**NOTICE TO INMATE**
You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible.  You may remain silent if you wish.  Anything you
say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution.  If you choose to remain silent, the
hearing committee/examiner may use your silence as evidence against you.  If you indicate that you wish to remain silent, you will be asked no further questions.  If you
are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15      YELLOW — Inmate      PINK — Reporting Staff Member      GOLDENROD — Deputy Superintendent Facility Management

*DC-ADM 801 Inmate Discipline Policy, Attachment B*

DC-804
PART II

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

GRIEVANCE NO. **RET 0112-00**

| TO: (Name & DC NO.) | INSTITUTION | QUARTERS | GRIEVANCE DATE |
|---|---|---|---|
| HUE PHAN, DY-0577 | SCI-RETREAT | A-UNIT | 4/12/00 |

The following is a summary of my findings regarding your grievance:

This Grievance was referred to Mr. Mataloni, designated Grievance Officer for this type of Grievance.

Mr. Mataloni reports, "What medication is given and for how long is the decision of the M.D. or P.A. This is a medical decision made by the Practitioners."

If you are having problem with your medication, you should sign up for Sick Call again.

JLL/mts

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR | DATE |
|---|---|---|
| | *J Lyył* | 4-14-2000 |

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO.   RET0112-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION SCI Retreat | DATE 4-_-_ |
|---|---|---|
| FROM: (Commitment Name & Number) HUE Phan DY 0577 | INMATE'S SIGNATURE | |
| WORK ASSIGNMENT (Previous) Kitchen worker | QUARTERS ASSIGNMENT A-A-10 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

I Filing this grievance towards CHTT About head of the medical Department Because I had an accident in the kitchen were I used to work For 18 2000 in the Date. I injuring shoulder and my teeth went Contr..... I felt My shoulder was Luked at S.A Division at an outside hospital, he said it was not Luke but I want to see a Bone Specilist I was given pain medication then I one dates off of after a month. I'm still having teeth pain in my shoulder. I have gone to sick Call a numerous Amount of times and the assistant physican tell me I'm okay and I don't need A Sling or medication no more. I injure Healh..... my shoulder I explained all of the complations I am having And They will not help. Something is wrong, so I wanted to see a Bone Specilist I have want a Bone Reteran till they Do see that...

B. Actions taken and staff you have contacted before submitting this grievance:

Have went to Sick Call, Seen the Assistant Physican, he never left me see a Doctor

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Grievance Coordinator

4-13-00
Date



**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**                    GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Joseph Lenayel | SCI Retreat | 1/23/01 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| William Locke EA-1991 | William Locke | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | CB-53 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

2 — In which I'd suffered from a gun shot wound in 1996. And after several days of medical attention. P.A James stated that I had recieved a slight concussion. Point in fact, while I was laying on the floor waiting for the medical staff too transport me to the infirmary. Sgt. Seevon nearly took a major fall himself in the same area but he managed to regain his balance. By quickly grasping onto a nearby metal pole Due to the fact, that i have to go to the cafeteria to get my meals Again I try to go up to the cafeteria as least as possible becau since my return to population every single time, that i've struggled to go up there, the same area is still continuously dripping liquids onto the floor as if my incident never happened + no one is in charge of monitoring the hazardous area. I would like to sincerely suggest that s...

B. Actions taken and staff you have contacted before submitting this grievance:

Investigate the above matter with diligence as soon as possible to avoid any further injuries to the inmates or staff. I also look forward to a immediate Response ... Respectfully Thanking you in Advance
William Locke EA-19

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Grievance Coordinator

1-25-01
Date

DC-804
PART 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

mot ✓

**OFFICIAL INMATE GRIEVANCE**          GRIEVANCE NO. RET0112-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION SCI Retreat | DATE 4-12-2000 |
|---|---|---|
| FROM: (Commitment Name & Number) HUE Phan DY0577 | INSTITUTION | INMATE'S SIGNATURE |
| WORK ASSIGNMENT (Previous) Kitchen worker | QUARTERS ASSIGNMENT A-A-10 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

I'm Filing this grievance twoards MATT ALoni head of the medical Department, Because I had An accident in the kitchen where I used to work Feb.28, 2000 was the Date. I hurt my shoulder And my teeth were Broke when I fell. My shoulder was looked At by A Doctor At An outside hospital, he said it was not broke but I need to see A Bone Specialist I was gaven pain medication, then I was taken off it After A month I'm still having terrible pain in my shoulder, I have went to sick Call A numerous Amount of times and the assistant physican tells me I'm okay And I don't need A sling or medication no more. I can not bardly move my shoulder I explained All of the complications I am having And They will not listen Something is wrong, or I wouldn't have to see A Bone specialist. I Just want A Pain Reliever till they Do something.

B. Actions taken and staff you have contacted before submitting this grievance:

HAve went to Sick Call, Seen the Assistant Physician, he never lets me see a Doctor.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator                4-13-00
                                                    Date

WHITE—Grievance Coordinator Copy      CANARY—File Copy      PINK—Action Return Copy      GOLDENROD—Inmate Copy

James Farnsworth
660 State Route 11
Hunlock Creek, PA   18621

Dated: _June, 20th, 2002_

To whom it may concern,

On February 28, 2000, I, James Farnsworth, saw Mr. Phan Hue in an arm sling after a fall in the kitchen at the State Correctional Institution - Retreat.  After not working in the kitchen for awhile because of the injury he suffered. Around the middle of May of 2000, Mr. Dale T. Hazlak, Unit Manager of A-block, served him with a disciplinary misconduct report form (DC-141) for not working with his injured shoulder.  Mr. Hazlak sentenced him to work on the block of A-unit.  I saw Mr. Hue mopping the floor and cleaning the showers with one arm and the other arm in a sling.  He had his shoulder looked at by the doctors here at this institution, but I think that there is still something wrong with his shoulder.  Because when I put my hand on his shoulder and told him to move it around, I could feel it popping and grinding.  Also, there are no physical scars near or around his shoulder from any operation that was to have been done on his shoulder.

Sincerely yours,

James Farnsworth
(without prejudice)

SWORN AND SUBSCRIBED BEFORE ME THIS
20 DAY OF June 2002

NOTARIAL SEAL
JOAN O. EVAN, NOTARY PUBLIC
NEWPORT TWP, LUZERNE COUNTY
MY COMMISSION EXPIRES JULY 5, 2004

William D. Vogel
EB-0546
660 State Route 11
Hunlock Creek, PA    18621


Dated:  6·24·02


Affidavit


To Whom It May Concern,

    First I start by saying that I  William D. Vogel do
solemly swear, that according to my knowledge (what I know
personally) that every thing that I am writing herein, is
the truth - the honest truth so help me God.   Now I came
into the jail of S.C.I. Retreat on January 11, 2002 and not
to long after that I moved into the cell with Mr. Phan Hue
(inmate D.O.C. #DY-0577).   Further more upon my moving in
with Mr. Phan Hue and living with him I can verify that he
seemed to be physically in good health. But that was soon
to change on the coming of February 28, 2000.   Now on the
date of February 28, 2000, Mr. Phan Hue had a serious job
related  -  accident  while he was up in the kitchen, at
approximately 1:00 pm C.O. Donahue, was coming around for
count time and I started to tell him that Mr. Phan Hue never
came back from work, and that I didn't know where he was at.
That is when he (the C.O.) began to tell me that Phan had an
accident at work and that he was in the hospital.  I was
further  instructed  to   pack  up  Mr.  Phan's  personal
belongings.

    Mr. Phan was kept in the hospital for only a day or so
and then was released back to the block.  I further remember
that when he returned back to the cell from the hospital
that he seemed like that he was in a great deal of pain, his
shoulder had been placed in a sling and as I can recall his

gums were bleeding and I remember asking him.  Mr. Phan -
what happened to all of your teeth?  Because I had noticed
that his gums were bleeding and that "all" of his teeth were
missing.  Mr. Phan - answer to my question was, that his
teeth came out when he slipped and fell at work.  Further
more as I remember he was only given the sling for his arm
for about 2½ weeks and he was given pain medication every
day for about 1 month.  Also I can remember him being called
down to medical for more x - rays one afternoon and on his
return  back  to  the  cell  he  was  telling  me  how  the
institutional (jail) doctor was telling him that from the
looks of the x - rays that it looked like that he fractured
his right rotaitor cup to his shoulder and how that they
wanted to send him to a specialist on the outside of this
jail.  Approximately 4 to 6 weeks after Mr. Phan's accident
happened, he was called up to talk to Mr. Hazlak (A Block
unit manager), and when he refused to go back to work and
told Mr. Hazlak that he was in pain and really didn't want
to go to work just yet.  Phan told me that Mr. Hazlak told
him that he was giving him only 2 options either go back to
work or that he was going to write him up for refusing to go
back to work.  Mr. Phan refused to go back to work because
he was still in pain.  But regardless of that aMr. Hazlak
wrote him up and Phan was given something like 3 days on
cell restriction and was forced to clean the block, showers
and  sweep  the  block's  day  room  floor  and  I  saw  this
personally.  If you were to touch Mr. Phan's right shoulder
and he was to move his arm in any manner you would feel
something that feels like that there is something that is in
his shoulder that is cracking.  In closing like I stated in
the beginning - that everything that I have wrote herein is
the truth - the whole truth so help me God.

Sincerely William D. Vogel 81746

William D. Vogel,  EB-0546

Raymond Noon
EB-8955
660 State Route 11
Hunlock Creek, PA    18621

DATED:  6 22 02

## AFFIDAVIT

To Whom It May Concern,

I, "Raymond Noon", am giving this statement as to the best of my knowledge and as to what I saw of Phan Hue working in the kitchen at S.C.I. Retreat.

I was employed by this institution, by inmate employment service, Mr. Giza, to work in the kitchen.

On a number of days in the second week of May, 2000. I noticed this oriental person working with one hand and the other one tucked in his smock. I approached him and asked him why his arm was like that. He stated, "the pain".

I knew that he was out of work for a few weeks due to a fall in the kitchen area that happened back in February, 2000. This man was known to me as Mr. Hue, by the stewards. I have seen him around the kitchen, but only for a few weeks in severe pain, working with one hand. Mopping, sweeping, or wiping tables. I told him to go and see the doctor and he stated that "they will not help me, that they say nothing is wrong with me.

I know that the floor in the kitchen is very slippery, due to the ceramic tiles that they had installed. That infact I have slipped on these tiles and almost fallen.

This is the best of my recollection of what happened at that time period.

Respectfully submitted,

Ray a Noon Sr.

