**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

Filed Via Electronic Case Filing

Civil Action No. 01-CV-1064

(Judge Kane)

(Magistrate Smyser)


PHAN HUE,

Plaintiff,

v.

JAMES UPDIKE, et al.,

Defendants.

_____

**CORRECTIONS DEFENDANTS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON THE FACTS**

By:   Marsha M. Davis
Assistant Counsel
Attorney I.D. No. 28018
Office of General Counsel
Department of Corrections
55 Utley Drive
Camp Hill, Pennsylvania 17011
(717) 731-0444
Attorney for Defendant

Dated:  April 11, 2003

**TABLE OF CONTENTS**
TABLE OF AUTHORITIES      ii-iii

STATEMENT OF THE CASE  1

STATEMENT OF QUESTIONS PRESENTED      3

ARGUMENT        4

     1.      **DEFENDANTS HAZLAK AND O'BRIEN SHOULD BE GRANTED SUMMARY JUDGMENT, AS TO PLAINTIFF'S CLAIMS OF RETALIATION IN CONNECTION WITH BEING FORCED TO WORK.**     4

     2.      **DEFENDANT MATALONI SHOULD BE GRANTED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM OF DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED**        9

     3.      **DEFENDANTS O'BRIEN AND HAZLAK SHOULD BE GRANTED   SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS THAT THEY WERE DELIBERATELY INDIFFERENT TO HIS SERIOUS MEDICAL NEEDS WHEN THEY FORCED HIM TO WORK**        11

     4.    **DEFENDANT O'BRIEN SHOULD BE GRANTED SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIM THAT HE USED "OFFICIAL PRESSURE TO SEE TO IT THAT PLAINTIFF'S INJURY WAS NOT RECOGNIZED" AND PLAINTIFF WAS MADE TO WORK**        16

     5.      **CORRECTIONAL DEFENDANTS' ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY**        17

    CONCLUSION    19

CERTIFICATE OF WORD COUNT  20

## **TABLE OF AUTHORITIES**

Cases
                        Page(s)

*Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000)      5

*C.H. Ex. Rel. Z.H. Oliva*, 226 F.3d 198 (3d Cir. 2000)      11

*Coades v. Jeffes*, 822 F. Supp. 1189 (E.D. Pa. 1993)      9

*Doe v. County of Centre*, 242 F.3d 437(2001)        17, 18

*Drexel v. Vaughn*, 1998 WL 151798   4

*Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993)    11, 13

*Estelle v. Gamble*, 429 U.S. 97  (1976)        9, 11

*Farmer v. Brennan*, 511 U.S. 825 (1994)      12

*Flanagan v. Shively*, 783 F. Supp. 922 (M.D. Pa. 1992)    13

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)    17

*Hoptowit v. Ray*, 682 F. Supp. 1237 (9th Cir. 1982) 5

*Ingraham v. Wright*, 430 U.S. 651 (1977)      8

*Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754 (1979)        10, 13

*Kentucky v. Graham*, 473 U.S. 159 (1985)    16

*McAleese v. Owens*, 770 F. Supp. 255 (1991)        10,  13, 14

*Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977)  6

*Pennhurst Sch. and Hosp. v. Halderman*, 465 U.S. 89 (1984)    16

*Quern v. Jordan*, 440 U.S. 332 (1979) 16

**Cases**

**Page(s)**

*Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) 4, 5

*Rouse v. Plantier*, 182 F. 3d 192 (3d Cir. 1999)    12, 17

*Sheldon v. C/O Pezley*, 49 F.3d 1312 (8th Cir. 1995)    9, 12

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)    4

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)    16

*Wilson v. Wigen*, 1998 U.S. Dist. LEXIS 5792 (E. D. Pa.) 15

Statutes

42 U.S.C. §1983    16

## STATEMENT OF THE CASE

Phan Hue, ("Plaintiff") is an inmate confined at the State Correctional Institution at Retreat ("SCI-Retreat"). Corrections Defendants at SCI-Retreat are: Joseph Mataloni, Health Care Administrator, Dale Hazlak, Unit Manager and Edward O'Brien, Food Service Manager. The remaining Defendant, James Updike was an employee of the medical contractor at SCI-Retreat.

