```
              UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHAN HUE,                         :    CIVIL NO. 1:01-CV-1064
                                  :
          Plaintiff               :    (Judge Kane)
                                  :
     v.                           :    (Magistrate Judge Smyser)
                                  :
JAMES UPDIKE,                     :
JOSEPH MATALONI,                  :
EDWARD O'BRIAN and                :
DALE HAZLAK,                      :
                                  :
          Defendants              :
```

**REPORT AND RECOMMENDATION**

The plaintiff, a prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by filing a complaint on June 15, 2001. The plaintiff claims that the defendants violated the Eighth Amendment by discontinuing his medication, confiscating his shoulder restraint and refusing to let him see a bone specialist for his shoulder injury. The plaintiff also claims that the defendants forced him to work despite his injury and that they retaliated against him for refusing to work and for claiming that they were violating the Eighth Amendment.

By an Order dated May 17, 2002, the plaintiff's motion for the appointment of counsel was granted on the condition that an attorney from the Panel of Voluntary Attorneys (LR

83.34) would enter an appearance on behalf of the plaintiff in this case.

The court was informed by Charles W. Rubendall, II, Esquire, the Pro Bono Chair of the Federal Bar Association, that he had been unable to find counsel willing to enter an appearance in this case on behalf of the plaintiff.  Mr. Rubendall noted that in these types of medical cases, an attorney would be reluctant to enter an appearance for a plaintiff without first knowing that the claim has medical validity.  He noted that an attorney would be unwilling to advance the attorney's own funds to obtain what could be an expensive preliminary opinion from a medical practitioner. Mr. Rubendall further stated that if the case were to be stayed for some time, the Federal Bar Association might be able to assist the court in finding counsel for the plaintiff.  He noted that Chief Judge Vanaskie had been in contact with the Pennsylvania Medical Society about providing physicians to perform initial examinations in these types of cases.  Mr. Rubendall stated that if a program involving the Federal Bar Association and the Pennsylvania Medical Society were to be up and running in the ensuing few months, the Bar Association might be able to arrange to have the plaintiff examined by a

physician and that then possibly a panel attorney would be willing to accept an appointment to represent the plaintiff in this case.

By an Order dated August 21, 2002, the parties were ordered to file a statement of their position on whether or not the case should be stayed for some time in the hope that an attorney will be found to represent the plaintiff. The parties expressed their agreement to a stay. By an Order dated September 9, 2002, the case was stayed until November 1, 2002.

On October 31, 2002, Mr. Rubendall informed the court that the Federal Bar Association was going to try to implement a procedure for a medical professional to act as a special master in this case. By an Order dated November 4, 2002, we extended the stay until December 31, 2002 so that the procedure proposed by Mr. Rubendall could be considered and implemented by the Federal Bar Association.

By a letter dated November 25, 2002, Mr. Rubendall informed the court that an orthopedic surgeon in northeastern Pennsylvania had indicated a willingness to assist in this case. Mr. Rubendall asked for arrangements to be made to get a

3

complete set of pertinent medical records for this physician. By an Order dated December 6, 2002, the defendants were directed to provide a copy of the plaintiff's medical records to Mr. Rubendall.  The Pennsylvania Department of Corrections and Mr. Rubendall subsequently entered into a confidentiality stipulation regarding the plaintiff's medical records.

By an Order dated January 16, 2003, the stay entered in this case was extended to March 17, 2003.  By an Order dated February 7, 2003, Shawn P. Hennigan, M.D., was appointed as a special master in this case and was directed to file a written report to assist the court in deciding whether, based on the materials reviewed by Dr. Hennigan, there is reason to believe that the plaintiff has or had a serious medical condition as alleged in the complaint and whether there is reason to believe that any of the defendants was deliberately indifferent to the plaintiff's serious medical condition.  Dr. Hennigan was requested to provide his report within a reasonable time, no more than sixty days from the date of the Order.  Since Dr. Hennigan's report was due on or before April 8, 2003, we entered another stay of the case until April 8, 2003.

By a letter dated March 19, 2003 and received by the court on March 31, 2003, Dr. Hennigan communicated his opinions to the court. No attorney had entered an appearance on behalf of the plaintiff and Dr. Hennigan's report did not increase the likelihood that an attorney would be found by the court willing to enter an appearance on behalf of the plaintiff in this case. Accordingly, by an order dated April 2, 2003, the Order of May 17, 2002 conditionally granting the plaintiff's motion for the appointment of counsel was vacated and the stay of this case was lifted.