E# B-89-5-5

XC: Mr. U. Haclak Htblo
medical
File- F.S.Supvs

**DC-135A**

**INMATE'S REQUEST TO STAFF MEMBER**

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

1. TO: (NAME AND TITLE OF OFFICER) Mr Edward OBrian Food Service Manager

2. DATE 5-6-00

3. BY: (INSTITUTIONAL NAME AND NUMBER) PHAN Hue DY0577

4. COUNSELOR'S NAME Ms Simmons

5. WORK ASSIGNMENT Kitchen

6. QUARTERS ASSIGNMENT A-Block AA-10

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

Since I have been back to work, I am still suffering from severe pain in my right shoulder and arm, since my fall in the kitchen my last time at work. I am being forced to work heavy labor when staff reconizes my poor or hampered use of my right shoulder and arm. Mr OBrion would you please schedule me for light duty work only till my medical problems have been cleared by necessary physician. At the beginning of my injury I was by the DOC medical dept referred to a outside attending physician which that physician said that I need to see a Bone specialist for my shoulder problem. To this date and time I have not been seen by any such doctor. Till this issue is addressed and resolved would you please respond to Back to me on the issues that concern you and the kitchen dept.

Thank you

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

I CONTACTED MR. HAZLAK WHO IN TURN WILL CONTACT MEDICAL FOR AN EVALUATION OF MEDICAL STATUS. AT THIS POINT - 05/08/00 YOU. ARE PENDING A DECISION FROM MEDICAL STILL ASSIGNED TO THE KITCHEN.

Ed O'Brien CFSM

☐ TO DC-14 CAR ONLY

☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER

DATE

**FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DY-0577
_____
(Inmate Number)

Phan Hue
_____
(Name of Plaintiff)

660 State Route 11
_____
(Address of Plaintiff)

Hunlock Creek, Pa. 18621
_____

vs.

James Updike; Joseph
Matoloni; Edward O'
Brion; Dale Horlak
_____
(Names of Defendants) In their Individual & official
Capacities.

:
:  (Case Number)
:
:
:
:  COMPLAINT
:
:
:
:
:
:
:

TO BE FILED UNDER: ___✓___ 42 U.S.C. § 1983 - STATE OFFICIALS

_____ 28 U.S.C. § 1331 - FEDERAL OFFICIALS

I.    Previous Lawsuits

    A.    If you have filed any other lawsuits in federal court while a prisoner please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

                    N. A.
_____

_____

_____

_____

II.    Exhaustion of Administrative Remedies

    A.    Is there a grievance procedure available at your institution?
        __✓_Yes ____No

    B.    Have you filed a grievance concerning the facts relating to this complaint?
        __✓_Yes ____No

        If your answer is no, explain why not _____ N. A. _____

        _____

    C.    Is the grievance process completed? __✓_Yes ____No

III.    Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use Item B for the names, positions and places of employment of any additional defendants.)

A.    Defendant ___James updike_____ is employed

as __Physician's Asst.__ at __S.C.I. Retreat__ ;

B.    Additional defendants __Joseph mataloni is the Chief

Health Care Administrator at S.C.I.

Retreat; Edward o'Brian is the Culinary

manager at S.C.I. Retreat; Dale

[Cont.]

IV.    Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

1.    On Feb. 28th, 2000, while working in the
kitchen area, I had an accident
which Seriously injured my shoulder
& knocked out teeth;

2.    I was taken to the outside Hospital,
where the Emergency room Physician
infirmed me that I would need to
See a bone Specialist & prescribed
medication;

3.    Subsequent to my return to the
institution, defendant updike dis-
continued my medication; Confisca-
ted my shoulder restraint & refused
[Cont.]

V.   Relief

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

1.   repair of my medical maladies resultant from the work accident, expungement of the misconduct from my record simply for fighting for my Constitutional Rights;

2.   monetary Compensation [awarded by a jury] Commensurate with the Physical & Psychological pain/duress suffered to date;

3.   Punitive damages in the amount of $10,100.10 from each defendant So that they do not put another individual through the Same trauma.

Signed this ___12___ day of ___June___, 2001.

_____
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

___6-12-2001___                    _____
(Date)                             (Signature of Plaintiff)

IV. (3) statement of claim Cont. :

        with their forcing me
to work because they feared I was
going to sue over the conditions of
the work place hence the subsequent
injury.

        defendant O'Brian would not
recognize my injury thus my inability
to work & used all his official
pressure to see (1) that my injury
was not recognized, (2) that I be
made to work.

        defendant Horlak retaliated
against me by seeing that I was
punished for refusal to work based
upon my contentions of the 8th
Cruel & unusual punishment viola-
tions & my attempts to get the
prescribed medical attention.

2(a)

III : B : Additional defendants Cont. :

Hazlak is unit manager at
S.C.I. Retreat.

IV . (3) statement of claim Cont. :

to schedule me to see the
bone specialist;
defendant matoloni was ap-
prised of my inability to use my
arm or move my shoulder & he ac-
quiesced to the continuation of
denying me the prescribed medication,
the continued denial of my shoulder/
Arm restraint - harness; the contin-
ued refusal to honor the outside
doctor's referral to a bone specialist
& when defendant O'Brian & defen-
dant Hazlak were adament about not
letting me off of work, concurred

2 (A)

DC-804
Part 1

1-01-cv-1064

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

| FOR OFFICIAL USE ONLY |
| --- |
| |
| GRIEVANCE NUMBER |

**OFFICAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
| --- | --- | --- |
| Deputy Piazza | S.C.I. Retreat | 2/8/01 |

FILED
HARRISBURG, PA

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: |
| --- | --- |
| William Locke EA-1991 | William Locke |

JUL 16 2002

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
| --- | --- |
| | CB 53 |

MARY E. D'ANDREA, CLERK
Per Deputy Clerk

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B the specific actions you have taken to resolve this matter informally. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages. On the following date of Tuesday January 16, 2001 I William Locke, entered the cafeteria around 5:40pm in the evening for dinner as I was in line waiting to recieve my tray after i'd retrieved it I proceeded to the right in an attempt to grab a cup of water the unfortunate thing about it is that, the floor was extra slippery they (the kitchen workers) had mopped the area with a vegetable oil mop. There was not any type of rubber mat that would act as a support barrier between the constant spilling of liquids that linger in front of the beverage counter, nor was there a caution wet warning sign located in the entire eating area. As a result my feet went sky high into the air I landed on my back and simultaneously hit my head against the floor reinjuring my lower back in which i'd suffered from a gun shot wound in 1996. And after several days of medical attention P.A. James stated that I

B. List actions taken and staff you have contacted, before submitting this grievance. Attach the copy of the DC-135A with the staff member's response of your informal resolution attempt.

Con't

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____          _____
Signature of Facility Grievance Coordinator                                    Date

**WHITE** - Facility Grievance Coordinator Copy    **CANARY** - File Copy    **PINK** - Action Return Copy    **GOLDENROD** - Inmate Copy
Revised

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

ε.0

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO.  RET 0058-01

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Joseph Lenguel | SCI-RETREAT | 1/23/01 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| William Locke EA-1991 | William Locke | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | C.B 53 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

On the following date of Tuesday, January 16, 2001, I William Locke, entered the cafeteria around 5:40pm in the evening for dinner. As I was in line waiting to receive my tray, after I'd retrieved it, I proceeded to the right in an attempt to grab a cup of water, the unfortunate thing about it is that, the floor was extra slippery, like they (the kitchen workers) had mopped the area with a vegetable oil mop. There was not any type of rubber mat that would act as a support barrier between the constant spilling of liquids that linger in front of the beverage counter, nor was there a caution wet warning sign located in the entire eating area. As a result my feet went sky high into the air, I landed on my back and simultaneously hit my head against the floor re-injuring my lower left lumbar ... ———>CONT.

B. Actions taken and staff you have contacted before submitting this grievance:

In the Commonwealth of Pennsylvania D.O.C. Inmate Handbook Policy #14.1.1 Food Services (Adm Dir 610) Under Procedures+Inspecti A daily house keeping and sanitation inspection shall be performed and document once per shift by a food service staff member as designated by the C.F.S.M.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator

1-25-01
Date

DC-804
PART II

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

GRIEVANCE NO.    RET 0058-01

| TO: (Name & DC NO.) | INSTITUTION | QUARTERS | GRIEVANCE DATE |
|---|---|---|---|
| William Locke EA-1991 | SCI-Retreat | CB-53 | 1/23/01 |

The following is a summary of my findings regarding your grievance:

Inmate Locke EA-1991 it's unfortunate that you fell – As I discussed with you on 1/26/01, I am looking into a product that will enhance the safety of the area.   Sincerely.

EJO/mm

xc:  Supt. Klem
     Joseph Lengyel
     Deputy Piazza
     File

     Marsha M. Davis, Esq.
     Marilyn Semanski

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR   *Edward J. O'Brien* | DATE   4/26/01 |

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

| FOR OFFICIAL USE ONLY |
| --- |
| |
| GRIEVANCE NUMBER |

**OFFICAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
| --- | --- | --- |
| Deputy Piazza | SCI Retreat | 8/8/01 |
| FROM: (INMATE NAME & NUMBER) | SIGNATURE OF INMATE: | |
| William Locke, EA-1991 | William Locke | |
| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: | |
| | CB-63 | |

**INSTRUCTIONS:**
1  Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2.  State your grievance in Block A in a brief and understandable manner.
3.  List in Block B the specific actions you have taken to resolve this matter informally.  Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance.  Additional paper may be used, maximum two pages. Recieved a slight concussion. Point in fact, while I was laying on the floor waiting for the medical staff to transport me to the infirmary Sgt. Serbin nearly took a major fall himself in the same area but he'd managed to regain his balance by quickly grasping onto a nearby metal pole. I still try to go up to the cafeteria at least as possible although the P.A. recommended that i should take advantage of the work by going to all three daily meals But everytime that i have went to these since my return to population the same area is still continuously dripping liquids onto the floor as if my incident never happened. There was no one incharge of monitoring the hazardous area. And frankly i have become intimidated by that area because when i have to walk past it my incident re-plays and i get a flashback. This is my second grievance in reference to this matter

**B.** List actions taken and staff you have contacted, before submitting this grievance.  Attach the copy of the **DC-135A** with the staff member's response of your informal resolution attempt.

food service manager Edward O'Brien responded to my first grievance by calling me up to the cafeteria + discussed with me About how he's well aware that the flooring up there is not the best type of flooring for that type of environment And how he is trying to invest into a product that will enhance the safety of the hazardous area. But it has to be Approved by the administration first. Im eagerly seeking to find out if any steps have been taking in the direction of getting that product around that floor that will stop... Respectfully the their in advance. William Locke EA-19...