Plaintiff alleges the following as a result of an alleged accident on

February 28, 2000, while working in the prison kitchen at SCI-Retreat. He seriously injured his shoulder and some teeth were knocked out, when he fell. (Complaint IV, ¶ 1). He was taken to an outside hospital. An emergency room physician prescribed medication and told Plaintiff that he would need to see a bone specialist. (Complaint IV, ¶2). Upon Plaintiff's return to SCI-Retreat, Updike discontinued Plaintiff's medication, confiscated his shoulder restraint and refused to schedule him to see a bone specialist. Defendant Mataloni knew of Plaintiff's condition and of the prescribed medication and referral to a bone specialist. Defendants O'Brien and Hazlak were adamant about not letting Plaintiff off work. Defendants forced Plaintiff to work, it is alleged, because they feared he was going to sue the Department over the conditions of his workplace. Defendant O'Brien would not recognize Plaintiff's injury and used official pressure to ensure that Plaintiff's injury was not recognized and that Plaintiff was forced to work in the kitchen. Defendant Hazlak retaliated against Plaintiff by punishing him and ordering him to do additional work. (Complaint IV, ¶ 2). By way of relief, Plaintiff seeks "repair of [his] medical maladies," "expungement of the misconduct from [his] record simply for fighting for [his] constitutional rights," and compensatory and punitive damages. He also seeks prescribed medical treatment. (Complaint IV, ¶ 3).

Plaintiff initiated this civil action by filing a Complaint on June 15, 2001.  On January 24, 2002, counsel for Corrections Defendants' entered her appearance and filed a Motion to Dismiss.  On April 15, 2002, Magistrate Judge Smyser issued his Report and Recommendation, in which he recommended that Corrections Defendants' Motion to Dismiss Plaintiff's Complaint be denied.  On May 10, 2002, the Court adopted the Report and Recommendation of Magistrate Judge Smyser.  On May 30, 2002, Corrections Defendants filed a Motion for Summary Judgment on the issue of exhaustion. Plaintiff filed a Brief in Response to the Corrections Defendants Motion for Summary Judgment on July 17, 2002.   Corrections Defendants and Plaintiff have exchanged Discovery Motions and Responses.  On September 9, 2002, this case was stayed until November 1, 2002.  This brief is submitted in support of Corrections Defendants' Motion for Summary Judgment on the Facts, filed this date.

## <u>STATEMENT OF QUESTIONS PRESENTED</u>

1.    **SHOULD DEFENDANTS HAZLAK AND O'BRIEN BE GRANTED SUMMARY JUDGMENT, AS TO PLAINTIFF'S CLAIMS OF RETALIATION IN CONNECTION WITH BEING FORCED TO WORK?**

Suggested Answer:  YES

2.    **SHOULD DEFENDANT MATALONI BE GRANTED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM OF DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL**

**NEED?**

Suggested Answer:  YES

**3.    SHOULD DEFENDANTS O'BRIEN AND HAZLAK BE GRANTED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS THAT THEY WERE DELIBERATELY INDIFFERENT TO HIS SERIOUS MEDICAL NEEDS WHEN THEY FORCED HIM TO WORK?**

Suggested Answer: YES

**4.    SHOULD DEFENDANT O'BRIEN BE GRANTED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM THAT HE USED "OFFICIAL PRESSURE TO SEE TO IT THAT PLAINTIFF'S INJURY WAS NOT RECOGNIZED"AND PLAINTIFF WAS MADE TO WORK?**

Suggested Answer: YES

**5.    SHOULD THE COMPLAINT AGAINST CORRECTIONS DEFENDANTS BE DISMISSED BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY?**

Suggested Answer:  YES

## ARGUMENT

**1.    DEFENDANTS HAZLAK AND O'BRIEN SHOULD BE GRANTED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS OF RETALIATION IN CONNECTION WITH BEING FORCED TO WORK.**

Plaintiff makes two separate claims of retaliation.  Firstly, Plaintiff

alleges Hazlak and O'Brien retaliated against him, by forcing him to work,

because they feared he would sue over the workplace conditions.  Secondly,

Plaintiff alleges that Hazlak punished him for refusing to work because of his insistence on medical care.  (Complaint IV, ¶3).