There are two motions for summary judgment currently pending. On May 30, 2002, defendants Mataloni, O'Brian and Hazlak filed a motion for summary judgment and on June 6, 2002, they filed a brief in support of that motion. By an Order dated June 12, 2002, the plaintiff's obligation to respond to the motion for summary judgment was stayed for a period of sixty days. Despite the stay, on June 18, 2002, the plaintiff filed a brief in opposition to the motion for summary judgment.[1] By the Order of April 2, 2003, we granted the defendants an opportunity to file a reply brief in support of

---

1. On July 16, 2002, the plaintiff filed another copy of his brief in opposition.

their motion for summary judgment.  The defendants filed a reply brief on April 9, 2003.  On April 11, 2003, defendants Mataloni, O'Brian and Hazlak filed a motion for leave to file an additional motion for summary judgment, and on April 11, 2003, they filed an additional motion for summary judgment and a brief and documents in support of that motion.  By an Order dated April 14, 2003, defendants Mataloni, O'Brian and Hazlak were granted leave to file an additional motion and the motion they filed on April 11, 2003 was deemed timely filed.  On May 1, 2003, the plaintiff filed a brief in opposition to the second motion for summary judgment.  The first motion for summary judgment addresses exhaustion of administrative remedies issues whereas the second motion for summary judgment addresses the merits of the plaintiff's claims.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing

sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir. 2003). In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

The moving defendants contend that the plaintiff has failed to exhaust available administrative remedies.

42 U.S.C. § 1997e(a), provides:

7

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Pursuant to § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). As an affirmative defense, the failure to exhaust available administrative remedies must be pleaded and proven by the defendants. *Id.*

The Pennsylvania Department of Corrections has implemented an official Inmate Grievance System. The grievance system is governed by Administrative Directive 804 (DC-ADM 804). DC-ADM 804 sets forth a three-tier administrative remedy system. Pursuant to DC-ADM 804, an inmate is required to present his grievance to the Facility Grievance Coordinator for initial review within fifteen days after the events upon which the grievance is based. An inmate may include a request for compensation or other legal relief normally available from a court. The inmate is required to appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager. At the times relevant to the this case, from there the inmate was required to appeal to the Chief Hearing Examiner.

The moving defendants have presented evidence that although the plaintiff filed two grievances prior to commencing this action, he did not appeal the rejection of those grievances to the Facility Manager or to the Chief Hearing Examiner. *Semanski Decl.* at ¶4(e); *Reisinger Decl.* at ¶7.

The plaintiff has presented two grievance appeals that he asserts that he did submit. *Attached as Exhibits to Doc. 51.*

9

These appeals are addressed to the Central Office Review Committee. *Id.* However, the plaintiff has not presented any evidence that he filed appeals to either the Facility Manager (Superintendent) or the Chief Hearing Examiner.

We note that the plaintiff intimates that he can not speak, read or write the English language well. However, it appears that the plaintiff had other inmates assist him with his language problems. The plaintiff does not assert that he was unable to obtain inmate assistance and that is the reason he failed to file appeals to the Facility Manager and Chief Hearing Examiner.

No reasonable trier of fact could conclude that the plaintiff exhausted available administrative remedies prior to commencing this action. Thus, it is will be recommended that the defendants' first motion for summary judgment be granted and that the case be dismissed without prejudice based on the plaintiff's failure to exhaust available administrative remedies. Because we are recommending that the first motion for summary judgment be granted, we also recommend that the second motion for summary judgment be denied as moot.

Based on the foregoing, it is recommended that the first motion (doc. 42) for summary judgment filed by defendants Mataloni, O'Brian and Hazlak be granted and that the second motion (doc. 78) for summary judgment filed by defendants Mataloni, O'Brian and Hazlak be denied as moot.  It is recommended that this action be dismissed without prejudice

based on the plaintiff's failure to exhaust available administrative remedies prior to commencing this action and that the case file be closed.

                                             ***/s/ J. Andrew Smyser***
                                             J. Andrew Smyser
                                             Magistrate Judge

Dated:   June 6, 2003.