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                    _____
Signature of Facility Grievance Coordinator                Date

**WHITE** - Facility Grievance Coordinator Copy    **CANARY** - File Copy    **PINK** - Action Return Copy    **GOLDENROD** - Inmate Copy

**DC-804**
**PART II**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

EXHIBIT

J

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

GRIEVANCE NO.

| TO: (Name & DC NO.)<br>William Locke  EA-1991 | INSTITUTION<br>SCI-Retreat | QUARTERS<br>CB-53 | GRIEVANCE DATE<br>February 8, 2001 |
|---|---|---|---|

The following is a summary of my findings regarding your grievance:

As we discussed - I am working with Maintenance and Administrative Staff to secure a floor treatment product that will enhance the safety in the Food Service area.   Sincerely.


EJO/mm

xc:   Deputy Piazza
      File
      Marsha M. Davis, Esq.
      Marilyn Semanski

| Refer to DC-ADM 804, Section VIII,<br>for instructions on grievance<br>system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR<br><br>*Edward J. O'Brien* | DATE<br><br>2-15-0 |
|---|---|---|

XC: Mr. D. Hazlak A Block
medical
File- Fs.Supvs

**DC-135A**

**INMATE'S REQUEST TO STAFF MEMBER**

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| 1. TO: (NAME AND TITLE OF OFFICER) Mr Edward OBrian Food Service Manager | 2. DATE 5-6-00 |
| --- | --- |

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) PHAN Hue DY0577 | 4. COUNSELOR'S NAME Ms Simmons |
| --- | --- |

| 5. WORK ASSIGNMENT Kitchen | 6. QUARTERS ASSIGNMENT A-Block  AA-10 |
| --- | --- |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

Since I have been back to work, I am still suffering from severe pain in my right shoulder and arm, since my fall in the kitchen my last time at work. I am being forced to work heavy labor when staff reconizes my poor or hampered use of my right shoulder and arm. Mr OBrian would you please schedule me for light duty work only till my medical problems have been cleared by necessary physician. At the beginning of my injury I was by the DOC medical dept referred to a outside attending physician which that physician said that I need to see a Bone specialist for my shoulder problem. To this date and time I have not been seen by any such doctor. Till this issue is addressed and resolved would you please respond back to me on the issues that

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE) concern you and the kitchen dept.

Thank You

*[signature]*

I CONTACTED MR. HAZLAK WHO IN TURN WILL CONTACT MEDICAL FOR AN EVALUATION OF MEDICAL STATUS. AT THIS POINT - 05/08/00 YOU. ARE PENDING A DECISION FROM MEDICAL STILL ASSIGNED TO THE KITCHEN.

Ed O'Brien CFSI

| ☐ TO DC-14 CAR ONLY | ☐ TO DC-14 CAR AND DC-15 IRS |
| --- | --- |

| STAFF MEMBER | DATE |
| --- | --- |

EXHIBIT

tabbies®

I

A -                                   **CASE ENTRY**

**To:** UNIT TEAM                              PHAN   DY 0577

<u>Inmates Name and Number</u>

I wish to report the following  ON 5/25/00 INMATE
PHAN DY 0577 WAS EVALUATED BY MEDICAL
REGARDING STATUS FOR KITCHEN EMPLOYMENT.
ALSO MR GIZA EMPLOYMENT CO-ORDINATER
WAS INVOLVED WITH RESEARCHING RELATED DATA.
IT IS DETERMINED that INMATE PHAN DY 0577
IS NOT FIT TO WORK IN THE KITCHEN DUE TO
AN INJURY— INMATE PHAN SHOULD BE RE-
EVALUATED BY MEDICAL IN 8 WEEKS — JULY 28-
FOR REINSTATEMENT INTO THE KITCHEN —
INMATE PHAN WILL BE PAID TILL THEN
INMATE PHAN DY 0577 WAS DIRECTED TO SIGN UP
FOR SICK CALL FOR 5/26/00 AND MED LAYIN W/PAY
WILL BE ISSUED—

**Date:** 5-25-00                    Edward J. O'Brien CFSA 2

<u>Signature, Title and Assignment</u>

CC MEDICAL - MR. MATALON.
FOOD SERVICE SUPVS (3)
MR. GIZA
DEPUTY PIAZZA



RECEIVED
MAY 3 0 2000
S.C.I. RETREAT
A UNIT

Ability to prepare and maintain files, re cord, and reports
relating to menus, recipes, orders, requi sitions, inventory, food
service personnel, and inmate help.

Ability to inspect equipment and identify  the need for repair and
maintenance.

Ability to direct and evaluate specialize d meat cutting and
baking operations.

Ability to communicate effectively both o rally and in writing.

MINIMUM EXPERIENCE AND TRAINING:  One yea r of experience as a
Corrections Food Service Supervisor;

> or

Four years of experience in food preparat ion, production, and
service of a variety of complete meal men us in an institutional
food service operation, food catering ser vice, restaurant, or in
a similar large -scale food production operation, includin g one
year of supervisory experience;

> or

Any equivalent combination of experience  and training.

service.

Knowledge of the procedures involved in p reparing a food service
budget and maintaining cost controls and  expenditure records.

Knowledge of the principles and practices  in preparing
nutritional foods.

Knowledge of food service safety and sani tation standards.

Knowledge of the proper care and use of s tandard kitchen, food
serving, and sanitation equipment.

Ability to plan, organize, and direct the  work of food service
personnel and inmate help in a food servi ce operation which
includes a large -scale food preparation and food serving a rea.

Ability to establish work procedures for  the overall operation of
a food service operation.

Ability to plan, direct, and evaluate the  food preparation, food
service, and sanitation functions.

Ability to learn to plan, organize, and d irect the work of food
service personnel and inmate help in a ce ntralized correctional
institution food service operation which  includes a large -scale
food preparation and food serving area.

Ability to learn to enforce established i nstitutional security
and custody regulations.

Ability to determine proper unit staffing .

Ability to modify menu within given food  service objectives, food
and budget a allowances, and standards of  nutrition, cost, and
quality.

Ability to learn to interpret physicians'  prescriptions and to
learn to modify selective menus in accord ance with the
Pennsylvania diet Manual.

Ability to direct the ordering, receiving , recording, storing,
and distributing of food, supplies, and e quipment.

Ability to plan, direct, coordinate, and  evaluate training
programs to provide orientation and on -the-job training to the
food service staff in methods, materials,  practices, and
procedures used in all aspects of the ope ration.

Ability to conduct employee counseling to  develop rapport with
all personnel, resolve personnel problems , discuss career
opportunities, and provide competent supe rvision.

Ability to determine undesirable working  conditions, administer
collective bargaining agreements, evaluat e and reconcile employee
complaints, and render decisions or recom mendation on forma
grievances.

Ability to learn to establish and maintai n effective
relationships with institutional personne l and inmate help.

allocate staff appropriately to meet depa rtmental objectives.

Modifies selective menus in accordance wi th institutional and departmental objectives, doctor's prescri ptions, and standards of nutrition, cost, and quality; and utilize s a special diet recipe manual for the preparation of therapeutic  diet meals when ordered by physician.

Insures that proper control over inmates  is maintained at all times by enforcing security and custody r egulations, resolving infractions which occur in the department , and taking appropriate action on violations reported.

Monitors working conditions, administers  collective bargaining agreements, evaluates and reconciles empl oyee complaints, and renders decisions or recommendations on f ormal grievances.

Plans, directs, and evaluates food prepar ation, food service, and sanitation, which normally includes bakin g and meat cutting; and purchases perishable food items such as v egetables, meats, and fruits.

Directs the ordering, receiving, recordin g, storing, and distributing of food, supplies, and equip ment.

Establishes, schedules, and implements tr aining programs to provide orientation and on -the-job training to the food service staff in methods, materials, practices, a nd procedures used in all aspects of the food service operation ; provides inmates with the skills and abilities to obtain and re tain useful  employment in the community upon release; and conduc ts employee counseling to develop rapport with all personnel, di scuss career opportunities, and provide competent supe rvision.

Prepares new recipes and revises and modi fies existing recipes to meet nutritional needs.

Inspects equipment to identify any need f or repairs and supervises the preparation of work order  requests for equipment repair and maintenance.

Inspects all work areas to insure complia nce with established departmental sanitation and safety standa rds.

Conducts departmental staff meetings and  attends administrative meetings to discuss departmental and inst itutional programs and goals, work conditions, and personnel and  labor relations problems.

Attends workshops, conferences, and train ing sessions to learn new or improved methods and techniques in  food service management.

Performs related work as required.

REQUIRED KNOWLEDGES, SKILLS, AND ABILITIE S:  Knowledge of the modern principles, practices, and techniq ues of food service management, administration, and supervisi on.

Knowledge of the methods, materials, and  equipment used in food

EXHIBIT

H

| Class Code | Pay Range | Pay Schedule | Bargaining Unit | Civil Service or Non-Civil Service | Executive Board Change | Last Change Effective |
|---|---|---|---|---|---|---|
| 81530 | 03 | I | N3 | N | 279-95 | 7/1/1995 |

Click on Class Code for current expanded information, on Pay Schedule for current Pay Schedule, on Civil Service or Non-Civil Service to obtain the Evaluation Guide (if available), on Executive Board Change to obtain the Executive Board amendment listed and on Last Change Effective to obtain history.

11/24/1993                                             81530

CORRECTIONS FOOD SERVICE MANAGER 1

DEFINITION: This is food service work as  a manager in charge of the food service operation at a State Cor rectional Institution or Facility which serves on a daily basis be tween 1-4000 meals to inmates and staff or as an assistant to a  Corrections Food Service Manager 2 in charge of the food   service operations at larger  State Correctional Institutions o r Facilities.

An employee in this class plans, organize s, and directs a complete food service operation which inc ludes a large-scale food preparation and food serving area or, ass ists a higher level manger in a food service operation.  As a  manager, employees have administrative responsibility for the foo d service department which involves the functions of menu modi fication, purchasing perishable food items, personnel, finance , nutrition, food preparation, food service, and sanitation .  Work is normally characterized by having the specialized f unctions of baking and meat cutting.  Work also involves the dir ection over food service supervisors, food service instructors, an d inmate help; development and implementation of cross t raining programs to food service employees in the specialized area s of the operation; and review of on-the-job vocational training provided to the i nmate help.  The employee is responsible for co ntinued maintenance of satisfactory working conditions, conforma nce with established sanitation and safety standards, and enfo rcement of security and custody regulations in the operation.  Wo rk is performed with initiative and independent judgement and  reviewed by the Deputy Superintendent and food service coordinat or through conferences, reports, and evaluation of overall effect iveness.

EXAMPLES OF WORK: Plans, organizes, and d irects a Correctional Institution or Facility food service oper ation which includes a large-scale food preparation and food serving a rea of assists a higher level manager at a larger State Co rrectional Institution or Facility.

Established work procedures for the overa ll operations of the food service department.

Reviews and maintains personnel, budgetar y, and other departmental records and reports.