Claims of retaliation for exercising a constitutional right are governed by *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). *Rauser* breaks the review of a retaliation claim into three inquiries.  To advance an argument of retaliation Plaintiff must first establish that the conduct that led to the alleged retaliation was constitutionally protected. *Rauser,* citing *Thaddeus-X v. Blatter,* 175 F.3d at 378, 389 (6th Cir. 1999); *Drexel v. Vaughn*, 1998 WL 151798 at *7 (E.D. Pa.).  Plaintiff alleges that Hazlak and O'Brien feared that he would sue over workplace conditions and as a result of this fear they forced him to work.  (Complaint IV,¶ 3).  No constitutional violation exists in Plaintiff's allegation, as Plaintiff does not allege that he in fact filed a Complaint or that Hazlak and O'Brien prevented him from suing.

In addition, Plaintiff alleges that he was pursuing his right to medical treatment and because of this Hazlak punished him. (Complaint IV, ¶ 3).  The pursuit of medical care is not protected conduct.  Only receipt of adequate medical care is constitutionally protected. *Hoptowit v. Ray,* 682 F. Supp. 1237 (9th Cir. 1982) Here, Plaintiff sought receipt of medical care beyond what is adequate.  Seeing a bone specialist is not medically necessary.

The second element of a retaliation claim is that the prisoner must

show that he suffered some adverse action at the hands of the prison officials.
*Rauser*, citing *Allah v. Seiverling,* 229 F.3d 220, 224-225 (3d Cir. 2000).
The adverse action must be such as to deter a person of ordinary firmness
from exercising his constitutional rights. *Allah,* at 224-225.  The only adverse
action to Plaintiff, in both instances of alleged retaliation, was that
Defendant's made him do what was required.  Being made to work had
nothing to do with the possible filing of alleged civil suits.  In the first alleged
instance, Plaintiff filed the very suit he alleged the Plaintiff's feared, AFTER
being "forced to work."  In the second alleged instance, Hazlak imposed
extra duties on Plaintiff for misconduct and not because of any alleged
constitutionally protected activity.

       The third element of a retaliation claim is that the Plaintiff must prove a
casual link between the exercise of his constitutional rights and the adverse
action taken against him.  The constitutionally protected conduct must be a
"substantial or motivating factor" in the decision to discipline him.  The
burden then shifts to the Defendant to prove by a preponderance of the
evidence that it would have taken the same disciplinary action even in the
absence of the protected activity.  *Rauser, adopting Mount Healthy Bd. of
Ed. v. Doyle,* 429 U.S. 274, 287 (1977).  Plaintiff filed this action in June
2001.  Therefore, no casual link exists between the exercise of Plaintiff's

constitutional right and the prior actions the defendants took against him. The filing of this suit was not the motivating factor in the decision to require him to work.

Plaintiff fails to overcome the fact that he was assigned to work in the kitchen because he had no medical reason to be excused from working in the kitchen. Both Hazlak and O'Brien made calls to determine if there were medical reasons that Plaintiff could not work. Neither Hazlak nor O'Brien acted without taking affirmative action to verify that Plaintiff was medically able to work. Plaintiff did not have any medical lay-ins (SOF 30, 34, 36) or work restrictions; therefore, Defendant's expected him to work.

Between March 2000 and May 2000, Plaintiff admits he was given light duty in the kitchen. (SOF 23). On April 28, 2000, Food Services Instructor, Horvath issued a misconduct to Plaintiff for failing to report to work. (SOF 30). Plaintiff stated in his deposition, that he just decided not to go to work anymore. (SOF 29). Failure to go to work is a violation of prison policy. Work assignments and the expectation of inmates regarding their work assignments are governed by         DC-ADM 816. (SOF 32). Plaintiff told Horvath he was hurt and on a medical lay-in. Horvath called the medical department and learned that Plaintiff was not on a lay-in. The medical staff reported there was no medical reason for Plaintiff not to work. It was based

upon this information, that Hazlak punished Plaintiff for failure to work. (SOF

31, 3).  Hazlak was personally unaware that Plaintiff may sue or may want to

sue the medical department.  (SOF 53).   Plaintiff was punished not in fear of

his exercising a constitutional right in the future, but because of his present

misconduct.  Hazlak was merely enforcing the policies of the Department.

Making individuals work, unless they have a valid reason not to, has a

legitimate penological interest.  Hazlak would have acted the same regardless

of Plaintiff allegations against the medical department.  The records reveal

that Plaintiff was clearly guilty of failing to report to work, a violation of

prison policy.            (SOF's 29, 32).