Determines staffing needs for the food se rvice operation; interviews and recommends applicants for  employment; determines priorities; schedules and assigns work an d leave time; and reviews performance of subordinate staff.

Reviews and maintains overlapping shift s chedules in order to

| DC-14 | | |
|---|---|---|
| **CUMULATIVE ADJUSTMENT RECORD** <u>**SCI-Retreat**</u> Institution | | **COMMONWEALTH OF PENNSYLVANIA** **Department of Corrections** <u>**A UNIT**</u> |

| Institutional Number DY-0577 | PBPP NUMBER | NAME: Phan, Hue |
|---|---|---|

| Date | OBSERVATION |
|---|---|
| 3-1-00 | Post infirmary interview - Mr. Phan was in the infirmary overnight due to back problems. Says he is in quite a bit of pain. Claims they took X-rays; he is waiting for the results. Polite.    J Simmons CCII |
| 2/29/00 | HA 1022 → AA 1101.    E Hagan, Unit Clerk |

Approve and schedule leave and work schedules for Unit Counselors and Unit Clerks.

Approve cell changes within the Unit.

Ensure all team members maintain regular interaction with inmate population.

Ensure all team members participate in the decision-making process.

7.  Briefly describe how work is assigned to this position and how the work is reviewed.

Work is assigned and reviewed by the Deputy Superintendent for Facilities Management through the use of assigned Performance Objectives and
Factors by utilizing both individual conferences and regularly scheduled Unit Management meetings.

8.  If this is a supervisory position, how work is assigned to subordinate personnel and how their work is reviewed.   (If this is not a supervisory
position, leave blank.)

Work is assigned that is consistent with employee's Job Description and established Performance Objectives and Factors.  Work is reviewed on
a daily basis utilizing conferences/briefings/staffings and Unit Team meetings.

RECEIVED

JUL 1 6 1998

SCI-RETREAT
PERSONNEL DEPT.

9.  Attach an Organizational Chart identifying all reporting relationships for this position.

10. Attach a statement identifying the essential functions of the positions.

CERTIFICATION

I certify that to the best of my knowledge all statements contained within the job description are correct:  This job description
consists of ____ pages.  (count this form as 1 page)

| | | | | | |
|---|---|---|---|---|---|
| Employe's Signature | _Sur T ye_ | Class Title | _Unit manager_ | Date | _7-5-98_ |
| Immediate Supervisor's Signature | _Thomas Lower_ | Class Title | _DSFM_ | Date | _17 July, 199_ |
| Reviewing Officer's Signature | _B. Chan_ | Class Title | _Supt_ | Date | _17 July 98_ |

EXHIBIT

F

COMMONWEALTH OF PENNSYLVANIA
STD-370        REV. 10-96

# JOB DESCRIPTION

| 1. Name of Employe (Last, First, MI) | 2. Employe Number | |
|---|---|---|
| HAZLAK, DALE T. | 097608 | 171137 |

| 3. Department | Bureau | Division | Headquarters | Organization Code |
|---|---|---|---|---|
| CORRECTIONS | | FACILITIES MGMT. | SCI-RETREAT | 6500 |

| 4. Class Title | Working Title | Class Code |
|---|---|---|
| CORRECTIONS UNIT MANAGER | UNIT MANAGER | 47470 |

**5. Regular Work Schedule**

| Start Time: | 0800 | Lunch Length: | .50 |
|---|---|---|---|
| End Time: | 1630 | Hours/Week: | 40 |

Position is:

[X] Full-Time    [ ] Permanent
[ ] Part-Time    [ ] Temporary

| Reports to: | Name | Class Title |
|---|---|---|
| | Thomas Lavan | Deputy Superintendent for Facilities Management |

**Days Worked (check all that apply):**

| S | M | T | W | Th | F | S |
|---|---|---|---|---|---|---|
| | ✓ | ✓ | ✓ | ✓ | ✓ | |

Explain any schedule variations:

---

6. Describe the work assigned to this position, listing the critical duties and responsibilities first. Explain work in familiar terms and include machines or equipment used. Use additional paper if necessary.

Provide supervision and technical assistance in Case Management to a Multi-Disciplinary Team that includes Counselors, Corrections Officers, and Clerical staff.

Develop and update annually a Unit Plan that incorporates clearly defined standards and objectives and team building strategies.

Establish daily work assignments and case loads of Unit Team members.

Conduct performance appraisals of staff assigned to the Unit.

Identify staff training needs and develop appropriate staff development programs for assigned staff. This includes Emergency Preparedness.

Approve orders of supplies and equipment for Unit. Provide input into Fixed Asset purchases and Budget development.

Conduct Unit Team meetings on a regular basis to ensure an effective exchange of information.

Monitor and ensure Unit security by operating the Unit in a manner consistent with the institution's overall security plan.

Maintain Unit sanitation and safety standards and complete weekly Unit Fire/Safety/Sanitation Reports.

Ensure Unit is in compliance with Department of Corrections Administrative Directives and institution policy.

Schedule and chair weekly Unit staffings.

Provide appropriate documentation for Unit case files and ensure Unit files are completed and organized.

Assist in developing Unit programs and evaluate their effectiveness.

Provide leadership in resolving day-to-day inmate problems through a variety of means including counseling and referral services.

Record and report required data for the Monthly SCAN Report.

# HOUSING PERFORMANCE REPORT

EXHIBIT

G

| INMATE NAME Phan, Hue | | DC NUMBER |
|---|---|---|
| HOUSING ASSIGNMENT Unit | | DATE 6-4-01 |
| REASON FOR REVIEW    ANNUAL PACT | | |
| COUNSELOR SA Miller, CCo | | |

PLEASE RATE THE INMATE ON EACH OF THE FOLLOWING BEHAVIORS BY CHECKING THE APPROPRIATE RATING.

| FACTOR | MOST OF TIME (above avg.) | | USUALLY (average) | | Sometimes (below avg.) | | SELDOM (poor) | |
|---|---|---|---|---|---|---|---|---|
| | AM | PM | AM | PM | AM | PM | AM | PM |
| Relates well with, and is courteous to, other inmates | | | ✓ | ✓ | | | | |
| Cooperative and courteous to staff | | | ✓ | ✓ | | | | |
| Prompt for all line movements | | | ✓ | ✓ | | | | |
| Obeys written and verbal orders | | | ✓ | ✓ | | | | |
| Proceeds directly to and from cell/bunk without loitering | | | ✓ | ✓ | | | | |
| Refrains from loud behavior in housing unit | | | ✓ | ✓ | | | | |
| Gets up on time | | | ✓ | ✓ | | | | |
| Maintains good personal hygiene and clean living area, and properly maintains all State-issued property | ✓ | | | ✓ | | | | |
| Follows inmate dress code | | | ✓ | ✓ | | | | |

Comparative Rating (check one)  Compared to other inmates within the same housing unit, this inmate behaves:
(✓) Better
( ) The Same
( ) Worse

Leisure Time: (check all descriptions that fit this inmate's use of leisure time.)
(✓) Spends time alone in cell        ( ) Socializes with others
( ) Engages in disruptive            ( ) Participates in officially sanctioned
    activities                            activities (e.g.: team sports)
( ) Other

# (ALL MUST SIGN ON REVERSE SIDE)

HOUSING PERFORMANCE REPORT

| INMATE NAME | Rhan Hue | DC NUMBER | DY-0577 |
|---|---|---|---|
| HOUSING ASSIGNMENT | A-Unit | DATE | 6-5-00 |
| REASON FOR REVIEW | ANNUAL PACT | | |
| COUNSELOR | Stacy Miller | | |

PLEASE RATE THE INMATE ON EACH OF THE FOLLOWING BEHAVIORS BY CHECKING THE APPROPRIATE RATING.

| FACTOR | MOST OF TIME (above avg.) | | USUALLY (average) | | Sometimes (below avg.) | | SELDOM (poor) | |
|---|---|---|---|---|---|---|---|---|
| | AM | PM | AM | PM | AM | PM | AM | PM |
| Relates well with, and is courteous to, other inmates | | | ✓ | ✓ | | | | |
| Cooperative and courteous to staff | | | ✓ | ✓ | | | | |
| Prompt for all line movements | | | ✓ | ✓ | | | | |
| Obeys written and verbal orders | | | ✓ | ✓ | | | | |
| Proceeds directly to and from cell/bunk without loitering | | | ✓ | ✓ | | | | |
| Refrains from loud behavior in housing unit | | | ✓ | ✓ | | | | |
| Gets up on time | | | ✓ | ✓ | | | | |
| Maintains good personal hygiene and clean living area, and properly maintains all State-issued property | | | ✓ | ✓ | | | | |
| Follows inmate dress code | | | ✓ | ✓ | | | | |

Comparative Rating (check one)  Compared to other inmates within the same housing unit, this inmate behaves:
( ) Better
(✓) The Same
( ) Worse

Leisure Time: (check all descriptions that fit this inmate's use of leisure time.)
( ) Spends time alone in cell    ( ) Socializes with others
( ) Engages in disruptive        ( ) Participates in officially sanctioned
    activities                       activities (e.g.: team sports)
( ) Other

(ALL MUST SIGN ON REVERSE SIDE)

HOUSING PERFORMANCE REPORT

| INMATE NAME | Phan Hue | DC NUMBER | DY-0577 |
|---|---|---|---|
| HOUSING ASSIGNMENT | A-Unit | DATE | 6-5-00 |
| REASON FOR REVIEW | ANNUAL PACT | | |
| COUNSELOR | Stacy Miller | | |

PLEASE RATE THE INMATE ON EACH OF THE FOLLOWING BEHAVIORS BY CHECKING THE APPROPRIATE RATING.

| FACTOR | MOST OF TIME (above avg.) | | USUALLY (average) | | Sometimes (below avg.) | | SELDOM (poor) | |
|---|---|---|---|---|---|---|---|---|
| | AM | PM | AM | PM | AM | PM | AM | PM |
| Relates well with, and is courteous to, other inmates | | | ✓ | ✓ | | | | |
| Cooperative and courteous to staff | | | ✓ | ✓ | | | | |
| Prompt for all line movements | | | ✓ | ✓ | | | | |
| Obeys written and verbal orders | | | ✓ | ✓ | | | | |
| Proceeds directly to and from cell/bunk without loitering | | | ✓ | ✓ | | | | |
| Refrains from loud behavior in housing unit | | | ✓ | ✓ | | | | |
| Gets up on time | | | ✓ | ✓ | | | | |
| Maintains good personal hygiene and clean living area, and properly maintains all State-issued property | | | ✓ | ✓ | | | | |
| Follows inmate dress code | | | ✓ | ✓ | | | | |

Comparative Rating (check one)   Compared to other inmates within the same housing unit, this inmate behaves:
( ) Better
(X) The Same
( ) Worse