On May 8, 2000, when O'Brien received the Request to Staff form from Plaintiff, asking for light duty, he immediately called Hazlak to determine if Plaintiff's record contained any indication that he was not able to work.  (SOF 34).  In addition, Hazlak contacted the medical department to determine if the staff had anything in the their file to reflect that Plaintiff should not work or had work restrictions. (SOF 35). Based on the response received from the medical department and from Hazlak, O'Brien informed Plaintiff that he must continue to work.  (SOF 36).

Hazlak made an appointment for Plaintiff to see a medical doctor and to inquire about medical restrictions and/or a lay-in.  (SOF 35).  The medical record does not reflect that Plaintiff received any lay-ins until May 15, 2000, although he visited the medical department on May 8 and May 10, 2000. (SOF 37).  On    May 15, 2000, as a result of Plaintiff receiving work restrictions, O'Brien excused him from work, with pay, May 25-July 28, 2000. (SOF's 40, 41).  O'Brien merely ordered Plaintiff to comply with the terms of his work assignment and did not punish him.

Assuming, constitutionally protected conduct exists; Plaintiff fails to establish any casual link between his alleged constitutional conduct and his being made to work.  Therefore, Plaintiff's allegations of retaliation should be dismissed.

2.

3.    **DEFENDANT MATALONI SHOULD BE GRANTED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM OF DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED.**

A claim of cruel and unusual punishment must contain allegations, which "involve the unnecessary and wanton infliction of pain." *Ingraham v. Wright,* 430 U.S. 651, 670 (1977) (citation's omitted). The deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain. This is true whether the indifference is manifested by prison doctors in response to the prisoner's needs or by prison guards in intentionally delaying or denying access to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103-104 (1976); *Coades v. Jeffes*, 822 F. Supp. 1189, 1191 (E.D. Pa. 1993).

Defendant Mataloni is the Health Care Administrator at SCI-Retreat. Mataloni is not employed as a medical doctor. Mataloni could not treat or prescribe treatment such as medicine or a shoulder restraint. (SOF 56). The only allegation relating to Mataloni is that he "knew of Plaintiff's condition and of the prescribed medication and referral to a bone specialist." (Complaint IV, ¶ 3). Plaintiff presumes that Mataloni acquiesced in the failure to restore Plaintiff's medication and the failure to refer him to a bone specialist. These allegations do not rise to the level of deliberate indifference

to a serious medical need.

A 'serious medical need' has been defined as "one that has been diagnosed by a physician, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Sheldon v. C/O Pezley*, 49 F.3d 1312, 1316 (8th Cir. 1995). This test affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmates. Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment, which remains a question of sound professional judgment. *McAleese v. Owens,* 770 F. Supp. 255, 258         (M.D. Pa. 1991); *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

Plaintiff's medical records were available to Mataloni and those records indicated that Plaintiff was receiving continuous professional medical care. The emergency room physician recommended that Plaintiff take Tylenol or ibuprofen every six hours, as needed, and if there was no improvement, he should follow up with orthopedics. (SOF 7). Plaintiff continued to receive medication, of the same or equivalent type recommended by the emergency room physician, for a year after the fall. (SOF 16). Mataloni did not take Plaintiff's shoulder restraint. (SOF 24, 25). The

medical staff took Plaintiff's shoulder restraint on March 23, 2000. The termination of the medicine and sling was substantially later than "upon return to the institution," as alleged by Plaintiff. (SOF 15). Importantly, Plaintiff saw an orthopedic surgeon, Dr. Stempler, on March 8, 2001. Dr. Stempler did not indicate that he needed to see Plaintiff any further, nor did the medical staff believe it was necessary to make any further referrals to a bone specialist. (SOF 17-19). Plaintiff continued to receive ongoing attention by the medical department at SCI-Retreat. Plaintiff had X-rays taken February 28 and May 12, 2000 showing a "normal right shoulder." (SOF's 8, 38). Although Plaintiff may disagree with the treatment he was provided, he was in fact given adequate treatment. "Prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993).