Leisure Time: (check all descriptions that fit this inmate's use of leisure time.)
( ) Spends time alone in cell       ( ) Socializes with others
( ) Engages in disruptive            ( ) Participates in officially sanctioned
     activities                                   activities (e.g.: team sports)
( ) Other

(ALL MUST SIGN ON REVERSE SIDE)

# HOUSING PERFORMANCE REPORT

| INMATE NAME Phan, Hue | DC NUMBER DY-0577 |
|---|---|
| HOUSING ASSIGNMENT A Unit | DATE 6-4-01 |
| REASON FOR REVIEW   ANNUAL PACT | |
| COUNSELOR G. Miller, CCI | |

**PLEASE RATE THE INMATE ON EACH OF THE FOLLOWING BEHAVIORS BY CHECKING THE APPROPRIATE RATING.**

| FACTOR | MOST OF TIME (above avg.) | | USUALLY (average) | | Sometimes (below avg.) | | SELDOM (poor) | |
|---|---|---|---|---|---|---|---|---|
| | AM | PM | AM | PM | AM | PM | AM | PM |
| Relates well with, and is courteous to, other inmates | | | ✓ | ✓ | | | | |
| Cooperative and courteous to staff | | | ✓ | ✓ | | | | |
| Prompt for all line movements | | | ✓ | ✓ | | | | |
| Obeys written and verbal orders | | | ✓ | ✓ | | | | |
| Proceeds directly to and from cell/bunk without loitering | | | ✓ | ✓ | | | | |
| Refrains from loud behavior in housing unit | | | | ✓ | | | | |
| Gets up on time | | | | ✓ | | | | |
| Maintains good personal hygiene and clean living area, and properly maintains all State-issued property | ✓ | | | ✓ | | | | |
| Follows inmate dress code | | | ✓ | ✓ | | | | |

**Comparative Rating (check one)** Compared to other inmates within the same housing unit, this inmate behaves:
(✓) Better
( ) The Same
( ) Worse

**Leisure Time:** (check all descriptions that fit this inmate's use of leisure time.)
(✓) Spends time alone in cell     ( ) Socializes with others
( ) Engages in disruptive         ( ) Participates in officially sanctioned
   activities                        activities (e.g.: team sports)
( ) Other

**(ALL MUST SIGN ON REVERSE SIDE)**

DC-14

## CUMULATIVE
## ADJUSTMENT RECORD
## SCI-Retreat
### Institution

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**

**A UNIT**

| **Institutional Number** DY0577 | **PBPP NUMBER** | **NAME:** Phan, Hue |
|---|---|---|

| Date | OBSERVATION |
|---|---|

08Mar00

### Six month Counselor Contact

Inmate Phan was seen by the Unit Manager for his six month counselor interview because we are operating with one Counselor. Today he denies any problems. I reviewed his prescriptive plan with him. He said that he is enrolled in school. He said that his assignment in the Kitchen was keeping him busy until he fell and hurt his arm. He said that his injury is healing and he expects to return to work in the near future. Inmate was cooperative with the interview and presents a positive attitude today.

His emergency contact was reviewed remains unchanged.

The computer date will reflect a review completed on **01-27-00** to bring this case into compliance for the next scheduled review.

*[signature]*
Unit Manager

6/20/00    2 → 3.    *[signature] UC*

**DC-14**

**CUMULATIVE
ADJUSTMENT RECORD
SCI-Retreat**
Institution

COMMONWEALTH O
Department of

EXHIBIT

E

**A UNIT**

| Institutional Number | PBPP NUMBER | NAME: |
| --- | --- | --- |
| DY-0577 | | Phan, Hue |

| Date | OBSERVATION |
| --- | --- |
| 3-1-00 | Post infirmary interview - Mr Phan was in the infirmary overnight due to back problems. Says he is in quite a bit of pain. Claims they took X-rays; he is waiting for the results. Polite ____ Simmons CCII |
| 2/29/00 | HA1022 → AA1101.  Eljagon, unit clerk |

## Internal Resolution Action Form

| Inmate Name (Printed) | Inmate Number | DC-141 Part 1 Number | Date: |
|---|---|---|---|
| Phan | DY 0577 | 171 986 | 01 May 00 |

### Action Taken

| | | | |
|---|---|---|---|
| ☐ No Action | | | |
| ☐ Reprimand and Warning | | | |
| ☐ Referred to Hearing Examiner | | | |
| ☐ Cell Restriction (Up to 7 days) | Number of Days: | Start Date: | End Date: |
| Loss of Privileges: (Up to 7 days) ☐ Telephone ☐ Yard ☐ Day Room ☐ Other: | Number of Days: | Start Date: | End Date: |
| ☐ 1 Week Loss of Commissary | | Start Date: | End Date: |
| ☑ Assignment of Additional Work Duties (No 3 day shower compensation allowed) | Assignment Clean Showers | Start Date: 03 May 00 | End Date: 05 May 00 |
| ☐ Restitution for Damaged/Destroyed State Items/Property | Item(s) | Amount to be Paid: | |

Dale T. Hazlak
Unit Manager's Name (Printed or Typed)

_(signature)_    01 May 00
Unit Manager's Signature    Date

✗ _(signature)_    5/1/00
Inmate Signature    Date

cc: DC-14 (original)
     Hearing Clerk

Attachment C

**DC-141**    **PART II B**     **COMMONWEALTH OF PENNSYLVANIA**
Rev. 6-84
DISCIPLINARY HEARING REPORT     **DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part |
|---|---|---|---|---|---|
| DY0577 | Phan | SCI RT | 01 May 00 | 1300 hrs | 17198 |

| INMATE PLEA | ☐ Guilty ☐ Not Guilty | ☐ No Plea ☐ Other | Verdict | ☐ Guilty ☐ Not Guilty | ☒ informal Resolu |

**HEARING ACTION**

CHARGES    Class I Category B #39, Refusing to work

FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED       01 May 00

This is an informal resolution.

Return to work in kitchen

and

3 days of cleaning showers, ∅ pay

effective May 3, 2000 through May 5, 2000

| | | |
|---|---|---|
| ☐ YES ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | |
| ☐ YES ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | **SEE APPENDICES** |
| ☐ YES ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | ☐ |
| ☐ YES ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | |

| NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED) | Hearing Report and all appended information must be signed. Signature indicates finished report with appendices. |
|---|---|
| Dale T. Horvick | |
| Unit Manager | SIGNATURE OF HEARING EXAMINER/COORDINATOR |

2

FORM DC-141   PART I   COMMONWEALTH OF PENNSYLVANIA
Rev. 6-84
☐ MISCONDUCT REPORT ☐ OTHER   DEPARTMENT OF CORRECTIONS   **A** 171986

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DY0577 | Phan | SCI-Retreat | 0630 | 4/25/2000 | 4/28/2000 |

| Quarters | Place of Incident |
|---|---|
| A-Block | Inmate Dining Hall |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | Mr. Groboski | | X |
| | | | | | Ms. Kasprzyk | | X |

MISCONDUCT CHARGE OR OTHER ACTION  Class I CAT B #39 Refusing to work, attend school or attend mandatory programs or encouraging others to do the same.

STAFF MEMBER'S VERSION  On above date and time inmate Phan was called to the kitchen to work and refused stating his shoulder was hurt and the hospital told him to lay in. On 4/27/2000 Inmate Phan had gone to sick call and the hospital called the kitchen and stated "There is no medical reason for Phan not to work." My supervisor Mr. Groboski talked to Ms. Kasprzyk about inmate Phan's condition and she is the one that stated he is fine.

IMMEDIATE ACTION TAKEN AND REASON  4-28-00 Refer to Unit Manager for informal Resolution

PRE-HEARING CONFINEMENT

| | IF YES | |
|---|---|---|
| | TIME | DATE |
| ☐ YES | | |
| ☐ NO | | |

FORMS GIVEN TO INMATE
☐ REQUEST FOR WITNESSES AND REPRESENTATION   ☐ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| B. Horvath F.S.I. | Capt Wild | DATE | TIME 24 HOUR BASE |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE | TIME | ☑ CLASS I ☐ CLASS 2 | |
| 4-29-00 | 0900 | | |

### NOTICE TO INMATE
You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

WHITE —DC-15   YELLOW—Inmate Cited   PINK—Staff Member Reporting Misconduct   GOLDENROD—Deputy Superintendents

**DC-14**

EXHIBIT

D

## CUMULATIVE
## ADJUSTMENT RECORD
## __SCI-Retreat__
### Institution

**COMMONWEALTH OF P**
**Department of C**

__A UNIT__

| Institutional Number | PBPP NUMBER | NAME: Phan, Hue |
|---|---|---|
| DY0577 | | |

| Date | OBSERVATION |
|---|---|

01MAY00

### INFORMAL RESOLUTION

Inmate was seen today to conduct an informal resolution of misconduct 171986 Class 1, Category B, #39 Refusing to work, attend school or attend mandatory programs or encouraging others to do the same.

Phan said that he wants to work and wants to resolve the matter without needing to see the hearing examiner. After discussing the situation the decision is to informally resolve the misconduct. Inmate will return to work in the kitchen and is sanctioned to **3 days of cleaning the Unit showers effective 03MAY00 through 05MAY00. He will receive no pay for cleaning the showers.**

I contacted Mr. O'Brien and informed him of the outcome of this hearing. The paperwork was sent to Mr. Luzney for computer entry.

Mr. Giza was also sent a copy of the disposition.

*Dale T. Hff*

Unit Manager

Wyoming Valley Health Care System, Inc.

Date:

### *DISCHARGE INSTRUCTIONS*

### EMERGENCY SERVICES DEPARTMENTS

General Campus *(Wilkes Barre)* 552-1000
Nesbitt Campus  *(Kingston)* 552-7700
Proworks(500 Scott St.,Wilkes-Barre)829-7870
Proworks Mountaintop (62 N.Mt. Blvd.,Mountaintop)474-6865

FORM # NSG 060

PHAN Name HUE          30Y   M
6 33555   ER-GELLER
02/28/2000          601465651
SCI   ER TREAT      03/02/69
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

MR #:

# SPRAINS / CONTUSIONS

1. A sprain is a tear of one of the tough bands (ligaments) that hold bones together at a joint.
   It is caused by putting more pressure on a joint than the ligaments can hold. A sprain may
   be mild or very severe. A serious sprain can permanently alter the way a joint functions.
   - Pain is usually mild when the injury occurs, but worsens after a few hours.
   - Swelling, also, usually comes on gradually.
   - Bruising may appear after 12 to 24 hours.
   - A sprain does not show on x-ray but fractures usually do.

2. Rest is the most important treatment. A sprained joint is weakened and can easily be injured
   again, sometimes more severely.