It appears Plaintiff may be using a theory of *respondeat superior* to establish that Mataloni owed him some duty. Plaintiff does not allege that Mataloni participated in his care; only that Mataloni knew of Plaintiff's care. "It is well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in or approved…there is no vicarious, *respondeat superior* liability under § 1983." *C.H. Ex. Rel. Z.H. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000).

Accordingly, Plaintiff has failed to state a claim against Mataloni.

4.    **DEFENDANTS O'BRIEN AND HAZLAK SHOULD BE GRANTED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS THAT THEY WERE DELIBERATELY INDIFFERENT TO HIS SERIOUS MEDICAL NEEDS WHEN THEY FORCED HIM TO WORK.**

Plaintiff complains that he was forced to work in spite of an injury received in the kitchen on February 28, 2000. His allegations appear to be that forcing him to work constitutes cruel and unusual punishment. The law governing this area originates with the Supreme Court's seminal decision in *Estelle,* 429 U.S. at 103. Accordingly, the inmate must allege and prove that the Defendants were deliberately indifferent to serious medical needs. Even assuming arguendo that Plaintiff's medical needs were serious, he has not and cannot allege that the Defendants were deliberately indifferent to those needs, as that term has been defined and interpreted. See *Sheldon,* 49 F.3d at 1316. The record is lacking in establishing Plaintiff's serious medical need.

To state an Eighth Amendment claim, two requirements must be met. First, the deprivation "must be, objectively, 'sufficiently serious'." *Farmer v. Brennan,* 511 U.S. 825 (1994). Second, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," the state of mind required is one of "deliberate indifference to inmate health and safety." *Id.* Defendants must have a subjective awareness of a substantial risk of

harm to the prisoner.

> We hold…that a prison official cannot be found liable under the
> Eighth Amendment for denying an inmate humane
> conditions of confinement unless the official knows of and
> disregards an excessive risk to inmate health or
> safety…<u>the official must both be aware of facts from
> which the inference can be drawn that a substantial risk of
> harm exists, and he must also draw the inference.</u>

*Farmer,* 511 U.S. at 827. (Emphasis added).

The Defendant's conduct must be "reckless" or demonstrate a "conscious disregard of a serious risk." *Id.* Deliberate indifference may be shown if prison officials know of a medical need and intentionally refuse to provide it; delay treatment for non-medical reasons; or prevent a prisoner from receiving needed treatment. *Rouse v. Plantier,* 182 F. 3d 192, 197 (3d Cir. 1999). Courts will "disavow any attempt to second-guess the propriety of adequacy of a particular course of treatment…which remains a question of sound professional judgment." *McAleese,* 770 F. Supp. at 257 and *Flanagan v. Shively,* 783 F. Supp. 922, 932 (M.D. Pa. 1992), quoting *Inmates of Allegheny Count Jail v. Pierce,* 612 F.2d at 762.

Defendant's sent Plaintiff to work, pursuant to policy, and because no reason existed in the records to excuse him from work. The risk, which Plaintiff alleges, is unclear. This case falls squarely within the case of *Durmer,* 991 F.2d at 64    (3d Cir. 1993). *Durmer,* the plaintiff was an

inmate in the New Jersey Correctional System who alleged that his prison

physician, O'Carroll, the State Commissioner for Corrections, Fauver, and the

Warden of the prison, Barker, were deliberately indifferent to his serious

medical needs.  Durmer was incarcerated from October 1987 until April

1989.  Prior to his incarceration he had received extensive physical therapy as

a result of a stroke and a motor vehicle accident.  He alleged that after he was

incarcerated, Defendants deliberately refused to provide him with physical

therapy.  Durmer complained to Dr. O'Carroll about the lack of physical

therapy treatment and by the end of the summer of 1988, he had written

letters expressing his complaints to Barker and Fauver.  Durmer filed suit and

ultimately the District Court granted summary judgment in favor of the

Correctional Defendants, which was affirmed by the Third Circuit:

> The only allegation against either of these two defendants was
> That they failed to respond to letters Durmer sent to them
> explaining his predicament.  Neither of these officials,
> however is a physician and neither can be considered
> deliberately indifferent simply because they failed to
> respond directly to the medical complaints of a prisoner
> who was already being treated by the prison doctor.

*Durmer,* 991 F.2d at 69.

Here, Plaintiff complained to Dr. Marana about the lack of referral to a

bone specialist and ultimately took his complaints to Hazlak and O'Brien.