3. Apply an ice pack _20_ minutes per hour for the first 24 to 48 hours to decrease swelling. Use
   a towel between the ice bag and the skin to prevent tissue damage.

4. Apply warm water soaks _____ minutes _____ times a day after the initial 24 - 48 hours to
   help decrease swelling.

5. Elevation will cut down on the swelling and throbbing. If the wrist or elbow or shoulder is
   injured, keep the arm up on 1 or 2 pillows for 4 - 12 hours. If a foot or knee is injured, keep
   it elevated on 2 pillows while lying down for 24 -48 hours.

6. Pain can be controlled by aspirin, Tylenol or Ibuprofen as directed.

7. Mild sprains heal in a few days. If you are still having difficulty after several days, another
   X-ray may be necessary to detect simple breaks which do not appear until they begin to
   heal. Severe sprains may require a cast and can take up to 6 weeks to heal.

8. Wear an Ace Bandage for _____ days. Remove at night and readjust frequently during the day.

9. Wear the Air Stirrup over a sock for _____ days.

Other comments: _Wear sling / shoulder immobilizer_
_for 5 to 7 days_

REV. 12/96

**EXHIBIT**

**C**

Valley Health Care S____m, Inc.

## DISCHARGE INSTRUCTIONS
## EMERGENCY SERVICES DEPARTMENT

General Campus (Wilkes-Barre) 552-1000
Nesbitt Campus (Kingston) 552-7700

Form # ERS-901  Rev. 5/97

DATE:

NAME: PHAT___ H___
633333  ER-GEL__
02/28/2000
SCI RETREAT

ED #: 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  K-57

MR #:

Except for schedule II drugs, medications ordered on this form are legal prescriptions, are not duplicated elsewhere and may be filled as written.

| PRESCRIPTIONS AND INSTRUCTIONS | QTY. | REF. | TIMES TO BE TAKEN | COMMENTS |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**INSTRUCTION SHEET(S) GIVEN**

- ☐ Abdominal Pain
- ☐ Asthma / Bronchitis / Croup
- ☐ Behavioral Health
- ☐ Fever – Child
- ☐ Head Injury
- ☐ Back Care
- ☒ Sprains / Bruises
- ☐ STD's
- ☐ Social Services
- ☐ Vomiting & Diarrhea
- ☐ Fracture Care
- ☐ Physician Referral List
- ☐ Wound Care
- ☐ Vaginal Bleeding
- ☐ _____

**INSTRUCTIONS TO PATIENT**  *REPORT ANY CHANGES OR CONCERNS TO YOUR PHYSICIAN OR THE EMERGENCY ROOM*

Ibuprofen 200mg Take 2 to 3 tablets with food
every 6 hours for pain and/or Tylenol 5gom for
Take 2 tablets / every 6 hours as needed for

**REFERRAL:** Refered To: discomfort

Phone: _____    Card Given ☐

- ☐ You have an appointment with _____ on _____ at _____ am / pm
- ☐ Make an appointment in _____ days. If you have any trouble getting an appointment, please call us.
- ☒ Pick up copies of your x-rays before your appointment. Call 552-1711 at the General Campus or 552-7528 at the Nesbitt Campus to have them ready for you.
- ☐ You have been given copies of your x-rays. Be sure to take them with you to the doctor's appointment.
- ☒ If no improvement in 5-7 hours / days, or if your condition worsens, or if any new symptoms arise, call your private physician or return to the Emergency Department for a recheck. Follow up with orthopedics
- ☐ 1. Your provisional diagnosis is: (R) Shoulder contusion / low back contusion
- ☐ 2. Have your prescriptions filled and take as directed.
- ☐ 3. You may return to work / school on _____
- ☒ 4. If you had EKGs / X-rays, the reading was a provisional. We will call if there is a difference in the final reading.
- ☒ 5. I understand that the treatment I have received was on an Emergency basis only and not meant to replace the complete care from a personal physician. I will call my personal physician within 24 hours of this Emergency visit to notify him / her of this visit.
- ☒ 6. After I am released from the Emergency Department, if my condition becomes worse, or fails to improve, or new symptoms or other medical problems become apparent, I understand that I should contact my family doctor or return to this hospital or to the nearest emergency center.
- ☒ 7. BY SIGNING ON THE LINE BELOW, MY SIGNATURE INDICATES:
  - ✓ THAT I HAVE READ AND UNDERSTAND THE ABOVE INSTRUCTIONS,
  - ✓ RECEIVED A COPY OF THIS FORM AND APPLICABLE INSTRUCTION SHEETS,
  - ✓ AND WILL ARRANGE FOR THE FOLLOW-UP CARE.

M.D. / D.C.

## Master Index -

| Policy | Policy Title | Issued | Effective | Authority |
|---|---|---|---|---|
| 13.02.07 | Inmate Health Care Plan | 11/17/1999 | 12/20/1999 | Martin F. Horn |
| 13.02.08 | Chronic Disease Management | 5/31/1995 | 6/30/1995 | Martin F. Horn |
| 13.02.08-01 | Chronic Disease Management | 12/02/1996 | 12/02/1996 | Raymond E. Clymer, Jr. |
| 13.02.11 | Access to Dental Care | 6/14/1996 | 6/28/1996 | Martin F. Horn |
| 13.02.12 | Corrective Eyewear | 12/02/1996 | 2/03/1997 | Raymond E. Clymer, Jr. |
| 13.02.12-01 | Corrective Eyewear | 11/18/1997 | 12/01/1997 | Martin F. Horn |
| 13.03.01 | Inmate Tuberculosis Control | 3/07/1997 | 5/07/1997 | Martin F. Horn |
| 13.03.01-01 | Inmate Tuberculosis Control | 4/16/1998 | 5/01/1998 | Martin F. Horn |
| 13.03.01-02 | Inmate Tuberculosis Control | 6/04/1998 | 6/15/1998 | Martin F. Horn |
| 13.03.02 | Employee Tuberculosis Control | 3/07/1997 | 5/07/1997 | Martin F. Horn |
| 13.03.03 | Contagious Disease Notification | 1/29/1999 | 3/01/1999 | Martin F. Horn |
| 13.03.04 | Prescription and Use of "Egg Crate" Mattresses | 6/08/1995 | 7/03/1995 | Raymond E. Clymer, Jr. |
| 13.03.06 | Management and Reporting of HIV Infection Contagious Disease Notification Policy | 12/05/1991 | 12/05/1991 | Joseph D. Lehman |
| 13.03.06-01 | Management and Reporting of HIV Infection Contagious Disease Notification Policy | 7/29/1993 | 7/29/1993 | Lawrence J. Reid |
| 13.03.07 | Occupational Exposure to Bloodborne Pathogens | 9/22/1997 | 10/20/1997 | Martin F. Horn |
| 13.03.07-01 | Occupational Exposure to Bloodborne Pathogens | 5/15/1998 | 5/26/1998 | Martin F. Horn |
| 13.03.08 | Regulations of Communicable & Non-Communicable Diseases | 7/06/1999 | 8/06/1999 | Martin F. Horn |
| 13.03.09 | Sexually Transmissible Diseases Treatment | 5/28/1999 | 6/25/1999 | Martin F. Horn |
| 13.04.01 | Pharmacy Guidelines | 10/15/1998 | 11/16/1998 | Martin F. Horn |
| 13.04.01-01 | Pharmacy Guidelines | 11/09/1998 | 11/16/1998 | Martin F. Horn |
| 13.05.01 | Inmate Health Education Manual | 5/31/1995 | 6/30/1995 | Martin F. Horn |
| 13.06.01 | Maintenance of Integrated Health Records | 7/18/1997 | 10/15/1997 | Martin F. Horn |
| 13.07.01 | Hospice Care | 3/10/1999 | 4/09/1999 | Martin F. Horn |
| 13.07.01-01 | Hospice Care | 4/22/1999 | 4/29/1999 | Martin F. Horn |
| 13.07.02 | Long Term Care Unit Referral Process | 9/17/1997 | 9/17/1997 | Martin F. Horn |
| 13.08.01 | Administering Involuntary Parenteral Psychotropic Medication for Psychiatric Emergencies | 12/04/1997 | 1/05/1998 | Martin F. Horn |
| 13.08.04 | Intermediate Care Unit | 4/29/1999 | 5/28/1999 | Martin F. Horn |

Wednesday, November 15, 2000

## Master Index -

| Policy | Policy Title | Issued | Effective | Authority |
|---|---|---|---|---|
| 13.01.01 | Credentialing and Privileging | 10/09/1998 | 10/19/1998 | Martin F. Horn |
| 13.01.01-01 | Credentialing and Privileging | 9/24/1999 | 10/01/1999 | Martin F. Horn |
| 13.01.02 | Clinical Review of Inmate Deaths and Attempted Suicide Policy | 9/17/1999 | 10/19/1999 | Martin F. Horn |
| 13.01.03 | Quality Improvement | 6/08/1995 | 6/30/1995 | Martin F. Horn |
| 13.01.03-01 | Quality Improvement | 8/16/2000 | 8/28/2000 | Martin F. Horn |
| 13.01.04 | Refusal to Eat and/or Take Liquids | 9/02/1993 | 11/02/1993 | Joseph D. Lehman |
| 13.01.05 | Advanced Directive for Health | 3/10/1999 | 4/09/1999 | Martin F. Horn |
| 13.01.06 | Inmate Refusal to Accept Medical Treatment | 3/10/1999 | 4/09/1999 | Martin F. Horn |
| 13.01.08 | Use of Institutional Health Care Facilities by Staff | 3/10/1999 | 4/09/1999 | Martin F. Horn |
| 13.01.09 | Medical Contract Monitoring | 3/10/1999 | 4/09/1999 | Martin F. Horn |
| 13.01.11 | Orientation for Nursing Staff | 10/09/1998 | 10/19/1998 | Martin F. Horn |
| 13.02.01 | Initial Intake Screening and Medical Clearance for Transfer | 5/22/1997 | 5/22/1997 | Martin F. Horn |
| 13.02.01-01 | Initial Intake Screening and Medical Clearance for Transfer | 8/04/1998 | 9/01/1998 | Martin F. Horn |
| 13.02.01-02 | Initial Intake Screening and Medical Clearance for Transfer | 10/14/1998 | 10/16/1998 | Martin F. Horn |
| 13.02.01-03 | Initial Intake Screening and Medical Clearance for Transfer | 11/09/1998 | 11/16/1998 | Martin F. Horn |
| 13.02.02 | Review of Diagnostic Reports | 3/26/1999 | 4/26/1999 | Martin F. Horn |
| 13.02.03 | Access to Health Care | 5/31/1995 | 6/30/1995 | Martin F. Horn |
| 13.02.03-01 | Access to Health Care | 8/01/1995 | 8/01/1995 | Martin F. Horn |
| 13.02.03-02 | Access to Health Care | 3/12/1996 | 3/12/1996 | Raymond E. Clymer, Jr. |
| 13.02.04 | Physical Examinations: New Commitments; Returning Inmates, HVA's, Annual; Biennial; Commutation; Medical Clearance for Activities, Employment, Food Service Workers | 5/22/1997 | 7/22/1997 | Martin F. Horn |
| 13.02.05 | Access to Emergency Care | 5/31/1995 | 6/30/1995 | Martin F. Horn |
| 13.02.05-01 | Access to Emergency Care | 10/16/1996 | 10/16/1996 | Raymond E. Clymer, Jr. |
| 13.02.06 | Inpatient Unit Medical Procedures | 10/09/1998 | 10/19/1998 | Martin F. Horn |

Wednesday, November 15, 2000

ATTACHMENT IV

**Part A:** To be completed by referring Institution.

| Referred to: | Referred from: | Appt. Date |
| --- | --- | --- |
| | | Appt. Time |

Drug Sensitivity: No ☐    Yes (Specify):

Current Medications and Significant Medication History:

Present Illness: (Include Significant Hx, Pertinent PE., Summary of lab and X-Ray studies, and reason for referral)

| Date | Signature of referring Physician |
| --- | --- |

**Part B:** To be completed by consulting Physician.

Examination findings and test results.