The only allegations against either of the *Durmer* Defendants were that they

failed to respond to a letter Durmer sent.  The allegations against Hazlak and

O'Brien are that they failed to let Plaintiff off work, in spite of clearance to

work, by the medical department.

Because none of the Corrections Defendants is a medical provider,

they cannot be held responsible for refusing to second-guess the decisions of

the medical providers who have in fact provided treatment to the Plaintiff.

*See McAleese,* 770 F. Supp. at 257.

Medical professionals at SCI-Retreat have seen Plaintiff many times.

(SOF 21). Plaintiff's disagreement with the course of treatment cannot be

transformed into a deliberate indifference claim against the Defendants by

making conclusory allegations of indifference.  Plaintiff had not received

work restrictions or a lay-in from the medical department at any time relevant

to the claims herein.  (SOF's 30, 35, 37).

Clearly, there is no requisite mental intent, as Hazlak and O'Brien did

all they could to ensure they did not have Plaintiff work when legitimately he

should not.  Hazlak and O'Brien did not intentionally refuse to provide for a

medical need; delay treatment for non-medical reasons; prevent the Plaintiff

from receiving needed treatment or aggravate a medical need.

The case of *Wilson v. Wigen*, 1998 U.S. Dist. LEXIS 5792 at *10

(E.D. Pa.) (no injury from use of upper bunk) is instructive for deciding this

case.  Exhibit F.  There, the inmate was ordered to work despite having a

medically unassigned status. The court found no evidence of a constitutional

violation related to his being sent to work.  It granted the Defendants'

Summary Judgment.  In Plaintiff's suit, Hazlak and O'Brien are more

defensible than the Defendants in *Wilson,* because they verified that

Plaintiff's job assignment was within the parameters of his medical clearance.

(SOF 30, 34, 35, 61, 72).  Even if it is assumed that the Plaintiff was not able

to perform his job duties, it could not be foreseen by Hazlak and O'Brien that

Plaintiff was in danger of serious medical need.

5.

6.    **DEFENDANT O'BRIEN SHOULD BE GRANTED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM THAT HE USED OFFICIAL PRESSURE TO SEE TO IT THAT PLAINTIFF'S INJURY WAS NOT RECOGNIZED AND MADE TO WORK.**

The Eleventh Amendment bars Plaintiff's claim against Defendant O'Brien in his official capacity.  Unless consented to by the state, the Eleventh Amendment prevents the state or one of its agencies or departments from being sued in federal court. *Pennhurst Sch. and Hosp. v. Halderman,* 465 U.S. 89, 99-100 (1984).  This prohibition against suing a state entity in federal court applies regardless of the nature of the relief sought.  *Id.* at 100-101.  Bringing an action against an official in his or her official capacity is just another way of bringing it against the governmental agency that employs him or her; therefore, such an action is barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159 (1985*); Quern v. Jordan,* 440 U.S. 332 (1979).  O'Brien, in his official capacity as Food Services Manager, is an alter ego of the state; therefore, all claims against him, in his official capacity, must be dismissed.

Even if this Court were to find that the Eleventh Amendment defense is unavailable, Plaintiff's claims against O'Brien, in his official capacity, must still fail.  To bring a successful action under 42 U.S.C. §1983, a plaintiff must aver that a "person committed the alleged civil rights violation."  It has long

been held that states and their alter egos are not "persons" within the meaning

of §1983 and are not subject to liability in any action brought pursuant to §

1983.  *Quern* at 322*;  Will v. Michigan Dep't of State Police,* 491 U.S. 58

(1989).  O'Brien, in his official capacity, is not considered a "person" within

the meaning of 42 U.S.C. §1983; he is not subject to liability under §1983.

For these reasons, Plaintiff's claims against O'Brien, in his official capacity,

must be dismissed.

7.     **CORRECTIONS DEFENDANTS' ARE ENTITLED TO
       SUMMARY JUDGMENT BECAUSE THEY ARE ENTITLED
       TO QUALIFIED IMMUNITY.**

        Corrections Defendants are entitled to qualified immunity because

there is no clearly established law now or at any relevant time stating that

they had an obligation to second-guess the decisions of medical providers

who chose to pursue a particular course of treatment.