(Cont. on reverse side)

**DC-61**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**CONSULTATION RECORD**

38

Inmate Identification

D.O.B.

SSN

Inst. No.

Name

ATTACHMENT

## SICK CALL - DENTAL

Date _____          Block _____

| NUMBER | NAME |
|--------|------|
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |

ATTACHMENT

**SICK CALL - MEDICAL**

Date _____          Block _____

| NUMBER | NAME |
|--------|------|
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |
|        |      |

## SICK CALL REQUEST

DATE _____    TIME _____

HOUSING UNIT/CELL BLOCK _____

INMATE NAME _____    NUMBER _____

COMPLAINT:_____

_____

_____

_____

_____    **MEDICAL**

_____    **DENTAL**

**Place this request form in the locked medical box on the housing u**

IX.    **SUPERSEDED POLICY AND CROSS-REFERENCE:**

This is a new policy. It does not supersede any previous DOC policy.

ACA Cross Reference:        3-4330, 3-4331, 3-4353, 3-4356,
                           3-4357

**OM-105.02 - Hospitalization and/or Consultation Cases Requiring Special Handling (3/31/86)**

**OM-105.03 - Delivering of Non-Essential Medical Service (8/19/87)**

**OM-105.03 - Follow up Care (8/1/88)**

**OM-105.03 - Guidelines for the Clinical Management of Substance Abuse Department (8/19/87)**

**OM-105.04 - Inmates Refusing to Take Prescribed Psychotropic Medications (2/9/87)**

**OM-105.08 - Policies for Maintenance of the Medical Record System (8/5/86) (IV-02 DC-61 Consultation Record)**

**DC-ADM 820 - Health Care For Inmates**

**13.2.7 - Chronic Disease Management Policy**

**6.5.1 - Administration of the RHU**

_____        5-24-95
**Clinical Director/Consultant**        **Date**

E.   Chronic Care Clinics

    1.   The Corrections Health Care Administrator is responsible for monitoring a formal system to ensure inmate access to routine follow-up care.  The contract vendor will implement or operate an appropriate system.

        a.   A list of inmates for each chronic care clinic will be developed and confidentially maintained.

        b.   The nurse assigned will be responsible to ensure the inmate is seen by calling the housing unit if necessary.  Inmates refusing care must sign a DC-462, Release From Responsibility for Medical Treatment.

    2.   All clinic visits shall be documented in the record.

    3.   Chronic disease management shall be in accordance with established physician parameters.  Refer to Chronic Disease Management Policy, 13.2.7.

    4.   The Corrections Health Care Administrator shall ensure that physician performance complies with the practice parameters set forth in policy.

## VII.   SUSPENSION DURING EMERGENCY:

In an emergency situation or extended disruption of normal institutional operation, any provision or section of this policy may be suspended by the Commissioner or his/her designee for a specific period of time.

## VIII.   RIGHTS UNDER THIS POLICY:

This policy does not create rights in any person nor should it be interpreted or applied in such manner as to abridge the rights of any individual.  This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the policies of the Bureau of Health Care Services - Department of Corrections.

Access to Health Care, 13.2.3
Revised 11/97

2.    The consolation form will be reviewed and approved by the medical director or designee and processed by the vendor site administrator.

    a.    When the appointment is made, it will be recorded in the medical record as to the time, date and with whom.

    b.    A separate log will be maintained for all scheduled outside appointments.

    c.    If it is disapproved, the medical director/designee will document justification in the medical record.

3.    Pertinent medical information will accompany the inmate to the appointment.

    a.    The medical information will be placed in a sealed, "confidential" envelope and will be issued to the correctional officers assigned to escort the inmate.

    b.    Special precautions or instructions needed for the transporting correction officers shall be conspicuously noted on the outside of the envelope.

4.    A schedule of routine off-site appointments will be made by the medical contract vendor in coordination with the Shift Commander at least one week in advance, so that adequate transportation and security will be available.

5.    The vendor is responsible to inform the outside consultant that the inmate can not be told the date of follow-up appointments. If it is discovered that an inmate is aware of the time of an appointment, it will be rescheduled.

6.    Control and the Shift Commander will be informed of cancellation or rescheduling of an appointment as soon as possible.

7.    The consultant will record his/her findings and recommendations on the Consultation Record (DC-441), and it will be returned to the infirmary area at the time of the inmate's return.

8.    The medical director/designee will review the consultant's recommendations within 48 hours, and order any treatments, medications and/or diagnosis testing on the appropriate DC-472, Progress Notes.

Access to Health Care, 13.2.3
Revised 11/97

B.    Initial and Routine RHU Assessment

    1.    The Medical Department shall be notified when an inmate is placed in the RHU.

    2.    The nurse will review the medical record for current medical, or psychiatric care and treatment.

        a.    A mental health professional will be notified by the health professional if the inmate's medical record revels a psychiatric history.

        b.    A physician will  make daily rounds in the RHU and SMU.

C.    On-Site Consultations

    1.    The Corrections Health Care Administrator shall assure and vendor on-site administrator will be responsible for maintaining a list of inmates for each specific clinic.

    2.    There will be a nurse assigned to assist the physician in appropriate specialty clinics.

    3.    A contract vendor will  provide on-site specialty care when six (6) or more referrals are made in a month.

    4.    The day prior to the clinic, the inmates who are to attend shall be notified via local procedure (call out sheet, etc.).

    5.    A completed Consultation Record (DC-441) (Attachment IV) and the medical record will be available to the specialist.  The consultation form will provide the reason the referral was made and any pertinent information about the inmate's medical condition.

    6.    The medical director or designee will review the consultant's recommendations within 48 hours and order any treatments, medication or diagnosis testing on the DC-472, Progress Notes.

D.    Off-Site Consultations

    1.    A consultation form will be completed by the referring physician as to the reason for the referral and any other pertinent information.

Access to Health Care, 13.2.3
Revised 11/97

b.  Inmates who experience medical problems and who wish to be seen on sick call will be required to place a sick call request form in the locked medical box in the housing unit, or use a sign up sheet, if available. If a sign up sheet is utilized, a locked medical box in the housing unit must still be made available for those inmates desiring to use this method to obtain health care services. (Refer to Attachment I)

c.  The Correctional Health Care Administrator will assure that sick call slips are retrieved by medical staff from the locked boxes at a minimum Sunday thru Thursday (excluding the day before a holiday).

    1)  Individual request slips will be available with the medical record for sick call.

    2)  A master list will be initiated for each housing unit and will be utilized for scheduling sick call (Attachments II & III), or suitable local substitute. Medical information is confidential and is not to be included on the master sick call request forms.

    3)  No shows are to be documented in the medical record.

    4)  Sick call request slips may be destroyed after the inmate is seen or fails to show as scheduled.

    5)  The sick call master list will be retained by the medical records supervisor for three years.

d.  A licensed health care professional will conduct sick call.

    1)  A physician assistant will conduct routine sick call.

    2)  Any inmate who requires care beyond the scope of the physician assistant will be referred to the physician.

    3)  Non-scheduled inmate encounters will be assessed by a registered nurse. He/She will utilize necessary protocols written by the medical director. Any medical intervention requiring a higher level of care will be referred to a physician assistant or physician.

e.  All medication lines and sick call lines will be conducted in areas where the inmates waiting for services are protected from the elements, including cold.

- 3 -

**Disciplinary Custody** - The maximum restrictive status of confinement to which inmates found guilty of Class I misconduct may be committed.

**On-Site Consultations** - Physician services in a particular specialty that are provided in the facility due to the number of inmates presenting with a problem requiring specialized care.

**Off-Site Consultations**- Physician services in a particular specialty ordered by a physician not provided on site either because highly specialized diagnostic equipment is not available or the number of referrals per month do not warrant on site consultations.

**Restricted Housing Unit (RHU)** - Designated area or housing unit for inmates assigned to disciplinary or administrative custody status.

**Sick Call** - A regularly scheduled process whereby licensed health care staff respond to inmates' health care needs and requests regardless of housing status.

V.      **POLICY:**

It is the policy of the Department of Corrections, to provide access to medical and dental care via a sick call system.  Access to emergency care is available 24 hours a day.  All inmates who are segregated for  pre-disciplinary, disciplinary, or investigative reasons, have daily access to health care and record review upon admission to segregation.  All Department of Corrections Medical Departments will provide specialty consultations.  Off-site specialty consultations will be provided in accordance with regularly scheduled follow-up care.

VI.      **PROCEDURES:**

A.      **Sick Call**

1.      Sick Call is readily available to all inmates.



**POLICY STATEMENT**

Commonwealth of Pennsylvania • Department of Corrections

| Policy Subject: | Policy Number: |
|---|---|
| **ACCESS TO HEALTH CARE** | 13.2.3 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| May 31, 1995 | *Martin F. H* | June 30, 1995 |

RECEIVED

JUN 5 1995

SCI RETREAT
SUPERINTENDENT'S
OFFICE

I.    **AUTHORITY:**

The Authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.C. 177, No. 175, as amended.

II.    **PURPOSE:**

The purpose of this policy is to establish procedures for inmates to access medical and dental care.

III.    **APPLICABILITY:**

This policy and any resultant procedure(s) are applicable to all medical areas within the Department of Corrections facilities and all employees, both State-employed and Contract providers, who are authorized to provide inmate care and those who utilize the Department of Corrections equipment and facilities.

IV.    **DEFINITIONS:**

**Administrative Custody** -  A status of confinement for non-disciplinary reasons which provides close supervision, control, and protection more than is provided for in general population.