> The doctrine of qualified immunity 'hold[s] that government
> officials performing discretionary functions generally are
> shielded from liability for civil damages insofar as their
> conduct does not violate clearly established statutory or
> constitutional rights of which a reasonable person would
> have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818
> (1982).  The doctrine recognizes "the need to protect
> officials who are required to exercise their discretion and
> the related public interest in encouraging the vigorous
> exercise of official authority." *Id.* at 807.

*Doe v. County of Centre*, 242 F.3d 437 (3d Cir. 2001).

In determining whether an official is entitled to qualified immunity, the court asks three questions: "(1) Whether the plaintiff alleges a violation of his statutory or constitutional rights; (2) whether the right alleged to have been violated was clearly established in the existing law at the time of the violation; and (3) whether a reasonable official knew or should have known that the alleged action violated the plaintiff's rights." *Id.* citing *Rouse*, 182 F. 3d at 196-7.

Following the Supreme Court's lead in Harlow, the Third Circuit in *Doe* directed that the right in question must be defined with particularity rather than abstractly. *Doe,* at 439. Thus, with regard to forcing Plaintiff to work, the question is whether lay correctional employees have a duty to override the reasoned judgments of trained medical providers who have denied a medical lay-in to Plaintiff. Given the infinite variables entering into the question of what course of treatment is appropriate, the only way these Corrections Defendants could be stripped of immunity would be for them to disobey a court order that Plaintiff not work. Until that happens, the Corrections Defendants are entitled to qualified immunity. The Defendants have discharged their duty by granting Plaintiff open access to medical care. (SOF's 50, 51, 57, 73). Corrections Defendants are thus entitled to qualified immunity with regard to all claims.

## CONCLUSION

For the reasons stated above, the Corrections Defendants Motion for

Summary Judgment should be granted.


Respectfully Submitted

Office of General Counsel

By: <u>s/ Marsha Mills Davis</u>
Marsha M. Davis
Assistant Counsel
Attorney No. 28018
Pennsylvania Department of
Corrections

Office of Chief Counsel`
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Date: April 11, 2003

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHAN HUE, | : | |
| | : | |
| Plaintiff, | : | Civil No. 01-CV-1064 |
| | : | |
| v. | : | (Judge Yvette Kane) |
| | : | |
| JAMES UPDIKE, et al., | : | (Magistrate Judge, J. Andrew Smyser) |
| | : | |
| Defendants. | : | Filed Via Electronic Case Filing |

## LOCAL RULE 7.8 (b)(2)CERTIFICATE OF WORD COUNT

I hereby certify per Local Rule 7.8 (b)(2) that this brief complies with

the word-count limit of this rule that permits a brief exceeding fifteen (15)

pages provided as it does not exceed 5000 words.

I have relied upon the word-count feature of the word-processing

system used to prepare the brief.  Under that feature, my secretary has

informed me that this Brief contains 4,049 words.

                                      Respectfully submitted,
                                      Office of General Counsel

                             By s/ Marsha Mills Davis
                                  Marsha M. Davis
                                      Assistant Counsel
                                  Attorney I.D. No. 28018
                                  Pennsylvania Department of

Corrections

                                  Office of Chief Counsel
                                  55 Utley Drive
                                  Camp Hill, PA  17011

Date: April 11, 2003                    (717) 731-0444

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PHAN HUE,                          :
                                   :

    Plaintiff,                 :      Civil No. 01-CV-1064
                                   :
    v.                         :      (Judge Yvette Kane)
                                   :
JAMES UPDIKE, et al.,              :      (Magistrate Judge, J. Andrew Smyser)
                                   :
    Defendants.                :

<u>**CERTIFICATE OF SERVICE**</u>

    I hereby certify that I am this day depositing in the U.S. mail a true and

correct copy of Corrections Defendants' Brief in Support of Motion for

Summary Judgment on the Facts in the above-referenced matter.

<u>Service by first-class mail addressed as follows:</u>

Phan Hue, DY 0577              Alan Gold, Esquire (Sent Via ECF
Only)
SCI-Mahoney                   Monaghan & Gold, P.C.
301 Morea Road                7837 Old York Road
Frackville PA  17932          Elkins Park, PA  19027


                              <u>s/ Marilyn Wright</u>
                              Marilyn Wright
                              Clerk Typist 2


Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated: April 11, 2003