**Chronic Disease Clinic** - Regularly scheduled follow-up physician care structured in accordance with diagnostic - specific parameters for those inmate's with a particular chronic disease.



**BULLETIN**

Commonwealth of Pennsylvania ● Department of Corrections

| To: Executive Deputy | Policy Subject: |
| Commissioner | Access to Health Care |
| Regional Deputy Comm. | |
| Executive Staff | |
| Superintendents | Policy Number: 13.2.3-1 |
| Boot Camp Commander | Policy Issue Date: 5/31/95 |

| Date of Issue: 8/01/95 | Authority: | Effective Date: 8/01/95 |

Page 4, Para. B., 2., b., is revised to delete the requirement that "a physician will make _daily_ rounds in the RHU or SMU". The revision will now reflect that "RHU rounds will be made _daily_ by either a physician or physician assistant".

A physician must visit the RHU at least once per week.

xc:   Deputy Wilson
      Deputy Piazza
      Mr. Mataloni
      File

      * Distribute policy & bulletin to appropriate staff.

**RECEIVED**

**AUG 7 1995**

**SCI RETREAT
SUPERINTENDENT'S
OFFICE**

Revised Health Care Policy and New Bulletin                    **March 12, 1996**
Page 2

**New Bulletins:**

**13.2.3-2  Access to Health Care** - Consultant's recommendations must be reviewed by the medical director or his designee within 48 hours of receipt by the institution.

When a consult is written , it must be reviewed and approved by the medical director or his designee **within 5 days** from date the consult was written.

**6.7.9-1  Reporting of Extraordinary Occurrences** - The Bureau of Health Care Services is responsible for maintaining a database on inmate deaths.  It is imperative that the "interim fax" regarding an **inmate death** is faxed to the Bureau of Health Care Services.

Please assure that appropriate staff are provided copies of this policy and bulletins for review, implementation and inclusion in Administrative Manual, Volume 13 and Volume 6.  Thank you for your cooperation.

Attachments

RC/KZ/JMM

file:  new-polb.m03

EXHIBIT

B

**Bulletin**
**Commonwealth of Pennsylvania• Department of Corrections**

| To: | Superintendents<br>Boot Camp Commander<br>CCC Regional Directors<br>Executive Staff | Policy Subject:  ACCESS TO HEALTH CARE |
|---|---|---|
| | | Policy Number: 13.2.3-2 |
| | | Policy Issue Date:  May 31, 1995 |

| Date of Issue:<br>March 12, 1996 | Authority: | Effective Date:<br>March 12, 1996 |
|---|---|---|

The purpose of this bulletin is to amend:

Section VI.C.6 and Section VI.C.8, Procedures:  The medical director or designee will review the consultant's recommendations within 48 hours  of receipt by the institution and order any treatments, medication and/or diagnostic testing on the DC-472, Progress Notes.

Section  VI.D.2., Procedures:  The consultation form will be reviewed and approved by the medical director or designee within 5 days from date the consult was written.

Inmates must be seen by the specialty care provider within 30 days of the approval by the medical director for on-site services, and within 60 days for off-site services.

# RECEIVED

### DEC 17 1997

### SCI RETREAT
### SUPERINTENDENT'S
### OFFICE

xc:   Deputy Lavan
      Deputy Piazza
      Mr. Mataloni
      File

      * Distribute to appropriate staff.

Set example for medical department by reporting to work on tine and being present at meetings.

Meet deadlines for assignments and do assignments in quality manner.

Recommends performance of repairs and modifications to medical facility. Prepares requisitions for supplies and equipment, and, establishes a system of control for the storage and dispensing of pharmaceuticals.

Act as staff advisor to the Superintendent on matters regarding the health and welfare of inmates and the physical condition of employees as it affects their ability to perform work.

Interviews and recommends paraprofessional and professional health care applicants. Participates in the recruiting of professional medical staff, prepares work schedules, develops work standards, evaluates wor performance, resolves grievances, takes disciplinary action, and recommends suspension and dismissal action.

Supervises assigned inmate workers through custody staff, including responsibility and accountability for their work actions and security.

Supervisors the office management functions, including the maintenance of medical records.

Participates in the negotiation of contracted regional health care services for the purposes of providing a f line of clinical services (such as ENT, Ophthalmology, urology, neurology, orthopedic, dermatology, podiatry, cardiovascular, physician assistants, internal medicine, infectious disease, and general practitioner).

Consults with medical professional staff and schedules transfer of inmates from own or other institutions t provide surgical, clinical, and outpatient psychiatric services.

Performs related work as required.

Monitor the medical contractor to assure services are being provided in accordance with the current contract/RFP.

Submit Monthly Contract Monitor Reports to the BHCS Medical Contract Monitor to document areas of noncompliance.

Monitor and approve payment of hours worked by the contract staff.

Approve and submit Monthly Hours and Inmate Count reports as invoicing payments. Include all approve penalties on the Monthly Hours report.

Assist in determining the amount of medical services needed for the institution and make recommendatio for staffing changes to the BHCS Medical Contract Monitor.
**Joseph Mataloni, C.H.C.A.**
**Job Description**

Work closely with the Vendor Site Administrator to assure medical services are being provided and currer policies and standards are being met.

Review and approve all hospital invoices to assure that the services were medically necessary and actua provided.

Resolve contract noncompliance issues and report appropriate penalties to the BHCS Medical Contract Montior.

24-hour daily basis, 7 days a week including per and post operative care, physical examinations, medical and surgical treatment, dentistry, nursing care, physical therapy, dietary service, psychiatry, medical and x ray technology, and medical records maintenance. Directs, through subordinate supervisors all activities associated with operation of a state correctional institution infirmary and licensed inpatient mental health unit.

Oversee inmate janitors, professional and paraprofessional health care personnel, and contracted medical or mental health services.

Plan, organize, assign, and evaluate work of subordinates to obtain maximum efficiency and achievement desired results.

Acts as staff advisor to the Superintendent on matters regarding the health and welfare of inmates and the physical condition of employees as it effects their ability to perform work.

Ability to establish and maintain effective working relationships with medical staff and other institution personnel.

Ability to express ideas clearly and concisely both orally and in writing.

Meets with the Superintendent in a quarterly meeting, addressing the effectiveness of the health care system, any health environment factors, and any condition that poses a danger to staff or inmate health safety. Statistical summaries/reports will indicate health services by category (e.g. operative procedures, referrals to specialists, ambulance services, etc.)

Communicates with contracted medical services and institution staff-both subordinate and administrative. This involves matters such as the general level of medical care, outside hospitalization and consultative services, as well as regular contract physicians who visit the institution on a regular basis or provide required medical services.

Acts as a member of the executive staff to carry out Bureau of Health Care Services' goals and objectives Acts as institution liaison for the Bureau of Health Care Services in relating local needs.

Prepares and submits annual budgetary requirements to the Bureau of Health Care Services, including personnel needs.

Implements and monitors the Bureau of Health Care Services' recommended quality assurance program a it pertains to all health care operations. Prepares and submits statistical reports to health care section wit analysis as necessary.

Demonstrates knowledge of management theory by exercising equitable, objective treatment of all subordinate staff.

Shows willingness to assess staff weaknesses and sets plan of action to develop areas of weakness.

Encourages team concepts in working with staff, and, interacts in a positive manner. Sets a good exampl to staff by dealing with own frustrations.

**Joseph Mataloni, CHCA**
**Job Description**

Be cognizant of all security rules and regulations as they apply to operations of health care in the prison environment.

Encourage wellness of all staff and inmates by advising of any health hazards in the environment and act as education resource for the institution on health matters.

Work is assigned both verbally and in writing. Standards and objectives are established and reviewed in accordance with the Employee Performance Review. Day to day supervision is accomplished through regular meetings, review of written work and frequent informal consultation.

8. If this is a supervisory position, briefly describe how work is assigned to subordinate personnel and how their work is reviewed. (If this is not a supervisory position, leave blank.)

The Corrections Health Care Administrator's duties at SCI Retreat includes the oversight and monitoring of all services delivered by a contract vendor, as well as the coordination of those services with facility staff, training and inspections. Supervision is by a combination of formal meetings and frequent informal consultations.

9. Attach an Organizational Chart identifying all reporting relationships for this position.

See attached.

10. Attach a statement identifying the essential functions of the positions.

## CERTIFICATION

I certify that to the best of my knowledge all statements contained within the job description are correct: This job description Consists of _____ pages. (count this form as 1 page)

| | | |
|---|---|---|
| Employee's Signature | Class Title | Date |
| Immediate Supervisor's Signature | Class Title | Date |
| Reviewing Officer's Signature | Class Title | Date |

**Joseph Mataloni, C.H.C.A.**
**Job Description**

Plans, organizes, directs, administers, and manages health care services for inmates in the treatment of illness, diseases, and injuries per Bureau of Health Care Services' standards, guidelines and directives o

EXHIBIT

A

COMMONWEALTH OF PENNSYLVANIA
STD-370      REV. 10-96

# JOB DESCRIPTION

| 1. Name of Employee (Last, First, MI) | 2. Employee Number | |
|---|---|---|
| MATALONI, Joseph P. | 447322 | 041810 |

| 3. Department | Bureau | Division | Headquarters | Organization |
|---|---|---|---|---|
| Corrections | SCI Retreat | Centralized Services | Medical | 6500 |

| 4. Class Title | Working Title | Class Code |
|---|---|---|
| Corrections Health Care Administrator | Health Care Administrator | 47660 |

5. Regular Work Schedule

Position is:

| Start Time: | 0800 | Lunch Length: | 1/2 hr. |
|---|---|---|---|
| End Time: | 1600 | Hours/Week: | 37.5 |

| x | Full-Time | x | Permanent |
| | Part-Time | | Temporary |

Reports to:   Name                    Class Title

Joseph J. Piazza       Deputy Corrections Superintendent I

Days Worked (check all that apply):

| S | M | T | W | The | F | S |
|---|---|---|---|---|---|---|
| | x | x | x | x | x | |

Explain any schedule variations:

6. Describe the work assigned to this position, listing the critical duties and responsibilities first. Explain work in familiar terms and include machines or equipment used. Use additional paper if needed.

7. Briefly describe how work is assigned to this position and how the work is reviewed.

**Exhibits**

A. Health Care Administrator Job Description – 4 pages

B. DOC Policy 13.2.3, with updates – 14 pages

C. Emergency Room Doctor Report – 2 pages

D. Misconduct proceedings, #171986 – 4 pages

E. Personal Reports by Hazlak – 4 pages

F. Unit Manager Job Description – 3 pages

G. (There is no Exhibit G)

H. Food Services Manager I Job Description – 4 pages

I. 5/25/00 memo signed by O'Brien – 2 pages

J. Williams kitchen fall grievance – 6 pages